# EXHIBIT A

# PART I

EXHIBIT "A"



# CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed**

| FOR USE BY CLERK'S OFFICE ONLY |
|---|
| PAYMENT TYPE: ☐ CK ☐ CG ☐ CA |
| CHG/CK NO. |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| ATTORNEY / PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| Michael J. Epstein, Esq. | (201) 845-5962 | Passaic |

| FIRM NAME (if applicable) | DOCKET NUMBER (when available) |
|---|---|
| The Epstein Law Firm, P.A. | L - 4351-15 |

| OFFICE ADDRESS | DOCUMENT TYPE |
|---|---|
| 340 West Passaic Street<br>Rochelle Park, NJ 07662 | Complaint |
| | JURY DEMAND  ☒ Yes  ☐ No |

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
|---|---|
| PLAINTIFFS MR. COLLICK, NOAH WILLIAMS, and NANCY WILLIAMS | COLLICK, WILLIAMS, and WILLIAMS v. WILLIAM PATERSON UNIVERSITY, KATHLEEN M. WALDRON, ROBERT FULLEMAN, ELLEN DESIMONE, WILLIAM PATERSON UNIVERSITY P.D., et al. |

| CASE TYPE NUMBER (See reverse side for listing)<br>005 | HURRICANE SANDY RELATED?<br>☐ YES  ☒ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE?  ☐ YES  ☒ NO |
|---|---|---|
| | | IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |

| RELATED CASES PENDING?<br>☐ Yes  ☒ No | IF YES, LIST DOCKET NUMBERS |
|---|---|
| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)?<br>☐ Yes  ☒ No | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known)<br>☐ NONE<br>☒ UNKNOWN |

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE.**

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP?<br>☐ Yes  ☒ No | IF YES, IS THAT RELATIONSHIP:<br>☐ EMPLOYER/EMPLOYEE  ☐ FRIEND/NEIGHBOR  ☐ OTHER (explain)<br>☐ FAMILIAL  ☐ BUSINESS |
|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? | ☐ YES  ☒ No |
|---|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

FILED
Superior Court of New Jersey
DEC 22 2015
Passaic County

| | DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS?<br>☐ Yes  ☒ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|---|
| | WILL AN INTERPRETER BE NEEDED?<br>☐ Yes  ☒ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE:

Effective 08-19-2013, CN 10517-English

page 1 of 2

Michael J. Epstein, Esq. - 034101996
THE EPSTEIN LAW FIRM, P.A.
340 West Passaic Street
Rochelle Park, New Jersey 07662
(201) 845-5962
Attorneys for Plaintiffs
mjepstein@theepsteinlawfirm.com

RECEIVED
Superior Court of New Jersey
DEC 22 2015
Passaic County

FILED
Superior Court of New Jersey
DEC 22 2015
Passaic County

| | |
|---|---|
| GARRETT COLLICK, NOAH WILLIAMS, and NANCY WILLIAMS, <br><br> Plaintiffs, <br><br> vs. <br><br> WILLIAM PATERSON UNIVERSITY, KATHLEEN M. WALDRON, ROBERT FULLEMAN, ELLEN DESIMONE, WILLIAM PATERSON UNIVERSITY POLICE DEPARTMENT, JOHN DOES 1-20 (names fictitious as presently unknown), employees, representatives, and/or agents of defendant WILLIAM PATERSON UNIVERSITY POLICE DEPARTMENT, JANE DOES 1-20 (names fictitious as presently unknown), employees, representatives, and/or agents of defendant WILLIAM PATERSON UNIVERSITY POLICE DEPARTMENT, JOHN SMITH 1-5 (names fictitious as presently unknown), employees, representatives, agents, and/or spokespersons of defendant WILLIAM PATERSON UNIVERSITY, and JANE SMITH 1-5 (names fictitious as presently unknown), employees, representatives, agents, and/or spokespersons of defendant WILLIAM PATERSON UNIVERSITY, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY <br> LAW DIVISION:  PASSAIC COUNTY <br> DOCKET NO:  PAS-L- 4351-15 <br><br> Civil Action <br><br> **COMPLAINT** |

Plaintiffs Garrett Collick, Noah Williams, and Nancy Williams (hereinafter collectively referred to as "Plaintiffs") by their attorneys, The Epstein Law Firm, P.A., as and for their Complaint, respectfully allege as follows:

## THE NATURE OF THE ACTION

1. Plaintiffs Garret Collick ("Collick" or "plaintiff") and Noah Williams ("Williams" or "plaintiff") seek redress against defendants William Paterson University ("William Paterson"), William Paterson University Police Department ("University Police"), and their respectively named agents, employees, representatives, and/or spokespersons due to the actions, omissions, errors, flawed policies and procedures, reckless conduct, negligence, and overall failure to provide plaintiffs with the expected standard of due process and equal protection under the laws arising out of the wrongful and false allegations of sexual misconduct made against plaintiffs Collick and Williams, who at the time were both male freshman students at William Paterson, 18 years old, African American, and in good academic and financial standing.

2. On or about after midnight on November 25, 2014, a female first-year student at defendant William Paterson ("the Accuser") initiated consensual sexual activities with plaintiffs Collick and Williams and three other first-year students ("the Incident").

3. The Incident occurred in William Paterson's Overlook South residence building, a freshman co-ed dormitory housing approximately 443 students in Wayne, New Jersey.

4. After the Incident, all participating parties, namely the Accuser, plaintiffs Collick and Williams, and the three other first year students, were on good terms.

5. Nevertheless, upon information and belief, later in the day, on November 25, 2014, the Accuser falsely reported the Incident to University Police as non-consensual sexual activities, rape, sexual assault and

2

kidnapping.

6. On November 28, 2014, without conducting any investigation and based on the Accuser's report alone, University Police Detective Sergeant Ellen DeSimone ("Sergeant DeSimone") filed for probable cause warrants against plaintiffs Collick and Williams and the three others, which a judge executed.

7. On November 29, 2014, University Police arrested Plaintiffs Collick and Williams as well as the three other first-year students while off-campus with no warrants and no explanation whatsoever.

8. University Police then transported plaintiffs Collick and Williams to campus where they were held and interrogated, and thereafter transferred to the Passaic County Jail.

9. University Police charged plaintiff Collick with four counts of aggravated sexual assault, one count of conspiracy to commit sexual assault, one count of criminal restraint, and one count of aggravated sexual contact.

10. University Police charged plaintiff Williams with two counts of aggravated sexual assault, one count of first degree kidnapping, one count of conspiracy to commit sexual assault, and two counts of criminal restraint.

11. Bail was originally set at $200,000 each for Collick and Williams, but reduced to $25,000 each.

12. On November 29, 2014, William Paterson also issued plaintiffs Collick and Williams a Notice of Interim Suspension stating that they were formally banned from entering William Paterson's grounds and facilities until the school's disciplinary process adjudicated the case because

3

Plaintiffs were deemed to be clear and present dangers to the community.

13. On November 30, 2014, defendant Kathleen Waldron ("President Waldron"), defendant William Paterson's President, issued and published a public statement asserting that a crime had occurred on campus and expressing her condolences to the Accuser.

14. Plaintiffs, Collick and Williams were held at Passaic County Jail for nine days, five days in general population and four days in the fourth floor medium security area.

15. Plaintiffs, Collick and Williams posted bail on December 4, 2014, and were released from jail on December 9, 2014.

16. Upon release, both plaintiffs had to complete sex offender registration and information forms.

17. On January 26, 2014, a Passaic County Grand Jury refused to indict plaintiffs and entered a no bill.

18. Despite no basis for a prosecution and the charges being dismissed, William Paterson expelled plaintiffs Collick and Williams after allegedly performing an independent student conduct investigation.

19. In arresting, disciplining, and jailing plaintiffs Collick and Williams, defendants discriminated against them on the basis of their gender and race and without affording them due process and the equal protection of the laws.

20. Defendants William Paterson and the University Police failed to adhere to their own guidelines and regulations, and violated plaintiffs' federal and state Constitutional rights.

21. Defendants' William Paterson and the University Police's policies and procedures are insufficient to protect the rights of male,

4

minority students accused of sexual assault.

22. Defendants' actions, conduct, omissions, and decisions were discriminatory given the lack of evidence and due process. In essence, defendants rushed to judgment, considered plaintiffs Collick and Williams guilty solely on the Accuser's report, and gave little thought, if any, to the investigation and discovery of the actual facts involved.

23. As a result of defendants' failures and tortious actions alleged herein, plaintiffs Collick and Williams have sustained significant damages and losses, given that: (a) their educational careers were effectively terminated; (b) their academic futures have been severely and irreparably damaged; (c) the monies expended on obtaining a college education have been lost; (d) plaintiffs and their families' sacrifices so that plaintiffs could receive a quality education have been wasted; (e) monies acquired from various educational funds and programs have been squandered; (f) their current and future careers and potential earnings have been severely and permanently damaged; (g) their characters, names, and reputations have been irreparably harmed; (h) they were improperly jailed for nine days; and (i) they have been subjected to immeasurable emotional and psychological trauma.

24. Plaintiffs Collick and Williams therefore bring this action to obtain relief based on causes of action for, among other things, violations of Title IX of the Education Amendments of 1972, violations of the Fourteenth Amendment of the United States Constitution, violations of the Fourth Amendment of the United States Constitution, violations of the Fifth Amendment of the United States Constitution, violations of Section 1986 of the United States Code, violations of Section 1985 of the United States

5

Code, violations of Section 1983 of the United States Code, violations of New Jersey's Law Against Discrimination, and violations of New Jersey's Constitution and laws.

## THE PARTIES

25. Plaintiff Collick is a natural person residing in the State of New Jersey with an address of 217 21st Avenue, Apartment 6, Paterson, New Jersey 07501. During the events described herein, Collick was a student at defendant William Paterson residing in the Overlook North dormitory building.

26. Plaintiff Williams is a natural person residing in the State of New Jersey with an address of 1232 Magnolia Avenue, Camden, New Jersey 08103. During the events described herein, Williams was a student at William Paterson residing in the Overlook South dormitory building.

27. Plaintiff Nancy Williams ("Ms. Williams"), is a natural person residing in the State of New Jersey with an address of 7 Kent Road, Paterson, New Jersey 07502, and is and was the biological mother of plaintiff Collick.

28. Upon information and belief, defendant William Paterson is a public, coeducational college in Wayne, New Jersey, with an address of 300 Pompton Road, Wayne, New Jersey 07470.

29. Upon information and belief, defendant University Police is a police organization operated by the State of New Jersey with an address of 300 Pompton Road, Wayne, New Jersey 07470, and is responsible for servicing and protecting William Paterson's campus and its community.

30. Upon information and belief, defendant President Waldron is a natural person, citizen of the United States, and resident of New Jersey.

6

During the events described herein, defendant President Waldron was the person responsible for all aspects of student life at William Paterson.

31. Upon information and belief, defendant Robert Fulleman ("Mr. Fulleman") is a natural person, citizen of the United States, and resident of New Jersey.  During the events described herein, defendant Mr. Fulleman was William Paterson's Director of Public Safety and University Police, and was responsible for implementing, overseeing, and supervising all laws and safety procedures at William Paterson.

32. Upon information and belief, defendant Sergeant DeSimone is a natural person, citizen of the United States, and resident of New Jersey. During the events described herein, defendant Sergeant DeSimone was a sergeant with the University Police.

33. Upon information and belief, defendants Jane Does 1-20 and John Does 1-20 were natural persons, citizens of the United States, and residents of New Jersey.  During the events described herein, defendants Jane Does 1-20 and John Does 1-20 were employees, representatives, and/or agents of Defendant University Police.

34. Upon information and belief, defendants Jane Smith 1-5 and John Smith 1-5 were natural persons, citizens of the United States, and residents of New Jersey.  During the events described herein, defendants Jane Smith 1-5 and John Smith 1-5 were employees, representatives, agents, and/or spokespersons of Defendant William Paterson.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

I.  Agreements, Representations, Covenants, & Warranties

35. Plaintiffs Collick and Williams enrolled at William Paterson as members of the Educational Opportunity Fund Program, which is a program

7

instituted to offer students from disadvantaged backgrounds the tools and financial support needed to succeed in college.

36. Upon admission to William Paterson, plaintiffs became subject to the William Paterson's Student Code of Conduct 2014-2015 ("Student Code of Conduct") and the Domestic/Dating Violence, Stalking and Sexual Violence Policy ("Sexual Violence Policy"). The Sexual Violence Policy and the Student Code of Conduct are attached hereto as **Exhibit A** and **Exhibit B** respectively.

37. William Paterson's Sexual Violence Policy states, among other things:

> William Paterson University is dedicated to providing a campus environment free from violence for all members of the campus community. Domestic/dating violence, stalking and/or sexual violence incidents are occurring at an alarming rate on the nation's college campuses. Such incidents happen to people of all genders, races, ethnicities, religions, ages, abilities, sexual orientations, gender expressions, sexual identities etc.

See **Exhibit A**.

38. William Paterson's Sexual Violence Policy also provides:

> Once an incident has been brought to the attention of a campus authority, a report must be made in accordance with the University's obligations under the Jeanne Celery Disclosure of Campus Security Policy and Campus Crime Statistics Act and/or Title IX of the Education Amendments of 1972. William Paterson University staff will also need to report an incident to University Police if it warrants the undertaking of additional safety and security measures for the protection of the victim and the campus community or other situations in which there is a clear and imminent danger, and when a weapon may be involved.

See id.

39. With regards to those accused of on-campus misconduct, the Sexual Violence Policy provides:

8

> Students accused of domestic/dating violence, stalking, and/or sexual violence will be treated with fairness and respect. The University will ensure that its investigations and disciplinary proceedings comply with due process requirements; may discuss their situations privately with counselors at the WPU Counseling Center or with the staff at the Office of Vice President for Student Development; may seek academic or housing accommodations and/or alternative transportation or work assignments, when such accommodations are related to problems related to the accusation; may consider seeking the assistance of an advisor or an attorney to assist in preparation of the case and/or accompany him/her to any related meetings or institutional proceedings.

See id.

40. William Paterson's Sexual Violence Policy sets forth the standard it uses when it investigates and prosecutes claims of misconduct:

> Disciplinary sanctions for violations of this domestic/dating violence, stalking and/or sexual violence policy and/or of the student code of conduct will be imposed in accordance with applicable William Paterson University policies, including but not limited to, expulsion or termination of employment. The University's determination shall be based on the preponderance of evidence in the case. William Paterson University typically conducts a full investigation within sixty days of receiving a complaint. Additional time may be necessary depending of the complexity of the investigation and the severity and extent of domestic/dating violence, stalking and/or sexual violence. Both parties will be simultaneously provided with written notification of the outcome of the investigation/proceeding and, if applicable, either party may file an appeal within three days. Both parties will be given periodic status updates on the investigation. The appropriate University disciplinary process is determined by the status of the person accused of engaging in domestic/dating violence, stalking and/or sexual violence. If the accused is a student, the complaint is addressed with the procedures for student discipline as set forth in the University's Student Code of Conduct.

See id.

41. With respect to the standard of proof, William Paterson's Student Code of Conduct states, in pertinent part:

9

> It is important to note that the threshold utilized for determining responsibility for alleged policy violations will be the "preponderance of the evidence." This means that the hearing officer will weigh all information available about an incident and ask if the violation is more likely than not to have occurred. If the answer is affirmative, then the student(s) will be found responsible for the violation.

See **Exhibit B**.

42. The Student Code of Conduct also assures its students that "[t]he University will guarantee procedural fairness in all its disciplinary actions." See id.

43. With regards to suspensions, the Student Code of Conduct provides, in pertinent part:

> Students can be suspended from academic pursuits and/or various campus properties of the University on an interim basis, if they are deemed to be a clear and present danger to either or themselves or the University community by the Office of Student Conduct. In such cases, a hearing will be scheduled as expeditiously as possible to determine whether the interim suspension should be lifted or remain pending final adjudication.

See id.

44. With regards to removing students from campus, the Student Code of Conduct states, in pertinent part:

> If a currently enrolled student commits an on-campus act that results in arrest, creates a public safety issue, or violates the Student Code of Conduct, the Office of Student Conduct reserves the right to remove that student's access to campus. This decision will be made in consultation with Campus Police regarding the level and duration of restricted access and may also involve input from Residence Life staff members.

See id.

45. The Student Code of Conduct also recognizes in pertinent part that:

10

due process in higher education disciplinary matters does not parallel the requirements of due process in a court of law.  However, the University ensures that fundamental requirements of due process in all disciplinary matters will be implemented.  These requirements are: (1) Accused students will be notified via their William Paterson University email account of charges within a reasonable time period; (2) notification via the accused students William Paterson University email address of the date, time, and place of the hearing at least five days in advance; (3) the opportunity to present information and eye-witnesses; (4) the opportunity to choose any one person as an advisor throughout the conduct process; (5) written notification of findings and sanction or penalties imposed; (6) written notification of an appeal process.

See id.

46. In addition, the Student Code of Conduct states, in pertinent part:

The University Hearing Board's determination shall be based on the preponderance of evidence in the case.  The question before the University Hearing Board will be whether it is more likely than not that the accused student violated the Student Code of Conduct.  The University Hearing Board will make the final determination of whether a student is held responsible or not for violating the Student Code of Conduct.

See id.

47. William Paterson's Sexual Violence Policy and Student Code of Conduct govern its investigations and disciplinary proceedings.

48. On the other hand, the University Police is a state police department, and when it investigates potential crimes, it must provide potential suspects with all of the protections afforded by the federal and state constitutions and applicable laws.

49. Moreover, the University Police is required to provide all of its agents, employees, and/or representatives with appropriate training, supervision, and education to ensure compliance with all state and federal

11

laws and Constitutional requirements, including but not limited to due process and equal protections under the laws.

## II.   Plaintiff Collick's Matriculation at William Paterson and Previous Interactions with the Accuser.

50. Plaintiff Collick was able to attend William Paterson because of an $11,000.00 loan he received from the Educational Opportunity Fund Program.

51. During his freshman year, Collick was a resident of the Overlook North dormitory building on William Paterson's campus in Wayne, New Jersey.

52. During her freshman year, the Accuser was a resident of the Overlook South dormitory building on William Paterson's campus in Wayne, New Jersey.

53. During his freshman year, Collick worked at William Paterson's dining hall, where he earned approximately $8.35 per hour.

54. Collick met the Accuser during his first semester at William Paterson in October 2014.

55. Collick and the Accuser participated in consensual sexual activity before the night of the Incident.

56. The Accuser initiated the sexual relationship with Collick.

57. Some of the Accuser and Collick's consensual sexual activities involved other male students at William Paterson.

58. Plaintiffs Collick, Williams, and the Accuser participated in consensual sexual activity together on at least one occasion before the Incident.

59. Between these sexual activities, the Accuser inundated Collick

12

with texts and other messages seeking intimate and sexual relations, most of which Collick rejected.

III.   **Plaintiff Williams's Matriculation at William Paterson and Previous Interactions with the Accuser.**

60. Plaintiff Williams was able to attend William Paterson because of a $4,000.00 loan he received from the Educational Opportunity Fund Program.

61. During his freshman year, Williams was a resident of the Overlook South dormitory building on William Paterson's campus in Wayne, New Jersey.

62. Williams met the Accuser during his first semester at William Paterson in 2014.

63. Williams and the Accuser participated in consensual sexual activity before the night of the Incident.

64. The Accuser initiated the sexual relationship with Williams.

65. Some of the Accuser and Williams's consensual sexual activities involved other male students at William Paterson.

66. Plaintiffs Collick, Williams, and the Accuser participated in consensual sexual activity together on at least one occasion before the Incident.

IV.   **The Incident**

67. In the late evening of November 24, 2014 and early morning of November 25, 2014, plaintiffs Williams and Collick were in a friend's dormitory in the Overlook South resident building with three other male William Paterson students watching television.

68. Earlier on November 24, 2014, the Accuser had been looking for

13

Collick with the hopes of luring him into a sexual encounter, but she was unsuccessful in this endeavor.

69. On November 24, 2014, the Accuser attempted to call Collick thirty-three (33) times.

70. While the five men were watching television, the Accuser knocked on the door, saw Collick, and asked to enter.

71. The Accuser then entered the room, turned off the lights and television, and closed the blinds.

72. The Accuser asked Collick if he wanted to have sexual intercourse with her in her room and he said no.

73. The Accuser then initiated consensual sex on Collick.

74. The Accuser then proceeded to participate in consensual sexual activities with the other four males in the room, including Williams.

75. After the consensual sexual activities concluded, the Accuser asked if Collick or Williams wanted to come back to her room.

76. Collick denied the Accuser's request but Williams and another male student accepted the Accuser's invitation.

77. In the Accuser's room, Williams engaged in additional sexual relations with the Accuser, but the Accuser did not have relations with the other male student.

78. After participating in further consensual sexual activities, Williams vacated the premises and returned to his room.

79. Later on November 25, 2014, the Accuser visited Williams' dormitory and other nearby rooms looking for Collick who was not there.

14

V.   Defendants' Investigation and Overall Mishandling of the Allegations

80. On November 25, 2014, at approximately 1:56 p.m., the Accuser reported the Incident to University Police as rape and sexual assault.

81. On November 28, 2014, University Police Detective Sergeant DeSimone filed for probable cause warrants, which were then executed by a judge.

82. Plaintiffs Collick and Williams were not interviewed or questioned regarding the accusations, did not receive notice that defendants commenced an investigation against them, and had no opportunity to deny the rape and sexual assault allegations.

83. Upon information and belief, defendants' investigation was limited to receiving the Accuser's report, and did not include interviews of other students, a review of videotapes from the dorm, an analysis of any cell phone records, an examination of the Accuser's blogs or other social media profiles, or any investigation into previous relations between the Accuser and Collick and Williams.

84. Upon information and belief, interviews with other students would have revealed that the Accuser was very sexually active at William Paterson, had many sexual partners, engaged in sexual activities with more than one partner on multiple occasions, had to change dormitory rooms because her roommate was uncomfortable with the level of the Accuser's sexual activity, had previous sexual relations with plaintiffs, was known to use illicit drugs, and would have demonstrated that plaintiffs committed no wrongdoing and, thus, the Accuser's accusations were false.

85. On November 29, 2014, Jennifer Tumlin, William Paterson's Director of Student Conduct and Dispute Resolution, based on the University

15

Police's incomplete and improper investigation, issued Plaintiffs a Notice

of Interim Suspension which provided as follows:

> A report has been filed alleging that you were involved
> in a serious incident on the campus of William Paterson
> University.  Until further notice, pursuant to N.J.S.A.
> 2C:18-3(b) you are not licensed or privileged to enter any
> of the grounds or facilities of William Paterson
> University of New Jersey.  You are temporarily suspended
> as you have been deemed a clear and present danger to
> yourself or other members of the University community.
> Please be advised that you are facing disciplinary action
> for this matter and your interim suspension will remain
> in effect until your case has been adjudicated through the
> University Disciplinary process.  You will need to
> contact my office at 973-720-2218 as soon as possible to
> arrange to meet to discuss the university's adjudication
> process thoroughly.

See **Exhibit C.**

86. On November 30, 2014, defendant President Waldron issued the

following statement to the public, faculty, and students of defendant

William Paterson:

> On November 25, 2014, a sexual assault of a female student
> allegedly took place in a residential hall on our campus.
> Five male students who were living in the residence halls
> have been arrested and charged.  As soon as the victim
> reported this incident, she was attended to be university
> counselors and police officers.  All of the alleged
> perpetrators of this heinous crime have been barred from
> campus.  Prosecution is being handled by the Passaic
> County Prosecutor's office and the university is fully
> cooperating in the prosecution.  I am angry and dismayed
> that this crime was committed on our campus and allegedly
> by students.  My deepest concern is for the victim of this
> criminal act who has courageously stepped forward to take
> legal action and seek justice.  No expression of anger or
> sadness on my part can alleviate the harm done to the victim
> and my heart goes out to her and her family.  I offer the
> full support of the University community.  William
> Paterson University – its students, faculty, staff, and
> board of trustees – is horrified by this alleged sexual
> assault.  Our University is a place of learning and
> personal growth where individuals are respected.  It is
> our responsibility to provide a safe environment for all
> its members and to be a campus where students can grow and

16

thrive.   We are committed to ensuring that William
Paterson University will always be a place where students
feel safe and sound.   This commitment extends from our
classrooms to our residence halls and to everywhere on
campus.

See **Exhibit D**.

87. Upon information and belief, at no point during defendants'
"investigation" did anyone corroborate the Accuser's allegations or speak
to potential witnesses.

88. Upon information and belief, at no point during defendants'
"investigation" did University Police obtain or review the videos from the
cameras located in the Overlook South dormitory building.

89. Upon information and belief, at no point during defendants'
"investigation" did University Police seek or obtain any evidence that
would exculpate Collick or Williams.

90. Upon information and belief, at no point during defendants'
"investigation" did University Police perform or obtain a rape kit on the
Accuser.

91. At no point during defendants' "investigation" into the matter
were Collick and Williams treated with fairness and respect.

92. At no point during defendants' "investigation" were Collick and
Williams afforded any of their due process rights.

93. At no point during defendants' "investigation" were Collick and
Williams made aware of the claims against them, the investigation by
University Police, or William Paterson's ongoing disciplinary actions.

94. At no point during defendants' "investigation" were Collick and
Williams notified of the charges against them.

95. Defendant William Paterson expelled Collick and Williams even

17

though defendants' "investigation" did not meet the preponderance of the evidence burden established in the Student Code of Conduct.

## VI. Arrests, Imprisonment, and Grand Jury Hearing

96. On November 29, 2014, University Police arrested Collick and Williams while they were off-campus during Thanksgiving break.

97. University Police did not give Collick or Williams any information as to why they were being arrested.

98. University Police returned Collick and Williams to campus, and held them for at least an hour.

99. University Police interrogated Collick and Williams for at least twenty (20) minutes each.

100. Neither Collick nor Williams were aware of why they were being arrested until one of the arresting officers mentioned the Accuser's name.

101. Collick and Williams were held in handcuffs throughout their ordeal.

102. Ms. Williams, Collick's mother, witnessed her son's arrest and handcuffing by University Police.

103. Collick was charged with the following offenses:

    a. aggravated sexual assault by committing an act of sexual penetration upon the Accuser while aided or abetted by one or more other persons while using physical force or coercion in violation of N.J.S.A. 2C:14-A(5), a crime of the first degree;

    b. conspiracy to commit sexual assault with the purpose of promoting or facilitate the commission of such crime in violation of N.J.S.A. 2C:5-2A, a crime of the second degree;

c. knowingly holding the Accuser in a condition of involuntary servitude in violation of N.J.S.A. 2C:13-2B, a crime of the third degree;

d. aggravated sexual assault by committing an act of sexual penetration upon the Accuser while aided or abetted by one or more other persons and using physical force or coercion in so doing in violation of N.J.S.A. 2C:14-2A(5), a crime of the first degree;

e. aggravated criminal sexual contact by committing an act of sexual contact with the Accuser for the purpose of sexually arousing or gratifying himself or to humiliate or degrade the victim during the commission of a sexual assault, in violation of N.J.S.A. 2C:14-3A, a crime of the third degree;

f. aggravated sexual assault by committing an act of sexual penetration upon the Accuser while aided or abetted by one or more others and using physical force or coercion in violation of N.J.S.A. 2C:14-2A(5), a crime of the first degree; and

g. aggravated sexual assault by committing an act of sexual penetration upon the accuser while aided or abetted by one or more others and using physical force or coercion in violation of N.J.S.A. 2C:14-2A(5), a crime of the first degree.

104. Williams was charged with two counts of aggravated sexual assault, one count of first degree kidnapping, one count of conspiracy to commit sexual assault, and two counts of criminal restraint.

105. Collick and Williams were taken to and booked into Passaic County Jail.

19

106. Collick and Williams each spent five (5) days in general populations and four (4) days in the facility's medium security area on the fourth floor.

107. Both Collick and Williams were extremely scared and frightened for their lives while imprisoned, and they slept in shifts to attempt to protect one another.

108. Plaintiffs' bail was set at $200,000, but was later lowered to $25,000.

109. After making the bail of $25,000 each, Collick and Williams were released from the Passaic County Jail on December 9, 2014.

110. On January 26, 2014, a Grand Jury convened in Passaic County, and refused to indict plaintiffs and entered a no bill.

111. Despite the lack of evidence and no criminal prosecution, William Paterson expelled plaintiffs Collick and Williams.

VII. <u>Plaintiffs Suffered Severe and Permanent Injuries and Losses</u>

112. As a direct and proximate result of defendants' actions, conduct, and omissions, plaintiffs Collick and Williams were shunned from campus, wrongly arrested and wrongfully imprisoned.

113. As a direct and proximate result of defendants' actions, conduct, and omissions, plaintiffs Collick and Williams each spent nine (9) days in jail, suffering immeasurable and permanent emotional and psychological trauma.

114. As a direct and proximate result of defendants' actions, conduct, and omissions, plaintiffs' respective families were forced to expend money to bail them out of jail.

115. As a direct and proximate result of defendants' actions, plaintiff Ms. Williams suffered severe emotional distress during and after watching her son, Collick, being handcuffed and arrested.

116. As a direct and proximate result of defendants' actions, conduct, and omissions, plaintiffs were expelled from William Paterson.

117. As a direct and proximate result of defendants' actions, conduct, and omissions, the financial resources used by plaintiffs Collick and Williams to get into and attend William Paterson have been wasted and lost without any compensation or return.

118. As a direct and proximate result of defendants' actions, conduct, and omissions, plaintiffs lost a year of their college education.

119. As a direct and proximate result of defendants' actions, conduct, and omissions, plaintiffs' entire academic careers have been ruined, and their overall economic futures are severely compromised.

120. Defendants' actions, conduct, and omissions violated plaintiffs' state and federal Constitutional rights.

121. As a direct and proximate result of defendants' actions, conduct, and omissions, plaintiffs were presumed to be guilty of crimes they did not commit before any investigation took place.

122. As a direct and proximate result of defendants' actions, conduct, and omissions, plaintiffs' characters, names, and reputations have been irreparably and permanently damaged.

123. As a direct and proximate result of defendants' actions, conduct, and omissions, plaintiffs' names and photographs will forever be synonymously linked to rape, sexual assault, and kidnapping.

124. As a direct and proximate result of defendants' actions, conduct,

21

and omissions, plaintiffs' future relationships, romantic or otherwise, will be significantly hampered and damaged.

## COUNT ONE

### VIOLATION OF 20 U.S.C. § 1681
(Title IX of the Education Amendments of 1972)

125. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 124 as set forth above.

126. Title IX of the Education Amendments of 1972 ("Title IX") provides, in pertinent part that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).

127. Title IX applies to an entire school or institution where any part of that school or institution receives federal funds.

128. Upon information and belief, defendants William Paterson and the University Police receive federal funding under Title IX.

129. As Title IX recipients, defendants William Paterson and the University Police are required to comply with the requirements of Title IX as well as those of the regulations promulgated thereunder by the Department of Education.

130. These regulations require each school receiving Title IX funds to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student . . . complaints alleging any action which would be prohibited under Title IX or its regulations." 34 C.F.R. § 106.8 (2010).

22

131. The regulations further require that "a school's procedures must accord due process to both parties involved. . . ." See Title IX (2001) "Revised Sexual Harassment Guidance" at 22 (notice of publication at 55 Fed. Reg. 5512, January 19, 2001)(emphasis added).

132. Defendants William Paterson and the University Police's disciplinary policies, as written and as applied to plaintiffs', are not equitable and do not accord due process to the accused.

133. Defendants William Paterson and the University Police have deprived plaintiffs, on the basis of their gender, of their rights to due process and equal protection through the existence, in their current state, of William Paterson's inequitable and non-compliant policies and procedures and/or the improper administration of said policies and procedures.

134. Upon information and belief, the fundamental unfairness that imbued plaintiffs' disciplinary process and investigation by defendants William Paterson and University Police, as well as the eventual erroneous outcome, are part of a pattern of decision-making that discriminates against male students accused of sexual misconduct.

135. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5, conducted the investigation in a manner that was biased against plaintiffs by, among other things: failing to properly investigate the veracity of the Accuser's claims, failing to obtain relevant information that would have been exculpatory, barring plaintiffs from campus arbitrarily and without the benefit of due process, neglecting to inquire about previous relations between the Accuser and

23

plaintiffs, and failing to involve or in any way notify plaintiffs of the ongoing investigation.

136. In addition, defendants William Paterson and the University Police's policies, both as written and as enforced against plaintiffs, impose an unequal burden on male students accused of sexual misconduct.

137. Male respondents in sexual misconduct cases at William Paterson are discriminated against solely on the basis of sex, and are subject to discipline without the benefit of due process.

138. As a direct and proximate result of defendants William Paterson and the University Police's enforcement of these policies, and their failures to comply with the requirements of Title IX with respect to its disciplinary procedures, plaintiffs have been denied the benefits of an educational program in violation of Title IX.

139. As a direct and proximate result of defendants William Paterson and the University Police's enforcement of these policies, and their failures to comply with the requirements of Title IX with respect to its disciplinary procedures, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights

24

guaranteed under Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs Collick and Williams pray for judgment against defendants, individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

      a. Compensatory damages in an amount to be determined at trial;

      b. Punitive damages;

      c. Interest;

      d. Attorneys' fees; and

      e. Costs of Suit.

## COUNT TWO

### VIOLATION OF 42 U.S.C. § 1983
### (DEPRIVATION OF FEDERAL CONSTITUTIONAL RIGHTS)

140. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 139 as set forth above.

141. At all times stated herein, plaintiffs Collick and Williams had a constitutionally protected liberty interest in their good name, reputations, honor, and integrity.

142. At all times stated herein, plaintiffs Collick and Williams had a constitutionally protected liberty interest in pursuing their education, as well as future educational and employment opportunities.

143. At all times stated herein, plaintiffs Collick and Williams had a constitutionally protected property interest in continuing their education at William Paterson.

25

144. At all times stated herein, plaintiffs Collick and Williams had a constitutionally protected right not to be improperly restrained, arrested, and imprisoned without due process of law.

145. At all times stated herein, plaintiffs Collick and Williams were entitled to process commensurate with the seriousness of the allegations made against them, and the potential discipline, sanctions, and repercussions they were facing.

146. At all times stated herein, plaintiffs Collick and Williams were entitled to fundamentally fair procedures to determine whether they committed misconduct and/or crimes.

147. At all times stated herein, plaintiffs Collick and Williams were entitled to be free from egregious, outrageous, and oppressive use of governmental power which shocks the contemporary conscious of society and cause a deprivation of fundamental due process rights.

148. At all times stated herein, plaintiffs Collick and Williams were entitled to equal protection under the laws and were entitled not to be treated differently from those similarly situated.

149. Defendant President Waldron, in her individual capacity, defendant Sergeant DeSimone, in her individual capacity, defendant Mr. Fulleman, in his individual capacity, defendant William Paterson, defendant University Police, defendant John Does 1-20, in their individual capacities, defendant Jane Does 1-20, in their individual capacities, defendant John Smith 1-5, in their individual capacities, and defendants Jane Smith 1-5, in their individual capacities, are all "persons" pursuant to 42 U.S.C. §1983, and were acting under the color of law.

150. Defendant President Waldron, in her individual capacity,

defendant Sergeant DeSimone, in her individual capacity, defendant Mr. Fulleman, in his individual capacity, defendant John Does 1-20, in their individual capacities, defendant Jane Does 1-20, in their individual capacities, defendant John Smith 1-5, in their individual capacities, and defendants Jane Smith 1-5, in their individual capacities, failed to provide plaintiffs Collick and Williams: (a) with the opportunity to respond, explain, and/or defend their actions; (b) with written notice of the charges against them until after they were arrested; (c) with the opportunity to confront, much less to cross-examine, their accuser, or have a third party do so on their behalf; (d) with a list of witnesses against them; and (e) with a prompt, thorough, and impartial investigation.

151. In addition, defendant President Waldron, in her individual capacity, defendant Sergeant DeSimone, in her individual capacity, defendant Mr. Fulleman, in his individual capacity, defendant John Does 1-20, in their individual capacities, defendant Jane Does 1-20, in their individual capacities, defendant John Smith 1-5, in their individual capacities, and defendants Jane Smith 1-5, in their individual capacities:(a) invaded plaintiffs Collick and Waldron's personal liberties and rights in an arbitrary and irrational manner; (b) acted with deliberate indifference to plaintiffs' presumed and actual innocence; (c) conducted an investigation that was reckless and grossly negligent; (d) agreed to, approved, and ratified this unconstitutional conduct; (e) detained, interrogated, and arrested plaintiffs without probable cause; (f) created and promulgated policies and practices that deprived plaintiffs of any due process rights in the investigation; and (g) failed to ensure training of the University Police in the legal and appropriate methods of investigating

27

allegations of sexual misconduct.

152. The stated actions, omissions, and misconduct of defendant President Waldron, in her individual capacity, defendant Sergeant DeSimone, in her individual capacity, defendant Mr. Fulleman, in his individual capacity, defendant John Does 1-20, in their individual capacities, defendant Jane Does 1-20, in their individual capacities, defendant John Smith 1-5, in their individual capacities, and defendants Jane Smith 1-5, in their individual capacities, were: (a) fundamentally unfair to plaintiffs; (b) unduly prone to false findings of sexual misconduct; (c) arbitrary and capricious; (d) so egregious as to shock the conscience; (e) performed in concert and demonstrated intentional, outrageous, and reckless disregard for Plaintiffs' constitutional rights; (f) deprived plaintiffs Collick and Williams of the due process protections guaranteed by the Fifth and Fourteenth Amendments where they imposed discipline on plaintiffs that was not rationally related to plaintiffs' actual conduct and, thus, deprived plaintiffs of their liberty and property interests, including their liberty interests in their good names, reputations, honor and integrity, opportunities to pursue education and employment, and their property interest in their education, without affording them the due process protections guaranteed by the Fifth and Fourteenth Amendments; (g) deprived plaintiffs Collick and Williams of their Fourth and Fourteenth Amendment rights to be free from unreasonable and unlawful restraint, arrest, and imprisonment; (h) denied plaintiffs Collick and Williams equal protection under the laws because they were subjected to different treatment than those similarly situated; (i) conspired to violate plaintiffs Collick and Williams's federal

28

constitutional and civil rights as alleged herein; and (j) deprived plaintiffs Collick and Williams of the above federal rights and civil rights without any compelling state interest, significant state objective, rational basis, or any other justification/ legitimate purpose.

153. The above federal Constitutional rights and civil rights were clearly established at the time of the stated actions, omissions, and misconduct of defendant President Waldron, in her individual capacity, defendant Sergeant DeSimone, in her individual capacity, defendant Mr. Fulleman, in his individual capacity, defendant John Does 1-20, in their individual capacities, defendant Jane Does 1-20, in their individual capacities, defendant John Smith 1-5, in their individual capacities, and defendants Jane Smith 1-5, in their individual capacities, acted as detailed herein.

154. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, and have and will continue to suffer permanent and irreparable harm.

155. Plaintiffs Collick and Williams' losses and damages are cognizable under 42 U.S.C. §1983.

29

WHEREFORE, plaintiffs pray for judgment against defendants, individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

    a. Compensatory damages in an amount to be determined at trial;

    b. Punitive damages;

    c. Interest;

    d. Attorneys' fees pursuant to 42 U.S.C. § 1988; and

    e. Costs of suit.

### COUNT THREE

**VIOLATION OF § 1985**
**(CONSPIRACY TO IMPEDE, HINDER, AND/OR DEFEAT**
**DUE COURSES OF JUSTICE WITH INTENT**
**TO DENY CLAIMANTS EQUAL PROTECTIONS)**

156. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 155 as set forth above.

157. Defendant President Waldron, in her individual capacity, defendant Sergeant DeSimone, in her individual capacity, defendant Mr. Fulleman, in his individual capacity, defendant John Does 1-20, in their individual capacities, defendant Jane Does 1-20, in their individual capacities, defendant John Smith 1-5, in their individual capacities, and defendants Jane Smith 1-5, in their individual capacities conspired for the purpose of depriving plaintiffs' federal constitutional, statutory and civil rights and/or privileges and immunities under the laws, including, their Fourth and Fourteenth Amendment rights to be free from unreasonable and unlawful restraint, arrest, and imprisonment, their due process protections guaranteed by the Fifth and Fourteenth Amendments, and their

30

rights to equal protection under the laws, as alleged herein.

158. Defendant President Waldron, in her individual capacity, defendant Sergeant DeSimone, in her individual capacity, defendant Mr. Fulleman, in his individual capacity, defendant John Does 1-20, in their individual capacities, defendant Jane Does 1-20, in their individual capacities, defendant John Smith 1-5, in their individual capacities, and defendants Jane Smith 1-5, in their individual capacities, each committed acts/took overt actions in furtherance of said conspiracy.

159. Said conspiracy, and the overt acts/and actions taken by defendant President Waldron, in her individual capacity, defendant Sergeant DeSimone, in her individual capacity, defendant Mr. Fulleman, in his individual capacity, defendant John Does 1-20, in their individual capacities, defendant Jane Does 1-20, in their individual capacities, defendant John Smith 1-5, in their individual capacities, and defendants Jane Smith 1-5, in their individual capacities, in furtherance of said conspiracy were not based on any personal animus against plaintiffs Collick and Williams as individuals, but rather arose out of a class-based, invidiously discriminatory animus based on plaintiffs' gender and/or race.

160. Defendants President Waldron, in her individual capacity, defendant Sergeant DeSimone, in her individual capacity, defendant Mr. Fulleman, in his individual capacity, defendant John Does 1-20, in their individual capacities, defendant Jane Does 1-20, in their individual capacities, defendant John Smith 1-5, in their individual capacities, and defendants Jane Smith 1-5, in their individual capacities', actions constitute violations of 42 U.S.C. §1985(3) as defendants conspired to impede, hinder, obstruct, and/or deprive plaintiffs Collick and Williams

31

of their rights and/or privileges as alleged herein.

161. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against defendants individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

    a. Compensatory damages in an amount to be determined at trial;

    b. Punitive damages;

    c. Interest;

    d. Attorneys' fees pursuant to 42 U.S.C. § 1988; and

    e. Costs of Suit.

## COUNT FOUR

### VIOLATION OF 42 U.S.C. § 1986

162. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 161 as set forth above.

163. Defendant President Waldron, in her individual capacity, defendant Sergeant DeSimone, in her individual capacity, defendant Mr.

32

Fulleman, in his individual capacity, defendant John Does 1-20, in their individual capacities, defendant Jane Does 1-20, in their individual capacities, defendant John Smith 1-5, in their individual capacities, and defendants Jane Smith 1-5, in their individual capacities had knowledge of the conspiracy to deprive plaintiffs Collick and Williams of their federal Constitutional, statutory and civil rights and/or privileges and immunities under the laws based on their status as African American male students accused of sexual misconduct, and the overt acts/actions committed in furtherance thereof.

164. Defendant President Waldron, in her individual capacity, defendant Sergeant DeSimone, in her individual capacity, defendant Mr. Fulleman, in his individual capacity, defendant John Does 1-20, in their individual capacities, defendant Jane Does 1-20, in their individual capacities, defendant John Smith 1-5, in their individual capacities, and defendants Jane Smith 1-5, in their individual capacities neglected and failed to prevent said wrongful and illegal acts even though they had the power and ability to do so.

165. Defendant President Waldron, in her individual capacity, defendant Sergeant DeSimone, in her individual capacity, defendant Mr. Fulleman, in his individual capacity, defendant John Does 1-20, in their individual capacities, defendant Jane Does 1-20, in their individual capacities, defendant John Smith 1-5, in their individual capacities, and defendants Jane Smith 1-5, in their individual capacities' neglect, aid, and refusal to prevent and/or rectify same is a violation of 42 U.S.C. § 1986.

166. As a direct and proximate result, Plaintiffs have been deprived

33

of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against defendants individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

> a. Compensatory damages in an amount to be determined at trial;
>
> b. Punitive damages;
>
> c. Interest;
>
> d. Attorneys' fees pursuant to 42 U.S.C. § 1988; and
>
> e. Costs of Suit.

## COUNT FIVE

### GOVERNMENTAL RESPONSIBILITY FOR FEDERAL CONSTITUTIONAL AND CIVIL RIGHTS VIOLATIONS

167. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 169 as set forth above.

168. At all times stated herein, defendant President Waldron, by virtue of her position as President of defendant William Paterson, had final

policy making authority on behalf of defendant William Paterson.

169. As a result of defendant President Waldron's high level position, influence, and connections her decisions, statements, instructions, and/or edicts constituted policy and/or custom of defendant William Paterson.

170. At all times stated herein, defendant Mr. Fulleman, by virtue of his position as defendant William Paterson's Director of Public Safety and University Police, had final policy making authority on behalf of defendant William Paterson and defendant University Police.

171. As a result of defendant Mr. Fulleman's high level position, influence, and connections his decisions, statements, instructions, and/or edicts constituted policy and/or custom of defendant William Paterson and defendant University Police.

172. At all times stated herein, defendant Sergeant DeSimone, by virtue of her position as a sergeant at defendant University Police, had final policy making authority on behalf of defendant University Police.

173. As a result of defendant Sergeant DeSimone's high level position, influence, and connections her decisions, statements, instructions, and/or edicts constituted policy and/or custom of defendant University Police.

174. At all relevant times, defendants Jane Does 1-20 and John Does 1-20, by virtue of their positions as employees, representatives, and/or agents of Defendant University Police, had final policy making authority on behalf of defendant University Police.

175. As a result of defendants Jane Does 1-20 and John Does 1-20's high level positions, influence, and connections their decisions, statements, instructions, and/or edicts constituted policy and/or custom of defendant University Police.

35

176. At all relevant times, defendants Jane Smith 1-5 John Smith 1-5, by virtue of their positions as employees, representatives, and/or agents of Defendant William Paterson, had final policy making authority on behalf of defendant William Paterson.

177. As a result of defendants Jane Smith 1-5 John Smith 1-5's high level positions, influence, and connections their decisions, statements, instructions, and/or edicts constituted policy and/or custom of defendant William Paterson.

178. Defendant William Paterson is responsible for the federal constitutional transgressions and violations of 42 U.S.C. §1983, 42 U.S.C. §1985, and/or 42 U.S.C. §1986 of its agents, employees, and servants, defendant President Waldron, defendant Mr. Fulleman, defendant DeSimone, and defendants Jane Smith 1-5 John Smith 1-5, stated herein because said improper actions and misconduct represented decisions, statements, instructions, and/or edicts made by those whose final policy making authority and, thus, constituted policy and/or custom of defendant William Paterson.

179. Moreover, defendant William Paterson failed to train and/or supervise defendant President Waldron, defendant Mr. Fulleman, defendant DeSimone, and defendants Jane Smith 1-5 John Smith 1-5, and same constituted deliberate indifference to plaintiffs.

180. The improper actions and misconduct of defendants President Waldron, Mr. Fulleman, DeSimone, and Jane Smith 1-5 John Smith 1-5, were part and parcel of policies, procedures, and/or customs officially sanctioned, mandated, and/or ordered by defendant William Paterson.

181. William Paterson neglected and/or refused to prevent the wrongs

36

that occurred.

182. Defendant University Police is responsible for the federal constitutional transgressions and violations of 42 U.S.C. §1983, 42 U.S.C. §1985, and/or 42 U.S.C. §1986 of its agents, employees, and servants, defendants Sergeant DeSimone, Mr. Fulleman, and Jane Does 1-20 and John Does 1-20, stated herein because said improper actions and misconduct represented decisions, statements, instructions, and/or edicts made by those whose final policy making authority and, thus, constituted policy and/or custom of defendant University Police.

183. Moreover, defendant University Police failed to train and/or supervise defendants Sergeant DeSimone, Mr. Fulleman, and Jane Does 1-20 and John Does 1-20 and same constituted deliberate indifference to plaintiffs.

184. The improper actions and misconduct of defendants Sergeant DeSimone, Mr. Fulleman, and Jane Does 1-20 and John Does 1-20 were part and parcel of policies, procedures, and/or customs officially sanctioned, mandated, and/or ordered by defendant University Police.

185. Defendant University Police neglected and/or refused to prevent the wrongs that occurred.

186. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of

their constitutional rights guaranteed by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, and have and will continue to suffer permanent and irreparable harm.

187. Plaintiffs Collick and Williams' losses and damages are cognizable under 42 U.S.C. §1983.

WHEREFORE, plaintiffs pray for judgment against defendants, William Paterson and University Police individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

    a. Compensatory damages in an amount to be determined at trial;

    b. Punitive damages;

    c. Interest;

    d. Attorneys' fees pursuant to 42 U.S.C. § 1988; and

    e. Costs of suit.

<u>COUNT SIX</u>

(VIOLATION OF THE NEW JERSEY CIVIL RIGHTS ACT (<u>N.J.S.A.</u> § 10:6-2, et seq.)

188. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 187 as set forth above.

189. New Jersey's Civil Rights Act provides, in pertinent part, that:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges, or immunities by the Constitution or laws of the United States, or any substantive rights, privileges, or immunities secured by the Constitution of laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation, or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

38

N.J.S.A. § 10:6-2(c).

190. Defendant President Waldron, in her individual and/or official capacity, defendant Sergeant DeSimone, in her individual and/or official capacity, defendant Mr. Fulleman, in his individual and/or official capacity, defendant John Does 1-20, in their individual and/or official capacities, defendant Jane Does 1-20, in their individual and/or official capacities, defendant John Smith 1-5, in their individual and/or official capacities, and defendants Jane Smith 1-5, in individual and/or official capacities are all "persons" pursuant to N.J.S.A. 10:6-2(c), and acted under the color of state law when they investigated the Accuser's allegations and wrongfully and unlawfully detained, interrogated, and arrested Plaintiffs Collick and Williams, as alleged herein.

191. The stated actions, omissions, and misconduct of defendant President Waldron, in her individual and/or official capacity, defendant Sergeant DeSimone, in her individual and/or official capacity, defendant Mr. Fulleman, in his individual and/or official capacity, defendant John Does 1-20, in their individual and/or official capacities, defendant Jane Does 1-20, in their individual and/or official capacities, defendant John Smith 1-5, in their individual and/or official capacities, and defendants Jane Smith 1-5, in individual and/or official capacities deprived Plaintiffs Collick and Williams of their substantive due process, procedural due process, and equal protection of rights, privileges, and/or immunities secured to them by the Constitution and laws of the United States of America and the State of New Jersey, and interfered and attempted to interfere with Plaintiffs' exercise or enjoyment of those substantive rights, privileges or immunities by threats, intimidation, or coercion.

192. The stated actions and misconduct of defendant President Waldron, in her individual and/or official capacity, defendant Sergeant DeSimone, in her individual and/or official capacity, defendant Mr. Fulleman, in his individual and/or official capacity, defendant John Does 1-20, in their individual and/or official capacities, defendant Jane Does 1-20, in their individual and/or official capacities, defendant John Smith 1-5, in their individual and/or official capacities, and defendants Jane Smith 1-5, in individual and/or official capacities, including the investigation, detainment, interrogation, and arrests of plaintiffs Collick and Williams were:   (a)  neither objectively reasonable nor constitutional; (b) fundamentally unfair to plaintiffs; (c)  unduly prone to false findings of sexual misconduct; (d) were arbitrary and capricious; (e) so egregious as to shock the conscience; (f) performed in concert and demonstrated intentional, outrageous, and reckless disregard for Plaintiffs' state and federal constitutional rights; (g) deprived plaintiffs Collick and Williams of the due process protections guaranteed by the Fifth and Fourteenth Amendments where they imposed discipline on plaintiffs that was not rationally related to plaintiffs' actual conduct and, thus, deprived plaintiffs of their liberty and property interests, including their liberty interests in their good names, reputations, honor and integrity, opportunities to pursue education and employment, and their property interest in their education, without affording them the due process protections guaranteed by the Fifth and Fourteenth Amendments; (h) deprived plaintiffs Collick and Williams of their Fourth and Fourteenth Amendment rights to be free from unreasonable and unlawful restraint, arrest, and imprisonment; (i) denied plaintiffs Collick and Williams equal

40

protection under the laws because they were subjected to different treatment than those similarly situated.

193. Defendant President Waldron, in her individual and/or official capacity, defendant Sergeant DeSimone, in her individual and/or official capacity, defendant Mr. Fulleman, in his individual and/or official capacity, defendant John Does 1-20, in their individual and/or official capacities, defendant Jane Does 1-20, in their individual and/or official capacities, defendant John Smith 1-5, in their individual and/or official capacities, and defendants Jane Smith 1-5, in individual and/or official capacities, (a) deprived plaintiffs of their rights to be "free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, of pursuing and obtaining safety and happiness" which is protected by Article 1 of the New Jersey Constitution; and (b) conspired to violate Plaintiffs Collick and Williams's federal and state constitutional and civil rights as alleged herein.

194. Defendant President Waldron, in her individual and/or official capacity, defendant Sergeant DeSimone, in her individual and/or official capacity, defendant Mr. Fulleman, in his individual and/or official capacity, defendant John Does 1-20, in their individual and/or official capacities, defendant Jane Does 1-20, in their individual and/or official capacities, defendant John Smith 1-5, in their individual and/or official capacities, and defendants Jane Smith 1-5, in individual and/or official capacities, deprived plaintiffs Collick and Williams of the above federal and state rights and civil rights without any compelling state interest, significant state objective, rational basis, or any other justification/

41

legitimate purpose.

195. The above federal and state constitutional rights and civil rights were clearly established at the time of the stated actions, omissions, and misconduct of defendant President Waldron, in her individual and/or official capacity, defendant Sergeant DeSimone, in her individual and/or official capacity, defendant Mr. Fulleman, in his individual and/or official capacity, defendant John Does 1-20, in their individual and/or official capacities, defendant Jane Does 1-20, in their individual and/or official capacities, defendant John Smith 1-5, in their individual and/or official capacities, and defendants Jane Smith 1-5, in individual and/or official capacities, detailed herein.

196. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., were confined to jail for nine days, and have and will continue to suffer permanent and irreparable harm.

197. Plaintiffs' losses and damages are cognizable under the "New

42

Jersey Civil Rights Act," N.J.S.A. 10:6-1 et seq.

WHEREFORE, plaintiffs pray for judgment against defendants individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

a. Compensatory damages in an amount to be determined at trial;

b. Punitive damages;

c. Civil penalties against Defendants pursuant to N.J.S.A. § 10-2(e);

d. Interest;

e. Attorneys' fees; and

f. Costs of Suit.

## COUNT SEVEN

**GOVERNMENTAL RESPONSIBILITY UNDER N.J.S.A. 10:6-1 et seq.**

198. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 197 as set forth above.

199. At all times stated herein, defendant President Waldron, by virtue of her position as President of defendant William Paterson, had final policy making authority on behalf of defendant William Paterson.

200. As a result of defendant President Wilson's high level position, influence, and connections her decisions, statements, instructions, and/or edicts constituted policy and/or custom of defendant William Paterson.

201. At all times stated herein, defendant Mr. Fulleman, by virtue of his position as defendant William Paterson's Director of Public Safety and University Police, had final policy making authority on behalf of defendant William Paterson and defendant University Police.

43

202. As a result of defendant Mr. Fulleman's high level position, influence, and connections his decisions, statements, instructions, and/or edicts constituted policy and/or custom of defendant William Paterson and defendant University Police.

203. At all times stated herein, defendant Sergeant DeSimone, by virtue of her position as a sergeant at defendant University Police, had final policy making authority on behalf of defendant University Police.

204. As a result of defendant Sergeant DeSimone's high level position, influence, and connections her decisions, statements, instructions, and/or edicts constituted policy and/or custom of defendant University Police.

205. At all relevant times, defendants Jane Does 1-20 and John Does 1-20, by virtue of their positions as employees, representatives, and/or agents of Defendant University Police, had final policy making authority on behalf of defendant University Police.

206. As a result of defendants Jane Does 1-20 and John Does 1-20's high level positions, influence, and connections their decisions, statements, instructions, and/or edicts constituted policy and/or custom of defendant University Police.

207. At all relevant times, defendants Jane Smith 1-5 John Smith 1-5, by virtue of their positions as employees, representatives, and/or agents of Defendant William Paterson, had final policy making authority on behalf of defendant William Paterson.

208. As a result of defendants Jane Smith 1-5 John Smith 1-5's high level positions, influence, and connections their decisions, statements, instructions, and/or edicts constituted policy and/or custom of defendant William Paterson.

44

209. Defendant William Paterson is responsible for the state and federal constitutional transgressions and violations of "New Jersey Civil Rights Act," N.J.S.A. 10:6-1 et seq. of its agents, employees, and servants, defendants President Waldron, Mr. Fulleman, and Jane Smith 1-5 John Smith 1-5, stated herein because said improper actions and misconduct represented decisions, statements, instructions, and/or edicts made by those whose final policy making authority and, thus, constituted policy and/or custom of defendant William Paterson.

210. Moreover, defendant William Paterson failed to train and/or supervise defendants President Waldron, Mr. Fulleman, and Jane Smith 1-5 John Smith 1-5 and same constituted deliberate indifference to plaintiffs.

211. The improper actions and misconduct of defendants President Waldron, Mr. Fulleman, and Jane Smith 1-5 John Smith 1-5 were part and parcel of policies, procedures, and/or customs officially sanctioned, mandated, and/or ordered by Defendant William Paterson.

212. William Paterson neglected and/or refused to prevent the wrongs that occurred.

213. Defendant University Police is responsible for the state federal constitutional transgressions and violations of "New Jersey Civil Rights Act," N.J.S.A. 10:6-1 et seq. of its agents, employees, and servants, defendants Sergeant DeSimone, Mr. Fulleman, and Jane Does 1-20 and John Does 1-20, stated herein because said improper actions and misconduct represented decisions, statements, instructions, and/or edicts made by those whose final policy making authority and, thus, constituted policy and/or custom of defendant University Police.

214. Moreover, defendant University Police failed to train and/or

45

supervise defendant Sergeant DeSimone, defendant Mr. Fulleman, and defendants Jane Does 1-20 and John Does 1-20 and same constituted deliberate indifference to plaintiffs.

215. The improper actions and misconduct of defendants Sergeant DeSimone, Mr. Fulleman, and Jane Does 1-20 and John Does 1-20 were part and parcel of policies, procedures, and/or customs officially sanctioned, mandated, and/or ordered by Defendant University Police.

216. Defendant University Police neglected and/or refused to prevent the wrongs that occurred.

217. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

218. Plaintiffs' losses and damages are cognizable under the "New Jersey Civil Rights Act," N.J.S.A. 10:6-1 et seq.

WHEREFORE, plaintiffs pray for judgment against defendants, William Paterson and University Police individually, jointly and severally, for

46

the following relief, and such other relief as the Court may deem proper:

      a. Compensatory damages in an amount to be determined at trial;

      b. Punitive damages;

      c. Civil penalties against Defendants pursuant to N.J.S.A. §
        10-2(e);

      d. Interest;

      e. Attorneys' fees; and

      f. Costs of Suit.

## COUNT EIGHT

**VIOLATION OF LAW AGAINST DISCRIMINATION N.J.S.A. § 10:5-1, et seq.**

219. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 218 as set forth above.

220. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 unlawfully discriminated against plaintiffs on the basis of their race and gender.

221. The policies, procedures, and practices implemented and enforced by defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 discriminated against plaintiffs by subjecting them to disparate treatment because of their gender and/or race.

222. As a purported female victim, the Accuser's allegations against the male plaintiffs were accepted as true without any investigation being performed and without the development of any facts or exculpatory evidence.

223. Plaintiffs Collick and Williams were presumed guilty and were

47

not afforded the full protections of the law or their due process rights because they were male.

224. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 discriminated against plaintiffs by subjecting them to disparate treatment because of their race and/or their gender.

225. Upon information and belief, the Accuser is of Latina or Spanish origin.

226. All of the alleged perpetrators, including plaintiffs Collick and Williams were African American males.

227. Upon information and belief, all of the investigation and arresting officers were either Caucasian or Latino.

228. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 discriminated against Plaintiffs by improperly investigating, detaining, interrogating, and arresting plaintiffs on the basis of their race as opposed to the facts of the allegations.

229. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5's unlawful and discriminatory conduct constitutes a willful and wanton violation of the New Jersey Law Against Discrimination and was undertaken with reckless indifference to plaintiffs' civil rights.

230. Plaintiffs have been disparately impacted and disparately

48

treated as a result of defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5's discriminatory conduct.

231. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 were of such positions that their edicts and acts represent official policy, procedure, and/or custom of defendants William Paterson and the University Police.

231. The improper actions and misconduct of defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 were part and parcel of policies, procedures, and/or customs officially sanctioned, mandated, and/or ordered by Defendants William Paterson and the University Police.

232. Defendants William Paterson and the University Police neglected and/or refused to prevent the wrongs that occurred.

233. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 aided and abetted defendants William Paterson and the University Police in committing the aforementioned discrimination.

234. Defendants William Paterson and the University Police are thus responsible for the allegations stated herein of their agents, employees, representatives, and/or servants as alleged herein.

235. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and

49

psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

236. Plaintiffs' losses and damages are cognizable under the "New Jersey Law Against Discrimination," N.J.S.A. § 10:5-1, et seq.

WHEREFORE, plaintiffs pray for judgment against the defendants, individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

    a. Compensatory damages in an amount to be determined at trial;

    b. Punitive damages;

    c. Interest;

    d. Attorneys' fees; and

    e. Costs of Suit.

## COUNT NINE

### (FALSE ARREST AND IMPRISONMENT)

237. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 236 as set forth above.

238. At all times material and relevant herein, Defendants Mr. Fulleman, Sergeant DeSimone, John Does 1-20, and Jane Does 1-20 were acting

50

within the scope of their authority as police officers of William Paterson and the University Police.

239. At all times material and relevant herein, defendants Mr. Fulleman, Sergeant DeSimone, John Does 1-20, and Jane Does 1-20 acted under the color of the law of the State of New Jersey.

240. Defendants Mr. Fulleman, Sergeant DeSimone, John Does 1-20, and Jane Does 1-20 intentionally and without reasonable basis made an improper arrest of and/or restrained plaintiffs Collick and Williams's freedom of movement for an unreasonable period of time thereafter, contrary to the common laws of the State of New Jersey.

241. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against defendants individually jointly and severally, for the following relief, and such other relief as the Court may deem proper:

51

a. Compensatory damages in an amount to be determined at trial;

b. Punitive damages;

c. Interest;

d. Attorneys' fees; and

e. Costs of Suit.


## COUNT TEN

### (MALICIOUS PROSECUTION)

242. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 241 as set forth above.

243. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 maliciously and unlawfully initiated a criminal process against plaintiffs as a pretextual justification for the injuries inflicted upon plaintiffs Collick and Williams and/or in order to protect themselves from criminal and civil liability.

244. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 initiated and/or caused the initiation of criminal process and charges against plaintiffs Collick and Williams without legal or factual justification and were not based upon probable cause.

245. Said criminal process and charges terminated favorably to and/or in a manner not adverse to plaintiffs Collick and Williams.

246. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain

consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against the defendants, individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

    a. Compensatory damages in an amount to be determined at trial;

    b. Interest;

    c. Attorneys' fees; and

    d. Costs of Suit.

## COUNT ELEVEN

### (MALICIOUS ABUSE OF PROCESS)

247. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 246 as set forth above.

248. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 caused an issuance of process in the form

of an investigation, interview, arrest, and imprisonment of Plaintiffs.

249. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 used said "process" to accomplish some ulterior purpose for which it was not designed or intended, or which has not the legitimate purpose of the particular process employed.

250. Specifically, defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 used the issuance of process as a means to unlawfully and unjustifiably interrogate and arrest plaintiffs Collick and Williams.

251. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 knew or had reason to believe that the criminal process initiated against plaintiffs was groundless and thereafter made misrepresentations to gain an advantage over plaintiffs Collick and Williams's certain constitutional claims and/or to protect their interests.

252. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth

54

Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, Plaintiffs pray for judgment against the Defendants, individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

    a. Compensatory damages in an amount to be determined at trial;

    b. Punitive Damages;

    c. Interest;

    d. Attorneys' fees; and

    e. Costs of Suit.

## COUNT TWELVE

### (TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)

253. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 252 as set forth above.

254. Plaintiffs Collick and Williams had the reasonable expectation of economic advantage or benefit arising out of its relationships with defendant William Paterson and the Educational Opportunity Fund Program, namely financial aid enabling access to higher education.

255. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 had knowledge of plaintiffs Collick and Williams's expectancy of economic advantage and were aware of Plaintiffs' relationship

with William Paterson and the Educational Opportunity Fund Program.

256. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 wrongfully and without justification interfered with plaintiff's expectancy of economic advantage or benefit where their false, misleading, and highly offensive statements portrayed plaintiffs Collick and Williams in a negative light, as well as their wrongful and unlawful investigation, prosecution, and other actions severed plaintiffs' relationships with defendant William Paterson and the Educational Opportunity Fund Program.

257. As a result of defendants' willful and/or negligent conduct, plaintiffs were expelled from William Paterson.

258. By willfully and/or negligently making such statements and/or committing such acts, defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5, tortiously interfered with plaintiffs' relationships with William Paterson and the Educational Opportunity Fund without justification or cause.

259. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth

Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against the defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 individually, jointly and severally, for the following relief, and other such relief as the Court may deem proper:

      a. Compensatory damages in an amount to be determined at trial;

      b. Punitive damages;

      c. Interest;

      d. Attorneys' fees; and

      e. Costs of suit.

### COUNT THIRTEEN

#### (BREACH OF CONTRACT)

260.  Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 259 as set forth above.

261.  Plaintiffs Collick and Williams had a contractual relationship, either express or implied with defendant William Paterson.

262.  Said contract was formed when plaintiffs Collick and Williams paid tuition and fees to defendant Williams Paterson and when plaintiffs Collick and Williams became subject to the terms contained in defendant William Paterson's Code of Conduct.

263.  Plaintiffs Collick and Williams had a reasonable expectation

that defendant William Paterson and its agents, employees, and/or representatives would adhere to the terms of said contract.

264. Plaintiffs Collick and Williams also had a reasonable expectation that defendant William Paterson's stated policies and procedures would comply with the requirement under Title IX regulations to provide an equitable process for adjudicating claims of sexual misconduct and to ensure due process to both the accuser and the accused.

265. Defendant William Paterson and defendants president Waldron, Mr. Fulleman, John Smith 1-5 and Jane Smith 1-5, acting on its behalf, breached the expressed and/or implied agreements with Plaintiffs Collick and Williams.

266. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against the defendant William Paterson, for the following relief, and such other relief as the Court may

deem proper:

   a. Compensatory damages in an amount to be determined at trial;

   b. Interest;

   c. Attorneys' fees; and

   d. Costs of Suit.

## COUNT FOURTEEN

### (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

267. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 266 as set forth above.

268. Defendant William Paterson and defendants President Waldron, Mr. Fulleman, John Smith 1-5 and Jane Smith 1-5 acting on its behalf breached and violated the covenant of good faith and fair dealing implied in the agreement(s) with plaintiffs Collick and Williams by failing to abide by its own regulations and by disciplining plaintiffs notwithstanding the lack of evidence in support of the Accuser's allegations other than the allegations themselves.

269. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable

59

through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against defendant William Paterson for the following relief, and such other relief as the Court may deem proper:

      a. Compensatory damages in an amount to be determined at trial;

      b. Interest;

      c. Attorneys' fees; and

      d. Costs of Suit.

### COUNT FIFTEEN

### (NEGLIGENT TRAINING AND SUPERVISION)

270. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 269 as set forth above.

271. Defendants President Waldron, Mr. Fulleman, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and/or Jane Smith 1-5 failed to properly train, supervise, and discipline defendants Ellen DeSimone, John Does 1-20, Jane Does 1-20, John Smith 1-5, Jane Smith 1-5, investigating members of the University Police, and other agents and/or employees of William Paterson and/or University Police on how to properly investigate allegations of sexual misconduct.

272. Defendants Sergeant DeSimone, John Does 1-20, Jane Does 1-20, John Smith 1-5, Jane Smith 1-5, and individual agents, employees, and/or representatives of William Paterson and the University Police were at no

time trained on how to properly respond to allegations such as those made by the Accuser.

273.  Defendants William Paterson and the University Police were negligent in screening, hiring, training, supervising, disciplining, and/or retaining the Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, John Does 1-20, Jane Does 1-20, John Smith 1-5 and/or Jane Smith 1-5 in this matter, who they knew or should have known were not qualified to act properly in this matter.

274.  William Paterson and the University Police are liable for the aforesaid acts under the doctrine of *respondeat superior* and because they permitted conditions to exist which facilitated and/or permitted such conduct to occur.

275.  As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against the defendants

61

jointly and severally, for the following relief, and such other relief as the Court may deem proper:

      a. Compensatory damages in an amount to be determined at trial;

      b. Interest;

      c. Attorneys' fees; and

      d. Costs of Suit.

## COUNT SIXTEEN

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

276. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 275 as set forth above.

277. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and/or Jane Smith's 1-5 conduct and actions detailed herein were intentional, extreme, and outrageous.

278. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and/or Jane Smith 1-5 intended to cause, or were in reckless disregard of the probability that their actions and conduct would cause, severe emotional distress to Plaintiffs Collick and Williams.

279. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and/or Jane Smith 1-5's misconduct described herein was undertaken with malice, willfulness, and reckless indifference to the rights of others.

280. As a direct and proximate result, plaintiffs have been deprived

of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against the defendants, individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

     a. Compensatory damages in an amount to be determined at trial;

     b. Punitive damages;

     c. Interest;

     d. Attorneys' fees; and

     e. Costs of Suit.

## COUNT SEVENTEEN

### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

281. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 280 as set forth above.

282. Defendants President Waldron, Mr. Fulleman, Sergeant

63

DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and/or Jane Smith 1-5 had a continuing affirmative duty to perform their professional services in such a manner as not to inflict emotional distress on Plaintiffs Collick and Williams.

283. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and/or Jane Smith 1-5 breached their duties by continually negligently inflicting emotional distress on Plaintiffs Collick and Williams.

284. In addition, plaintiff Nancy Williams sustained severe emotional distress while observing defendants' tortious conduct against her son, plaintiff Collick.

285. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et

seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against the defendants, individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

    a. Compensatory damages in an amount to be determined at trial;

    b. Interest;

    c. Attorneys' fees; and

    d. Costs of Suit.

## COUNT EIGHTEEN

### (NEGLIGENCE)

286. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 285 as set forth above.

287. At all times material and relevant hereto, defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and/or Jane Smith 1-5 owed Plaintiffs Collick and Williams a duty of care.

288. At all times material and relevant hereto, defendants William Paterson and the University Police, as well as defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, John Does 1-20, Jane Does 1-20, John Smith 1-5 and/or Jane Smith 1-5 acting on their behalf, were charged with the responsibility of ensuring that all members of the William Paterson student body were not deprived of the freedom and rights bestowed upon them by the Constitution of the State of New Jersey and the United States Constitution.

289. At all times material and relevant hereto, defendants William

65

Paterson and the University Police maintained and executed reckless and grossly inadequate sets of procedures, standards, guidelines, training, disciplining, and/or supervising the William Paterson student body.

290. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and/or Jane Smith 1-5 breached their duty of care when they were negligent in investigating the Accuser's allegations, interrogating, detaining, and arresting plaintiffs Collick and Williams.

291. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against the defendants, individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

a. Compensatory damages in an amount to be determined at trial;

b. Interest;

66

c. Attorneys' fees; and

d. Costs of Suit.

## COUNT NINETEEN

### (GROSS NEGLIGENCE)

292. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 291 as set forth above.

293. As outlined above, Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and/or Jane Smith 1-5 breached their duty of care in investigating the Accuser's allegations, interrogating, detaining, and arresting Plaintiffs Collick and Williams.

294. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and/or Jane Smith 1-5's actions exhibited an extreme absence of and failure to exercise slight care or diligence.

295. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered

67

a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against the defendants, individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

> e. Compensatory damages in an amount to be determined at trial;
>
> f. Interest;
>
> g. Attorneys' fees; and
>
> h. Costs of Suit.

## COUNT TWENTY

### RESPONDEAT SUPERIOR

296. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 295 as set forth above.

297. The individual defendants, President Waldron, Mr. Fulleman, Sergeant DeSimone, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 were agents, employees, representatives, and/or servants of the non-individual defendants, William Paterson and the University Police.

298. As a result, the non-individual defendants, William Paterson and the University Police, are responsible for the improper actions and conduct of their agents, employees, representatives, and/or servants who are individual defendants under the doctrine of vicarious liability.

299. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning

68

capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against the defendants, individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

> a. Compensatory damages in an amount to be determined at trial;
>
> b. Punitive damages;
>
> c. Interest;
>
> d. Attorneys' fees; and
>
> e. Costs of Suit.

## COUNT TWENTY-ONE

### DECLARATORY JUDGMENT

300. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 299 as set forth above.

301. Defendant William Paterson and the individual defendants, President Waldron, Mr. Fulleman, Sergeant DeSimone, John Does 1-20, Jane

69

Does 1-20, John Smith 1-5 and Jane Smith 1-5, acting on its behalf have committed numerous violations of its contracts with plaintiffs Collick and Williams, of its own policies and procedures, and of federal and state law.

302.  As a direct and proximate result thereof, plaintiffs Collick and Williams's educations, future careers, and reputations have been severely and irreparably damaged.

303.  Without appropriate redress, the unfair outcome of defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5's investigation and ultimate expulsion of plaintiffs Collick and Williams will continue to cause irreversible damages to plaintiffs.

304.  As a result of the foregoing, there exists a justiciable controversy as to the outcome, permanency, and future handling of plaintiffs' student records at defendant William Paterson.

305.  By reason of the foregoing, plaintiffs Collick and Williams request, pursuant to 28 U.S.C. § 2201, a declaration that: (1) the outcome and findings made by William Paterson be reversed; (2) plaintiffs' reputations be restored; (3) plaintiffs' disciplinary records be expunged; (4) the record of plaintiffs' expulsion from defendant William Paterson University be removed from their education files; and (5) William Paterson's rules, regulations, and guidelines are unconstitutional as applied.

<u>PRAYER FOR RELEIF</u>

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendants, individually, jointly, and severally, as follows:

70

A. Awarding Plaintiffs the costs and disbursements of this
   action, including reasonable attorneys' fees, expenses, and
   other costs permitted by law, including but not limited to
   42 U.S.C. § 1988 and any other applicable authority, in
   amounts to be determined by the Court;

B. Awarding prejudgment interest;

C. Awarding compensatory damages in an amount to be proven at
   trial;

D. Awarding punitive damages in an amount to be proven at trial;

E. Such other relief as to the Court appears just and proper.


### JURY DEMAND

Plaintiffs respectfully demand a trial by jury.


### DESIGNATION OF TRIAL COUNSEL

Michael J. Epstein is hereby designated as trial counsel.


                                    THE EPSTEIN LAW FIRM, P.A.


                            By: _____
                                    MICHAEL J. EPSTEIN

Dated: December 21, 2015


71

<u>CERTIFICATION</u>

I hereby certify that, pursuant to Rule 4:5-1: (1) the within matter in controversy is not the subject of any other action pending in any other court or arbitration; (2) no other action or arbitration proceeding is contemplated; and (3) no other necessary party to be joined in the subject litigation is presently known.

THE EPSTEIN LAW FIRM, P.A.

By: _____
MICHAEL J. EPSTEIN

Dated: December 21, 2015