EXHIBIT "A"

Appendix XII-B1



# CIVIL CASE INFORMATION STATEMENT
## (CIS)

Use for initial Law Division
Civil Part pleadings (not motions) under *Rule* 4:5-1
**Pleading will be rejected for filing, under *Rule* 1:5-6(c),
if information above the black bar is not completed
or attorney's signature is not affixed**

| FOR USE BY CLERK'S OFFICE ONLY |
|---|
| PAYMENT TYPE: ☐ CK ☐ CG ☐ CA |
| CHG/CK NO. |
| AMOUNT: |
| OVERPAYMENT: |
| BATCH NUMBER: |

| ATTORNEY / PRO SE NAME | TELEPHONE NUMBER | COUNTY OF VENUE |
|---|---|---|
| Michael J. Epstein, Esq. | (201) 845-5962 | Passaic |

| FIRM NAME (if applicable) | DOCKET NUMBER (when available) |
|---|---|
| The Epstein Law Firm, P.A. | L - 4351-15 |

| OFFICE ADDRESS | DOCUMENT TYPE |
|---|---|
| 340 West Passaic Street Rochelle Park, NJ 07662 | Complaint |
| | JURY DEMAND ☒ YES ☐ NO |

| NAME OF PARTY (e.g., John Doe, Plaintiff) | CAPTION |
|---|---|
| PLAINTIFFS MR. COLLICK, NOAH WILLIAMS, and NANCY WILLIAMS | COLLICK, WILLIAMS, and WILLIAMS v. WILLIAM PATERSON UNIVERSITY, KATHLEEN M. WALDRON, ROBERT FULLEMAN, ELLEN DESIMONE, WILLIAM PATERSON UNIVERSITY P.D., et al. |

| CASE TYPE NUMBER (See reverse side for listing) 005 | HURRICANE SANDY RELATED? ☐ YES ☒ NO | IS THIS A PROFESSIONAL MALPRACTICE CASE? ☐ YES ☒ NO |
|---|---|---|
| | | IF YOU HAVE CHECKED "YES," SEE *N.J.S.A.* 2A:53 A -27 AND APPLICABLE CASE LAW REGARDING YOUR OBLIGATION TO FILE AN AFFIDAVIT OF MERIT. |

| RELATED CASES PENDING? ☐ Yes ☒ No | IF YES, LIST DOCKET NUMBERS |
|---|---|

| DO YOU ANTICIPATE ADDING ANY PARTIES (arising out of same transaction or occurrence)? ☐ Yes ☒ No | NAME OF DEFENDANT'S PRIMARY INSURANCE COMPANY (if known) ☐ NONE ☒ UNKNOWN |
|---|---|

| THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE. |
|---|

CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

| DO PARTIES HAVE A CURRENT, PAST OR RECURRENT RELATIONSHIP? ☐ Yes ☒ No | IF YES, IS THAT RELATIONSHIP: ☐ EMPLOYER/EMPLOYEE ☐ FRIEND/NEIGHBOR ☐ OTHER (explain) ☐ FAMILIAL ☐ BUSINESS |
|---|---|

| DOES THE STATUTE GOVERNING THIS CASE PROVIDE FOR PAYMENT OF FEES BY THE LOSING PARTY? ☐ YES ☒ No |
|---|

USE THIS SPACE TO ALERT THE COURT TO ANY SPECIAL CASE CHARACTERISTICS THAT MAY WARRANT INDIVIDUAL MANAGEMENT OR ACCELERATED DISPOSITION

F I L E D
Superior Court of New Jersey

DEC 22 2015

Passaic County

| DO YOU OR YOUR CLIENT NEED ANY DISABILITY ACCOMMODATIONS? ☐ Yes ☒ No | IF YES, PLEASE IDENTIFY THE REQUESTED ACCOMMODATION |
|---|---|
| WILL AN INTERPRETER BE NEEDED? ☐ Yes ☒ No | IF YES, FOR WHAT LANGUAGE? |

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b).

ATTORNEY SIGNATURE:

Michael J. Epstein, Esq. - 034101996
THE EPSTEIN LAW FIRM, P.A.
340 West Passaic Street
Rochelle Park, New Jersey 07662
(201) 845-5962
Attorneys for Plaintiffs
mjepstein@theepsteinlawfirm.com

RECEIVED
Superior Court of New Jersey

FILED
DEC 22 2015
Superior Court of New Jersey
Passaic County

DEC 22 2015
Passaic County

| | |
|---|---|
| GARRETT COLLICK, NOAH WILLIAMS, and NANCY WILLIAMS,<br><br>                                Plaintiffs,<br><br>    vs.<br><br>WILLIAM PATERSON UNIVERSITY, KATHLEEN M. WALDRON, ROBERT FULLEMAN, ELLEN DESIMONE, WILLIAM PATERSON UNIVERSITY POLICE DEPARTMENT, JOHN DOES 1-20 (names fictitious as presently unknown), employees, representatives, and/or agents of defendant WILLIAM PATERSON UNIVERSITY POLICE DEPARTMENT, JANE DOES 1-20 (names fictitious as presently unknown), employees, representatives, and/or agents of defendant WILLIAM PATERSON UNIVERSITY POLICE DEPARTMENT, JOHN SMITH 1-5 (names fictitious as presently unknown), employees, representatives, agents, and/or spokespersons of defendant WILLIAM PATERSON UNIVERSITY, and JANE SMITH 1-5 (names fictitious as presently unknown), employees, representatives, agents, and/or spokespersons of defendant WILLIAM PATERSON UNIVERSITY,<br><br>                                Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: PASSAIC COUNTY<br>DOCKET NO:  PAS-L- 4351-15<br><br><br>Civil Action<br><br><br>COMPLAINT |

    Plaintiffs Garrett Collick, Noah Williams, and Nancy Williams (hereinafter collectively referred to as "Plaintiffs") by their attorneys, The Epstein Law Firm, P.A., as and for their Complaint, respectfully allege as follows:

## THE NATURE OF THE ACTION

1. Plaintiffs Garret Collick ("Collick" or "plaintiff") and Noah Williams ("Williams" or "plaintiff") seek redress against defendants William Paterson University ("William Paterson"), William Paterson University Police Department ("University Police"), and their respectively named agents, employees, representatives, and/or spokespersons due to the actions, omissions, errors, flawed policies and procedures, reckless conduct, negligence, and overall failure to provide plaintiffs with the expected standard of due process and equal protection under the laws arising out of the wrongful and false allegations of sexual misconduct made against plaintiffs Collick and Williams, who at the time were both male freshman students at William Paterson, 18 years old, African American, and in good academic and financial standing.

2. On or about after midnight on November 25, 2014, a female first-year student at defendant William Paterson ("the Accuser") initiated consensual sexual activities with plaintiffs Collick and Williams and three other first-year students ("the Incident").

3. The Incident occurred in William Paterson's Overlook South residence building, a freshman co-ed dormitory housing approximately 443 students in Wayne, New Jersey.

4. After the Incident, all participating parties, namely the Accuser, plaintiffs Collick and Williams, and the three other first year students, were on good terms.

5. Nevertheless, upon information and belief, later in the day, on November 25, 2014, the Accuser falsely reported the Incident to University Police as non-consensual sexual activities, rape, sexual assault and

2

kidnapping.

6. On November 28, 2014, without conducting any investigation and based on the Accuser's report alone, University Police Detective Sergeant Ellen DeSimone ("Sergeant DeSimone") filed for probable cause warrants against plaintiffs Collick and Williams and the three others, which a judge executed.

7. On November 29, 2014, University Police arrested Plaintiffs Collick and Williams as well as the three other first-year students while off-campus with no warrants and no explanation whatsoever.

8. University Police then transported plaintiffs Collick and Williams to campus where they were held and interrogated, and thereafter transferred to the Passaic County Jail.

9. University Police charged plaintiff Collick with four counts of aggravated sexual assault, one count of conspiracy to commit sexual assault, one count of criminal restraint, and one count of aggravated sexual contact.

10. University Police charged plaintiff Williams with two counts of aggravated sexual assault, one count of first degree kidnapping, one count of conspiracy to commit sexual assault, and two counts of criminal restraint.

11. Bail was originally set at $200,000 each for Collick and Williams, but reduced to $25,000 each.

12. On November 29, 2014, William Paterson also issued plaintiffs Collick and Williams a Notice of Interim Suspension stating that they were formally banned from entering William Paterson's grounds and facilities until the school's disciplinary process adjudicated the case because

3

Plaintiffs were deemed to be clear and present dangers to the community.

13. On November 30, 2014, defendant Kathleen Waldron ("President Waldron"), defendant William Paterson's President, issued and published a public statement asserting that a crime had occurred on campus and expressing her condolences to the Accuser.

14. Plaintiffs, Collick and Williams were held at Passaic County Jail for nine days, five days in general population and four days in the fourth floor medium security area.

15. Plaintiffs, Collick and Williams posted bail on December 4, 2014, and were released from jail on December 9, 2014.

16. Upon release, both plaintiffs had to complete sex offender registration and information forms.

17. On January 26, 2014, a Passaic County Grand Jury refused to indict plaintiffs and entered a no bill.

18. Despite no basis for a prosecution and the charges being dismissed, William Paterson expelled plaintiffs Collick and Williams after allegedly performing an independent student conduct investigation.

19. In arresting, disciplining, and jailing plaintiffs Collick and Williams, defendants discriminated against them on the basis of their gender and race and without affording them due process and the equal protection of the laws.

20. Defendants William Paterson and the University Police failed to adhere to their own guidelines and regulations, and violated plaintiffs' federal and state Constitutional rights.

21. Defendants' William Paterson and the University Police's policies and procedures are insufficient to protect the rights of male,

4

minority students accused of sexual assault.

22. Defendants' actions, conduct, omissions, and decisions were discriminatory given the lack of evidence and due process. In essence, defendants rushed to judgment, considered plaintiffs Collick and Williams guilty solely on the Accuser's report, and gave little thought, if any, to the investigation and discovery of the actual facts involved.

23. As a result of defendants' failures and tortious actions alleged herein, plaintiffs Collick and Williams have sustained significant damages and losses, given that: (a) their educational careers were effectively terminated; (b) their academic futures have been severely and irreparably damaged; (c) the monies expended on obtaining a college education have been lost; (d) plaintiffs and their families' sacrifices so that plaintiffs could receive a quality education have been wasted; (e) monies acquired from various educational funds and programs have been squandered; (f) their current and future careers and potential earnings have been severely and permanently damaged; (g) their characters, names, and reputations have been irreparably harmed; (h) they were improperly jailed for nine days; and (i) they have been subjected to immeasurable emotional and psychological trauma.

24. Plaintiffs Collick and Williams therefore bring this action to obtain relief based on causes of action for, among other things, violations of Title IX of the Education Amendments of 1972, violations of the Fourteenth Amendment of the United States Constitution, violations of the Fourth Amendment of the United States Constitution, violations of the Fifth Amendment of the United States Constitution, violations of Section 1986 of the United States Code, violations of Section 1985 of the United States

Code, violations of Section 1983 of the United States Code, violations of New Jersey's Law Against Discrimination, and violations of New Jersey's Constitution and laws.

### THE PARTIES

25. Plaintiff Collick is a natural person residing in the State of New Jersey with an address of 217 21st Avenue, Apartment 6, Paterson, New Jersey 07501. During the events described herein, Collick was a student at defendant William Paterson residing in the Overlook North dormitory building.

26. Plaintiff Williams is a natural person residing in the State of New Jersey with an address of 1232 Magnolia Avenue, Camden, New Jersey 08103. During the events described herein, Williams was a student at William Paterson residing in the Overlook South dormitory building.

27. Plaintiff Nancy Williams ("Ms. Williams"), is a natural person residing in the State of New Jersey with an address of 7 Kent Road, Paterson, New Jersey 07502, and is and was the biological mother of plaintiff Collick.

28. Upon information and belief, defendant William Paterson is a public, coeducational college in Wayne, New Jersey, with an address of 300 Pompton Road, Wayne, New Jersey 07470.

29. Upon information and belief, defendant University Police is a police organization operated by the State of New Jersey with an address of 300 Pompton Road, Wayne, New Jersey 07470, and is responsible for servicing and protecting William Paterson's campus and its community.

30. Upon information and belief, defendant President Waldron is a natural person, citizen of the United States, and resident of New Jersey.

6

During the events described herein, defendant President Waldron was the person responsible for all aspects of student life at William Paterson.

31. Upon information and belief, defendant Robert Fulleman ("Mr. Fulleman") is a natural person, citizen of the United States, and resident of New Jersey.   During the events described herein, defendant Mr. Fulleman was William Paterson's Director of Public Safety and University Police, and was responsible for implementing, overseeing, and supervising all laws and safety procedures at William Paterson.

32. Upon information and belief, defendant Sergeant DeSimone is a natural person, citizen of the United States, and resident of New Jersey. During the events described herein, defendant Sergeant DeSimone was a sergeant with the University Police.

33. Upon information and belief, defendants Jane Does 1-20 and John Does 1-20 were natural persons, citizens of the United States, and residents of New Jersey.   During the events described herein, defendants Jane Does 1-20 and John Does 1-20 were employees, representatives, and/or agents of Defendant University Police.

34. Upon information and belief, defendants Jane Smith 1-5 and John Smith 1-5 were natural persons, citizens of the United States, and residents of New Jersey.   During the events described herein, defendants Jane Smith 1-5 and John Smith 1-5 were employees, representatives, agents, and/or spokespersons of Defendant William Paterson.

<u>FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS</u>

I.    Agreements, Representations, Covenants, & Warranties

35. Plaintiffs Collick and Williams enrolled at William Paterson as members of the Educational Opportunity Fund Program, which is a program

7

instituted to offer students from disadvantaged backgrounds the tools and financial support needed to succeed in college.

36. Upon admission to William Paterson, plaintiffs became subject to the William Paterson's Student Code of Conduct 2014-2015 ("Student Code of Conduct") and the Domestic/Dating Violence, Stalking and Sexual Violence Policy ("Sexual Violence Policy"). The Sexual Violence Policy and the Student Code of Conduct are attached hereto as **Exhibit A** and **Exhibit B** respectively.

37. William Paterson's Sexual Violence Policy states, among other things:

> William Paterson University is dedicated to providing a campus environment free from violence for all members of the campus community. Domestic/dating violence, stalking and/or sexual violence incidents are occurring at an alarming rate on the nation's college campuses. Such incidents happen to people of all genders, races, ethnicities, religions, ages, abilities, sexual orientations, gender expressions, sexual identities etc.

See Exhibit A.

38. William Paterson's Sexual Violence Policy also provides:

> Once an incident has been brought to the attention of a campus authority, a report must be made in accordance with the University's obligations under the Jeanne Celery Disclosure of Campus Security Policy and Campus Crime Statistics Act and/or Title IX of the Education Amendments of 1972. William Paterson University staff will also need to report an incident to University Police if it warrants the undertaking of additional safety and security measures for the protection of the victim and the campus community or other situations in which there is a clear and imminent danger, and when a weapon may be involved.

See id.

39. With regards to those accused of on-campus misconduct, the Sexual Violence Policy provides:

8

> Students accused of domestic/dating violence, stalking, and/or sexual violence: will be treated with fairness and respect.     The   University   will   ensure   that   its investigations and disciplinary proceedings comply with due process requirements; may discuss their situations privately with counselors at the WPU Counseling Center or with the staff at the Office of Vice President for Student Development; may seek academic or housing accommodations and/or alternative transportation or work assignments, when such accommodations are related to problems related to the accusation; may consider seeking the assistance of an advisor or an attorney to assist in preparation of the case and/or accompany him/her to any related meetings or institutional proceedings.

See id.

40. William Paterson's Sexual Violence Policy sets forth the standard it uses when it investigates and prosecutes claims of misconduct:

> Disciplinary    sanctions    for    violations    of    this domestic/dating violence, stalking and/or sexual violence policy and/or of the student code of conduct will be imposed in accordance with applicable William Paterson University   policies,   including   but   not   limited   to, expulsion or termination of employment.   The University's determination shall be based on the preponderance of evidence   in   the   case.     William   Paterson   University typically conducts a full investigation within sixty days of  receiving  a  complaint.     Additional  time  may  be necessary depending of the complexity of the investigation and the severity and extent of domestic/dating violence, stalking and/or sexual violence.   Both parties will be simultaneously provided with written notification of the outcome   of   the   investigation/proceeding   and,   if applicable, either party may file an appeal within three days.   Both parties will be given periodic status updates on   the   investigation.     The   appropriate   University disciplinary process is determined by the status of the person accused of engaging in domestic/dating violence, stalking and/or sexual violence.   If the accused is a student, the complaint is addressed with the procedures for student discipline as set forth in the University's Student Code of Conduct.

See id.

41. With respect to the standard of proof, William Paterson's Student Code of Conduct states, in pertinent part:

9

> It is important to note that the threshold utilized for
> determining responsibility for alleged policy violations
> will be the "preponderance of the evidence." This means
> that the hearing officer will weigh all information
> available about an incident and ask if the violation is
> more likely than not to have occurred. If the answer is
> affirmative, then the student(s) will be found responsible
> for the violation.

See Exhibit B.

42. The Student Code of Conduct also assures its students that "[t]he

University will guarantee procedural fairness in all its disciplinary

actions." See id.

43. With regards to suspensions, the Student Code of Conduct provides,

in pertinent part:

> Students can be suspended from academic pursuits and/or
> various campus properties of the University on an interim
> basis, if they are deemed to be a clear and present danger
> to either or themselves or the University community by the
> Office of Student Conduct. In such cases, a hearing will
> be scheduled as expeditiously as possible to determine
> whether the interim suspension should be lifted or remain
> pending final adjudication.

See id.

44. With regards to removing students from campus, the Student Code

of Conduct states, in pertinent part:

> If a currently enrolled student commits an on-campus act
> that results in arrest, creates a public safety issue, or
> violates the Student Code of Conduct, the Office of Student
> Conduct reserves the right to remove that student's access
> to campus. This decision will be made in consultation
> with Campus Police regarding the level and duration of
> restricted access and may also involve input from
> Residence Life staff members.

See id.

45. The Student Code of Conduct also recognizes in pertinent part

that:

10

due process in higher education disciplinary matters does not parallel the requirements of due process in a court of law. However, the University ensures that fundamental requirements of due process in all disciplinary matters will be implemented. These requirements are: (1) Accused students will be notified via their William Paterson University email account of charges within a reasonable time period; (2) notification via the accused students William Paterson University email address of the date, time, and place of the hearing at least five days in advance; (3) the opportunity to present information and eye-witnesses; (4) the opportunity to choose any one person as an advisor throughout the conduct process; (5) written notification of findings and sanction or penalties imposed; (6) written notification of an appeal process.

See id.

46. In addition, the Student Code of Conduct states, in pertinent part:

The University Hearing Board's determination shall be based on the preponderance of evidence in the case. The question before the University Hearing Board will be whether it is more likely than not that the accused student violated the Student Code of Conduct. The University Hearing Board will make the final determination of whether a student is held responsible or not for violating the Student Code of Conduct.

See id.

47. William Paterson's Sexual Violence Policy and Student Code of Conduct govern its investigations and disciplinary proceedings.

48. On the other hand, the University Police is a state police department, and when it investigates potential crimes, it must provide potential suspects with all of the protections afforded by the federal and state constitutions and applicable laws.

49. Moreover, the University Police is required to provide all of its agents, employees, and/or representatives with appropriate training, supervision, and education to ensure compliance with all state and federal

11

laws and Constitutional requirements, including but not limited to due process and equal protections under the laws.

II.   **Plaintiff Collick's Matriculation at William Paterson and Previous Interactions with the Accuser.**

50. Plaintiff Collick was able to attend William Paterson because of an $11,000.00 loan he received from the Educational Opportunity Fund Program.

51. During his freshman year, Collick was a resident of the Overlook North dormitory building on William Paterson's campus in Wayne, New Jersey.

52. During her freshman year, the Accuser was a resident of the Overlook South dormitory building on William Paterson's campus in Wayne, New Jersey.

53. During his freshman year, Collick worked at William Paterson's dining hall, where he earned approximately $8.35 per hour.

54. Collick met the Accuser during his first semester at William Paterson in October 2014.

55. Collick and the Accuser participated in consensual sexual activity before the night of the Incident.

56. The Accuser initiated the sexual relationship with Collick.

57. Some of the Accuser and Collick's consensual sexual activities involved other male students at William Paterson.

58. Plaintiffs Collick, Williams, and the Accuser participated in consensual sexual activity together on at least one occasion before the Incident.

59. Between these sexual activities, the Accuser inundated Collick

12

with texts and other messages seeking intimate and sexual relations, most of which Collick rejected.

### III.   Plaintiff Williams's Matriculation at William Paterson and Previous Interactions with the Accuser.

60. Plaintiff Williams was able to attend William Paterson because of a $4,000.00 loan he received from the Educational Opportunity Fund Program.

61. During his freshman year, Williams was a resident of the Overlook South dormitory building on William Paterson's campus in Wayne, New Jersey.

62. Williams met the Accuser during his first semester at William Paterson in 2014.

63. Williams and the Accuser participated in consensual sexual activity before the night of the Incident.

64. The Accuser initiated the sexual relationship with Williams.

65. Some of the Accuser and Williams's consensual sexual activities involved other male students at William Paterson.

66. Plaintiffs Collick, Williams, and the Accuser participated in consensual sexual activity together on at least one occasion before the Incident.

### IV.   The Incident

67. In the late evening of November 24, 2014 and early morning of November 25, 2014, plaintiffs Williams and Collick were in a friend's dormitory in the Overlook South resident building with three other male William Paterson students watching television.

68. Earlier on November 24, 2014, the Accuser had been looking for

13

Collick with the hopes of luring him into a sexual encounter, but she was unsuccessful in this endeavor.

69. On November 24, 2014, the Accuser attempted to call Collick thirty-three (33) times.

70. While the five men were watching television, the Accuser knocked on the door, saw Collick, and asked to enter.

71. The Accuser then entered the room, turned off the lights and television, and closed the blinds.

72. The Accuser asked Collick if he wanted to have sexual intercourse with her in her room and he said no.

73. The Accuser then initiated consensual sex on Collick.

74. The Accuser then proceeded to participate in consensual sexual activities with the other four males in the room, including Williams.

75. After the consensual sexual activities concluded, the Accuser asked if Collick or Williams wanted to come back to her room.

76. Collick denied the Accuser's request but Williams and another male student accepted the Accuser's invitation.

77. In the Accuser's room, Williams engaged in additional sexual relations with the Accuser, but the Accuser did not have relations with the other male student.

78. After participating in further consensual sexual activities, Williams vacated the premises and returned to his room.

79. Later on November 25, 2014, the Accuser visited Williams' dormitory and other nearby rooms looking for Collick who was not there.

14

V.   Defendants' Investigation and Overall Mishandling of the Allegations

80. On November 25, 2014, at approximately 1:56 p.m., the Accuser reported the Incident to University Police as rape and sexual assault.

81. On November 28, 2014, University Police Detective Sergeant DeSimone filed for probable cause warrants, which were then executed by a judge.

82. Plaintiffs Collick and Williams were not interviewed or questioned regarding the accusations, did not receive notice that defendants commenced an investigation against them, and had no opportunity to deny the rape and sexual assault allegations.

83. Upon information and belief, defendants' investigation was limited to receiving the Accuser's report, and did not include interviews of other students, a review of videotapes from the dorm, an analysis of any cell phone records, an examination of the Accuser's blogs or other social media profiles, or any investigation into previous relations between the Accuser and Collick and Williams.

84. Upon information and belief, interviews with other students would have revealed that the Accuser was very sexually active at William Paterson, had many sexual partners, engaged in sexual activities with more than one partner on multiple occasions, had to change dormitory rooms because her roommate was uncomfortable with the level of the Accuser's sexual activity, had previous sexual relations with plaintiffs, was known to use illicit drugs, and would have demonstrated that plaintiffs committed no wrongdoing and, thus, the Accuser's accusations were false.

85. On November 29, 2014, Jennifer Tumlin, William Paterson's Director of Student Conduct and Dispute Resolution, based on the University

15

Police's incomplete and improper investigation, issued Plaintiffs a Notice

of Interim Suspension which provided as follows:

> A report has been filed alleging that you were involved
> in a serious incident on the campus of William Paterson
> University.  Until further notice, pursuant to N.J.S.A.
> 2C:18-3(b) you are not licensed or privileged to enter any
> of the grounds or facilities of William Paterson
> University of New Jersey.  You are temporarily suspended
> as you have been deemed a clear and present danger to
> yourself or other members of the University community.
> Please be advised that you are facing disciplinary action
> for this matter and your interim suspension will remain
> in effect until your case has been adjudicated through the
> University Disciplinary process.  You will need to
> contact my office at 973-720-2218 as soon as possible to
> arrange to meet to discuss the university's adjudication
> process thoroughly.

See Exhibit C.

   86. On November 30, 2014, defendant President Waldron issued the

following statement to the public, faculty, and students of defendant

William Paterson:

> On November 25, 2014, a sexual assault of a female student
> allegedly took place in a residential hall on our campus.
> Five male students who were living in the residence halls
> have been arrested and charged.  As soon as the victim
> reported this incident, she was attended to be university
> counselors and police officers.  All of the alleged
> perpetrators of this heinous crime have been barred from
> campus.  Prosecution is being handled by the Passaic
> County Prosecutor's office and the university is fully
> cooperating in the prosecution.  I am angry and dismayed
> that this crime was committed on our campus and allegedly
> by students.  My deepest concern is for the victim of this
> criminal act who has courageously stepped forward to take
> legal action and seek justice.  No expression of anger or
> sadness on my part can alleviate the harm done to the victim
> and my heart goes out to her and her family.  I offer the
> full support of the University community.  William
> Paterson University – its students, faculty, staff, and
> board of trustees – is horrified by this alleged sexual
> assault.  Our University is a place of learning and
> personal growth where individuals are respected.  It is
> our responsibility to provide a safe environment for all
> its members and to be a campus where students can grow and

thrive.   We are committed to ensuring that William
Paterson University will always be a place where students
feel safe and sound.   This commitment extends from our
classrooms to our residence halls and to everywhere on
campus.

See Exhibit D.

87. Upon information and belief, at no point during defendants' "investigation" did anyone corroborate the Accuser's allegations or speak to potential witnesses.

88. Upon information and belief, at no point during defendants' "investigation" did University Police obtain or review the videos from the cameras located in the Overlook South dormitory building.

89. Upon information and belief, at no point during defendants' "investigation" did University Police seek or obtain any evidence that would exculpate Collick or Williams.

90. Upon information and belief, at no point during defendants' "investigation" did University Police perform or obtain a rape kit on the Accuser.

91. At no point during defendants' "investigation" into the matter were Collick and Williams treated with fairness and respect.

92. At no point during defendants' "investigation" were Collick and Williams afforded any of their due process rights.

93. At no point during defendants' "investigation" were Collick and Williams made aware of the claims against them, the investigation by University Police, or William Paterson's ongoing disciplinary actions.

94. At no point during defendants' "investigation" were Collick and Williams notified of the charges against them.

95. Defendant William Paterson expelled Collick and Williams even

17

though defendants' "investigation" did not meet the preponderance of the evidence burden established in the Student Code of Conduct.

## VI.   Arrests, Imprisonment, and Grand Jury Hearing

96. On November 29, 2014, University Police arrested Collick and Williams while they were off-campus during Thanksgiving break.

97. University Police did not give Collick or Williams any information as to why they were being arrested.

98. University Police returned Collick and Williams to campus, and held them for at least an hour.

99. University Police interrogated Collick and Williams for at least twenty (20) minutes each.

100. Neither Collick nor Williams were aware of why they were being arrested until one of the arresting officers mentioned the Accuser's name.

101. Collick and Williams were held in handcuffs throughout their ordeal.

102. Ms. Williams, Collick's mother, witnessed her son's arrest and handcuffing by University Police.

103. Collick was charged with the following offenses:

    a. aggravated sexual assault by committing an act of sexual penetration upon the Accuser while aided or abetted by one or more other persons while using physical force or coercion in violation of N.J.S.A. 2C:14-A(5), a crime of the first degree;

    b. conspiracy to commit sexual assault with the purpose of promoting or facilitate the commission of such crime in violation of N.J.S.A. 2C:5-2A, a crime of the second degree;

18

    c. knowingly holding the Accuser in a condition of involuntary servitude in violation of N.J.S.A. 2C:13-2B, a crime of the third degree;

    d. aggravated sexual assault by committing an act of sexual penetration upon the Accuser while aided or abetted by one or more other persons and using physical force or coercion in so doing in violation of N.J.S.A. 2C:14-2A(5), a crime of the first degree;

    e. aggravated criminal sexual contact by committing an act of sexual contact with the Accuser for the purpose of sexually arousing or gratifying himself or to humiliate or degrade the victim during the commission of a sexual assault, in violation of N.J.S.A. 2C:14-3A, a crime of the third degree;

    f. aggravated sexual assault by committing an act of sexual penetration upon the Accuser while aided or abetted by one or more others and using physical force or coercion in violation of N.J.S.A. 2C:14-2A(5), a crime of the first degree; and

    g. aggravated sexual assault by committing an act of sexual penetration upon the accuser while aided or abetted by one or more others and using physical force or coercion in violation of N.J.S.A. 2C:14-2A(5), a crime of the first degree.

104. Williams was charged with two counts of aggravated sexual assault, one count of first degree kidnapping, one count of conspiracy to commit sexual assault, and two counts of criminal restraint.

105. Collick and Williams were taken to and booked into Passaic County Jail.

19

106. Collick and Williams each spent five (5) days in general populations and four (4) days in the facility's medium security area on the fourth floor.

107. Both Collick and Williams were extremely scared and frightened for their lives while imprisoned, and they slept in shifts to attempt to protect one another.

108. Plaintiffs' bail was set at $200,000, but was later lowered to $25,000.

109. After making the bail of $25,000 each, Collick and Williams were released from the Passaic County Jail on December 9, 2014.

110. On January 26, 2014, a Grand Jury convened in Passaic County, and refused to indict plaintiffs and entered a no bill.

111. Despite the lack of evidence and no criminal prosecution, William Paterson expelled plaintiffs Collick and Williams.

VII. **Plaintiffs Suffered Severe and Permanent Injuries and Losses**

112. As a direct and proximate result of defendants' actions, conduct, and omissions, plaintiffs Collick and Williams were shunned from campus, wrongly arrested and wrongfully imprisoned.

113. As a direct and proximate result of defendants' actions, conduct, and omissions, plaintiffs Collick and Williams each spent nine (9) days in jail, suffering immeasurable and permanent emotional and psychological trauma.

114. As a direct and proximate result of defendants' actions, conduct, and omissions, plaintiffs' respective families were forced to expend money to bail them out of jail.

20

115. As a direct and proximate result of defendants' actions, plaintiff Ms. Williams suffered severe emotional distress during and after watching her son, Collick, being handcuffed and arrested.

116. As a direct and proximate result of defendants' actions, conduct, and omissions, plaintiffs were expelled from William Paterson.

117. As a direct and proximate result of defendants' actions, conduct, and omissions, the financial resources used by plaintiffs Collick and Williams to get into and attend William Paterson have been wasted and lost without any compensation or return.

118. As a direct and proximate result of defendants' actions, conduct, and omissions, plaintiffs lost a year of their college education.

119. As a direct and proximate result of defendants' actions, conduct, and omissions, plaintiffs' entire academic careers have been ruined, and their overall economic futures are severely compromised.

120. Defendants' actions, conduct, and omissions violated plaintiffs' state and federal Constitutional rights.

121. As a direct and proximate result of defendants' actions, conduct, and omissions, plaintiffs were presumed to be guilty of crimes they did not commit before any investigation took place.

122. As a direct and proximate result of defendants' actions, conduct, and omissions, plaintiffs' characters, names, and reputations have been irreparably and permanently damaged.

123. As a direct and proximate result of defendants' actions, conduct, and omissions, plaintiffs' names and photographs will forever be synonymously linked to rape, sexual assault, and kidnapping.

124. As a direct and proximate result of defendants' actions, conduct,

21

and omissions, plaintiffs' future relationships, romantic or otherwise, will be significantly hampered and damaged.

## COUNT ONE

### VIOLATION OF 20 U.S.C. § 1681
### (Title IX of the Education Amendments of 1972)

125. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 124 as set forth above.

126. Title IX of the Education Amendments of 1972 ("Title IX") provides, in pertinent part that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a).

127. Title IX applies to an entire school or institution where any part of that school or institution receives federal funds.

128. Upon information and belief, defendants William Paterson and the University Police receive federal funding under Title IX.

129. As Title IX recipients, defendants William Paterson and the University Police are required to comply with the requirements of Title IX as well as those of the regulations promulgated thereunder by the Department of Education.

130. These regulations require each school receiving Title IX funds to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student . . . complaints alleging any action which would be prohibited under Title IX or its regulations."  34 C.F.R. § 106.8 (2010).

22

131. The regulations further require that "a school's procedures must accord due process to both parties involved. . . ."   See Title IX (2001) "Revised Sexual Harassment Guidance" at 22 (notice of publication at 55 Fed. Reg. 5512, January 19, 2001)(emphasis added).

132. Defendants William Paterson and the University Police's disciplinary policies, as written and as applied to plaintiffs', are not equitable and do not accord due process to the accused.

133. Defendants William Paterson and the University Police have deprived plaintiffs, on the basis of their gender, of their rights to due process and equal protection through the existence, in their current state, of William Paterson's inequitable and non-compliant policies and procedures and/or the improper administration of said policies and procedures.

134. Upon information and belief, the fundamental unfairness that imbued plaintiffs' disciplinary process and investigation by defendants William Paterson and University Police, as well as the eventual erroneous outcome, are part of a pattern of decision-making that discriminates against male students accused of sexual misconduct.

135. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5, conducted the investigation in a manner that was biased against plaintiffs by, among other things: failing to properly investigate the veracity of the Accuser's claims, failing to obtain relevant information that would have been exculpatory, barring plaintiffs from campus arbitrarily and without the benefit of due process, neglecting to inquire about previous relations between the Accuser and

plaintiffs, and failing to involve or in any way notify plaintiffs of the ongoing investigation.

136. In addition, defendants William Paterson and the University Police's policies, both as written and as enforced against plaintiffs, impose an unequal burden on male students accused of sexual misconduct.

137. Male respondents in sexual misconduct cases at William Paterson are discriminated against solely on the basis of sex, and are subject to discipline without the benefit of due process.

138. As a direct and proximate result of defendants William Paterson and the University Police's enforcement of these policies, and their failures to comply with the requirements of Title IX with respect to its disciplinary procedures, plaintiffs have been denied the benefits of an educational program in violation of Title IX.

139. As a direct and proximate result of defendants William Paterson and the University Police's enforcement of these policies, and their failures to comply with the requirements of Title IX with respect to its disciplinary procedures, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights

24

guaranteed under Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs Collick and Williams pray for judgment against defendants, individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

    a. Compensatory damages in an amount to be determined at trial;

    b. Punitive damages;

    c. Interest;

    d. Attorneys' fees; and

    e. Costs of Suit.

## COUNT TWO

### VIOLATION OF 42 U.S.C. § 1983
### (DEPRIVATION OF FEDERAL CONSTITUTIONAL RIGHTS)

140. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 139 as set forth above.

141. At all times stated herein, plaintiffs Collick and Williams had a constitutionally protected liberty interest in their good name, reputations, honor, and integrity.

142. At all times stated herein, plaintiffs Collick and Williams had a constitutionally protected liberty interest in pursuing their education, as well as future educational and employment opportunities.

143. At all times stated herein, plaintiffs Collick and Williams had a constitutionally protected property interest in continuing their education at William Paterson.

144. At all times stated herein, plaintiffs Collick and Williams had a constitutionally protected right not to be improperly restrained, arrested, and imprisoned without due process of law.

145. At all times stated herein, plaintiffs Collick and Williams were entitled to process commensurate with the seriousness of the allegations made against them, and the potential discipline, sanctions, and repercussions they were facing.

146. At all times stated herein, plaintiffs Collick and Williams were entitled to fundamentally fair procedures to determine whether they committed misconduct and/or crimes.

147. At all times stated herein, plaintiffs Collick and Williams were entitled to be free from egregious, outrageous, and oppressive use of governmental power which shocks the contemporary conscious of society and cause a deprivation of fundamental due process rights.

148. At all times stated herein, plaintiffs Collick and Williams were entitled to equal protection under the laws and were entitled not to be treated differently from those similarly situated.

149. Defendant President Waldron, in her individual capacity, defendant Sergeant DeSimone, in her individual capacity, defendant Mr. Fulleman, in his individual capacity, defendant William Paterson, defendant University Police, defendant John Does 1-20, in their individual capacities, defendant Jane Does 1-20, in their individual capacities, defendant John Smith 1-5, in their individual capacities, and defendants Jane Smith 1-5, in their individual capacities, are all "persons" pursuant to 42 U.S.C. §1983, and were acting under the color of law.

150. Defendant President Waldron, in her individual capacity,

defendant Sergeant DeSimone, in her individual capacity, defendant Mr. Fulleman, in his individual capacity, defendant John Does 1-20, in their individual capacities, defendant Jane Does 1-20, in their individual capacities, defendant John Smith 1-5, in their individual capacities, and defendants Jane Smith 1-5, in their individual capacities, failed to provide plaintiffs Collick and Williams:  (a) with the opportunity to respond, explain, and/or defend their actions; (b) with written notice of the charges against them until after they were arrested; (c) with the opportunity to confront, much less to cross-examine, their accuser, or have a third party do so on their behalf; (d) with a list of witnesses against them; and (e) with a prompt, thorough, and impartial investigation.

151. In addition, defendant President Waldron, in her individual capacity, defendant Sergeant DeSimone, in her individual capacity, defendant Mr. Fulleman, in his individual capacity, defendant John Does 1-20, in their individual capacities, defendant Jane Does 1-20, in their individual capacities, defendant John Smith 1-5, in their individual capacities, and defendants Jane Smith 1-5, in their individual capacities: (a) invaded plaintiffs Collick and Waldron's personal liberties and rights in an arbitrary and irrational manner; (b) acted with deliberate indifference to plaintiffs' presumed and actual innocence; (c) conducted an investigation that was reckless and grossly negligent; (d) agreed to, approved, and ratified this unconstitutional conduct; (e) detained, interrogated, and arrested plaintiffs without probable cause; (f) created and promulgated policies and practices that deprived plaintiffs of any due process rights in the investigation; and (g) failed to ensure training of the University Police in the legal and appropriate methods of investigating

27

allegations of sexual misconduct.

152. The stated actions, omissions, and misconduct of defendant President Waldron, in her individual capacity, defendant Sergeant DeSimone, in her individual capacity, defendant Mr. Fulleman, in his individual capacity, defendant John Does 1-20, in their individual capacities, defendant Jane Does 1-20, in their individual capacities, defendant John Smith 1-5, in their individual capacities, and defendants Jane Smith 1-5, in their individual capacities, were: (a) fundamentally unfair to plaintiffs; (b) unduly prone to false findings of sexual misconduct; (c) arbitrary and capricious; (d) so egregious as to shock the conscience; (e) performed in concert and demonstrated intentional, outrageous, and reckless disregard for Plaintiffs' constitutional rights; (f) deprived plaintiffs Collick and Williams of the due process protections guaranteed by the Fifth and Fourteenth Amendments where they imposed discipline on plaintiffs that was not rationally related to plaintiffs' actual conduct and, thus, deprived plaintiffs of their liberty and property interests, including their liberty interests in their good names, reputations, honor and integrity, opportunities to pursue education and employment, and their property interest in their education, without affording them the due process protections guaranteed by the Fifth and Fourteenth Amendments; (g) deprived plaintiffs Collick and Williams of their Fourth and Fourteenth Amendment rights to be free from unreasonable and unlawful restraint, arrest, and imprisonment; (h) denied plaintiffs Collick and Williams equal protection under the laws because they were subjected to different treatment than those similarly situated; (i) conspired to violate plaintiffs Collick and Williams's federal

28

constitutional and civil rights as alleged herein; and (j) deprived plaintiffs Collick and Williams of the above federal rights and civil rights without any compelling state interest, significant state objective, rational basis, or any other justification/ legitimate purpose.

153. The above federal Constitutional rights and civil rights were clearly established at the time of the stated actions, omissions, and misconduct of defendant President Waldron, in her individual capacity, defendant Sergeant DeSimone, in her individual capacity, defendant Mr. Fulleman, in his individual capacity, defendant John Does 1-20, in their individual capacities, defendant Jane Does 1-20, in their individual capacities, defendant John Smith 1-5, in their individual capacities, and defendants Jane Smith 1-5, in their individual capacities, acted as detailed herein.

154. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, and have and will continue to suffer permanent and irreparable harm.

155. Plaintiffs Collick and Williams' losses and damages are cognizable under 42 U.S.C. §1983.

29

WHEREFORE, plaintiffs pray for judgment against defendants, individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

    a. Compensatory damages in an amount to be determined at trial;

    b. Punitive damages;

    c. Interest;

    d. Attorneys' fees pursuant to 42 U.S.C. § 1988; and

    e. Costs of suit.

## COUNT THREE

### VIOLATION OF § 1985
### (CONSPIRACY TO IMPEDE, HINDER, AND/OR DEFEAT
### DUE COURSES OF JUSTICE WITH INTENT
### TO DENY CLAIMANTS EQUAL PROTECTIONS)

156. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 155 as set forth above.

157. Defendant President Waldron, in her individual capacity, defendant Sergeant DeSimone, in her individual capacity, defendant Mr. Fulleman, in his individual capacity, defendant John Does 1-20, in their individual capacities, defendant Jane Does 1-20, in their individual capacities, defendant John Smith 1-5, in their individual capacities, and defendants Jane Smith 1-5, in their individual capacities conspired for the purpose of depriving plaintiffs' federal constitutional, statutory and civil rights and/or privileges and immunities under the laws, including, their Fourth and Fourteenth Amendment rights to be free from unreasonable and unlawful restraint, arrest, and imprisonment, their due process protections guaranteed by the Fifth and Fourteenth Amendments, and their

rights to equal protection under the laws, as alleged herein.

158. Defendant President Waldron, in her individual capacity, defendant Sergeant DeSimone, in her individual capacity, defendant Mr. Fulleman, in his individual capacity, defendant John Does 1-20, in their individual capacities, defendant Jane Does 1-20, in their individual capacities, defendant John Smith 1-5, in their individual capacities, and defendants Jane Smith 1-5, in their individual capacities, each committed acts/took overt actions in furtherance of said conspiracy.

159. Said conspiracy, and the overt acts/and actions taken by defendant President Waldron, in her individual capacity, defendant Sergeant DeSimone, in her individual capacity, defendant Mr. Fulleman, in his individual capacity, defendant John Does 1-20, in their individual capacities, defendant Jane Does 1-20, in their individual capacities, defendant John Smith 1-5, in their individual capacities, and defendants Jane Smith 1-5, in their individual capacities, in furtherance of said conspiracy were not based on any personal animus against plaintiffs Collick and Williams as individuals, but rather arose out of a class-based, invidiously discriminatory animus based on plaintiffs' gender and/or race.

160. Defendants President Waldron, in her individual capacity, defendant Sergeant DeSimone, in her individual capacity, defendant Mr. Fulleman, in his individual capacity, defendant John Does 1-20, in their individual capacities, defendant Jane Does 1-20, in their individual capacities, defendant John Smith 1-5, in their individual capacities, and defendants Jane Smith 1-5, in their individual capacities', actions constitute violations of 42 U.S.C. §1985(3) as defendants conspired to impede, hinder, obstruct, and/or deprive plaintiffs Collick and Williams

31

of their rights and/or privileges as alleged herein.

161. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against defendants individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

      a. Compensatory damages in an amount to be determined at trial;

      b. Punitive damages;

      c. Interest;

      d. Attorneys' fees pursuant to 42 U.S.C. § 1988; and

      e. Costs of Suit.

## COUNT FOUR

### VIOLATION OF 42 U.S.C. § 1986

162. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 161 as set forth above.

163. Defendant President Waldron, in her individual capacity, defendant Sergeant DeSimone, in her individual capacity, defendant Mr.

32

Fulleman, in his individual capacity, defendant John Does 1-20, in their individual capacities, defendant Jane Does 1-20, in their individual capacities, defendant John Smith 1-5, in their individual capacities, and defendants Jane Smith 1-5, in their individual capacities had knowledge of the conspiracy to deprive plaintiffs Collick and Williams of their federal.Constitutional, statutory and civil rights and/or privileges and immunities under the laws based on their status as African American male students accused of sexual misconduct, and the overt acts/actions committed in furtherance thereof.

164. Defendant President Waldron, in her individual capacity, defendant Sergeant DeSimone, in her individual capacity, defendant Mr. Fulleman, in his individual capacity, defendant John Does 1-20, in their individual capacities, defendant Jane Does 1-20, in their individual capacities, defendant John Smith 1-5, in their individual capacities, and defendants Jane Smith 1-5, in their individual capacities neglected and failed to prevent said wrongful and illegal acts even though they had the power and ability to do so.

165. Defendant President Waldron, in her individual capacity, defendant Sergeant DeSimone, in her individual capacity, defendant Mr. Fulleman, in his individual capacity, defendant John Does 1-20, in their individual capacities, defendant Jane Does 1-20, in their individual capacities, defendant John Smith 1-5, in their individual capacities, and defendants Jane Smith 1-5, in their individual capacities' neglect, aid, and refusal to prevent and/or rectify same is a violation of 42 U.S.C. § 1986.

166. As a direct and proximate result, Plaintiffs have been deprived

33

of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against defendants individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

a. Compensatory damages in an amount to be determined at trial;

b. Punitive damages;

c. Interest;

d. Attorneys' fees pursuant to 42 U.S.C. § 1988; and

e. Costs of Suit.

## COUNT FIVE

### GOVERNMENTAL RESPONSIBILITY FOR FEDERAL CONSTITUTIONAL AND CIVIL RIGHTS VIOLATIONS

167. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 169 as set forth above.

168. At all times stated herein, defendant President Waldron, by virtue of her position as President of defendant William Paterson, had final

34

policy making authority on behalf of defendant William Paterson.

169. As a result of defendant President Waldron's high level position, influence, and connections her decisions, statements, instructions, and/or edicts constituted policy and/or custom of defendant William Paterson.

170. At all times stated herein, defendant Mr. Fulleman, by virtue of his position as defendant William Paterson's Director of Public Safety and University Police, had final policy making authority on behalf of defendant William Paterson and defendant University Police.

171. As a result of defendant Mr. Fulleman's high level position, influence, and connections his decisions, statements, instructions, and/or edicts constituted policy and/or custom of defendant William Paterson and defendant University Police.

172. At all times stated herein, defendant Sergeant DeSimone, by virtue of her position as a sergeant at defendant University Police, had final policy making authority on behalf of defendant University Police.

173. As a result of defendant Sergeant DeSimone's high level position, influence, and connections her decisions, statements, instructions, and/or edicts constituted policy and/or custom of defendant University Police.

174. At all relevant times, defendants Jane Does 1-20 and John Does 1-20, by virtue of their positions as employees, representatives, and/or agents of Defendant University Police, had final policy making authority on behalf of defendant University Police.

175. As a result of defendants Jane Does 1-20 and John Does 1-20's high level positions, influence, and connections their decisions, statements, instructions, and/or edicts constituted policy and/or custom of defendant University Police.

35

176. At all relevant times, defendants Jane Smith 1-5 John Smith 1-5, by virtue of their positions as employees, representatives, and/or agents of Defendant William Paterson, had final policy making authority on behalf of defendant William Paterson.

177. As a result of defendants Jane Smith 1-5 John Smith 1-5's high level positions, influence, and connections their decisions, statements, instructions, and/or edicts constituted policy and/or custom of defendant William Paterson.

178. Defendant William Paterson is responsible for the federal constitutional transgressions and violations of 42 U.S.C. §1983, 42 U.S.C. §1985, and/or 42 U.S.C. §1986 of its agents, employees, and servants, defendant President Waldron, defendant Mr. Fulleman, defendant DeSimone, and defendants Jane Smith 1-5 John Smith 1-5, stated herein because said improper actions and misconduct represented decisions, statements, instructions, and/or edicts made by those whose final policy making authority and, thus, constituted policy and/or custom of defendant William Paterson.

179. Moreover, defendant William Paterson failed to train and/or supervise defendant President Waldron, defendant Mr. Fulleman, defendant DeSimone, and defendants Jane Smith 1-5 John Smith 1-5, and same constituted deliberate indifference to plaintiffs.

180. The improper actions and misconduct of defendants President Waldron, Mr. Fulleman, DeSimone, and Jane Smith 1-5 John Smith 1-5, were part and parcel of policies, procedures, and/or customs officially sanctioned, mandated, and/or ordered by defendant William Paterson.

181. William Paterson neglected and/or refused to prevent the wrongs

36

that occurred.

182. Defendant University Police is responsible for the federal constitutional transgressions and violations of 42 U.S.C. §1983, 42 U.S.C. §1985, and/or 42 U.S.C. §1986 of its agents, employees, and servants, defendants Sergeant DeSimone, Mr. Fulleman, and Jane Does 1-20 and John Does 1-20, stated herein because said improper actions and misconduct represented decisions, statements, instructions, and/or edicts made by those whose final policy making authority and, thus, constituted policy and/or custom of defendant University Police.

183. Moreover, defendant University Police failed to train and/or supervise defendants Sergeant DeSimone, Mr. Fulleman, and Jane Does 1-20 and John Does 1-20 and same constituted deliberate indifference to plaintiffs.

184. The improper actions and misconduct of defendants Sergeant DeSimone, Mr. Fulleman, and Jane Does 1-20 and John Does 1-20 were part and parcel of policies, procedures, and/or customs officially sanctioned, mandated, and/or ordered by defendant University Police.

185. Defendant University Police neglected and/or refused to prevent the wrongs that occurred.

186. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of

37

their constitutional rights guaranteed by the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, and have and will continue to suffer permanent and irreparable harm.

187. Plaintiffs Collick and Williams' losses and damages are cognizable under 42 U.S.C. §1983.

WHEREFORE, plaintiffs pray for judgment against defendants, William Paterson and University Police individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

    a. Compensatory damages in an amount to be determined at trial;

    b. Punitive damages;

    c. Interest;

    d. Attorneys' fees pursuant to 42 U.S.C. § 1988; and

    e. Costs of suit.


### COUNT SIX

**(VIOLATION OF THE NEW JERSEY CIVIL RIGHTS ACT (N.J.S.A. § 10:6-2, et seq.)**

188. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 187 as set forth above.

189. New Jersey's Civil Rights Act provides, in pertinent part, that:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges, or immunities by the Constitution or laws of the United States, or any substantive rights, privileges, or immunities secured by the Constitution of laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation, or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

38

N.J.S.A. § 10:6-2(c).

190. Defendant President Waldron, in her individual and/or official capacity, defendant Sergeant DeSimone, in her individual and/or official capacity, defendant Mr. Fulleman, in his individual and/or official capacity, defendant John Does 1-20, in their individual and/or official capacities, defendant Jane Does 1-20, in their individual and/or official capacities, defendant John Smith 1-5, in their individual and/or official capacities, and defendants Jane Smith 1-5, in individual and/or official capacities are all "persons" pursuant to N.J.S.A. 10:6-2(c), and acted under the color of state law when they investigated the Accuser's allegations and wrongfully and unlawfully detained, interrogated, and arrested Plaintiffs Collick and Williams, as alleged herein.

191. The stated actions, omissions, and misconduct of defendant President Waldron, in her individual and/or official capacity, defendant Sergeant DeSimone, in her individual and/or official capacity, defendant Mr. Fulleman, in his individual and/or official capacity, defendant John Does 1-20, in their individual and/or official capacities, defendant Jane Does 1-20, in their individual and/or official capacities, defendant John Smith 1-5, in their individual and/or official capacities, and defendants Jane Smith 1-5, in individual and/or official capacities deprived Plaintiffs Collick and Williams of their substantive due process, procedural due process, and equal protection of rights, privileges, and/or immunities secured to them by the Constitution and laws of the United States of America and the State of New Jersey, and interfered and attempted to interfere with Plaintiffs' exercise or enjoyment of those substantive rights, privileges or immunities by threats, intimidation, or coercion.

192. The stated actions and misconduct of defendant President Waldron, in her individual and/or official capacity, defendant Sergeant DeSimone, in her individual and/or official capacity, defendant Mr. Fulleman, in his individual and/or official capacity, defendant John Does 1-20, in their individual and/or official capacities, defendant Jane Does 1-20, in their individual and/or official capacities, defendant John Smith 1-5, in their individual and/or official capacities, and defendants Jane Smith 1-5, in individual and/or official capacities, including the investigation, detainment, interrogation, and arrests of plaintiffs Collick and Williams were: (a) neither objectively reasonable nor constitutional; (b) fundamentally unfair to plaintiffs; (c) unduly prone to false findings of sexual misconduct; (d) were arbitrary and capricious; (e) so egregious as to shock the conscience; (f) performed in concert and demonstrated intentional, outrageous, and reckless disregard for Plaintiffs' state and federal constitutional rights; (g) deprived plaintiffs Collick and Williams of the due process protections guaranteed by the Fifth and Fourteenth Amendments where they imposed discipline on plaintiffs that was not rationally related to plaintiffs' actual conduct and, thus, deprived plaintiffs of their liberty and property interests, including their liberty interests in their good names, reputations, honor and integrity, opportunities to pursue education and employment, and their property interest in their education, without affording them the due process protections guaranteed by the Fifth and Fourteenth Amendments; (h) deprived plaintiffs Collick and Williams of their Fourth and Fourteenth Amendment rights to be free from unreasonable and unlawful restraint, arrest, and imprisonment; (i) denied plaintiffs Collick and Williams equal

40

protection under the laws because they were subjected to different treatment than those similarly situated.

193. Defendant President Waldron, in her individual and/or official capacity, defendant Sergeant DeSimone, in her individual and/or official capacity, defendant Mr. Fulleman, in his individual and/or official capacity, defendant John Does 1-20, in their individual and/or official capacities, defendant Jane Does 1-20, in their individual and/or official capacities, defendant John Smith 1-5, in their individual and/or official capacities, and defendants Jane Smith 1-5, in individual and/or official capacities, (a) deprived plaintiffs of their rights to be "free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, of pursuing and obtaining safety and happiness" which is protected by Article 1 of the New Jersey Constitution; and (b) conspired to violate Plaintiffs Collick and Williams's federal and state constitutional and civil rights as alleged herein.

194. Defendant President Waldron, in her individual and/or official capacity, defendant Sergeant DeSimone, in her individual and/or official capacity, defendant Mr. Fulleman, in his individual and/or official capacity, defendant John Does 1-20, in their individual and/or official capacities, defendant Jane Does 1-20, in their individual and/or official capacities, defendant John Smith 1-5, in their individual and/or official capacities, and defendants Jane Smith 1-5, in individual and/or official capacities, deprived plaintiffs Collick and Williams of the above federal and state rights and civil rights without any compelling state interest, significant state objective, rational basis, or any other justification/

41

legitimate purpose.

195. The above federal and state constitutional rights and civil rights were clearly established at the time of the stated actions, omissions, and misconduct of defendant President Waldron, in her individual and/or official capacity, defendant Sergeant DeSimone, in her individual and/or official capacity, defendant Mr. Fulleman, in his individual and/or official capacity, defendant John Does 1-20, in their individual and/or official capacities, defendant Jane Does 1-20, in their individual and/or official capacities, defendant John Smith 1-5, in their individual and/or official capacities, and defendants Jane Smith 1-5, in individual and/or official capacities, detailed herein.

196. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., were confined to jail for nine days, and have and will continue to suffer permanent and irreparable harm.

197. Plaintiffs' losses and damages are cognizable under the "New

Jersey Civil Rights Act," N.J.S.A. 10:6-1 et seq.

WHEREFORE, plaintiffs pray for judgment against defendants individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

> a. Compensatory damages in an amount to be determined at trial;
>
> b. Punitive damages;
>
> c. Civil penalties against Defendants pursuant to N.J.S.A. § 10-2(e);
>
> d. Interest;
>
> e. Attorneys' fees; and
>
> f. Costs of Suit.

## COUNT SEVEN

### GOVERNMENTAL RESPONSIBILITY UNDER N.J.S.A. 10:6-1 et seq.

198. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 197 as set forth above.

199. At all times stated herein, defendant President Waldron, by virtue of her position as President of defendant William Paterson, had final policy making authority on behalf of defendant William Paterson.

200. As a result of defendant President Wilson's high level position, influence, and connections her decisions, statements, instructions, and/or edicts constituted policy and/or custom of defendant William Paterson.

201. At all times stated herein, defendant Mr. Fulleman, by virtue of his position as defendant William Paterson's Director of Public Safety and University Police, had final policy making authority on behalf of defendant William Paterson and defendant University Police.

43

202. As a result of defendant Mr. Fulleman's high level position, influence, and connections his decisions, statements, instructions, and/or edicts constituted policy and/or custom of defendant William Paterson and defendant University Police.

203. At all times stated herein, defendant Sergeant DeSimone, by virtue of her position as a sergeant at defendant University Police, had final policy making authority on behalf of defendant University Police.

204. As a result of defendant Sergeant DeSimone's high level position, influence, and connections her decisions, statements, instructions, and/or edicts constituted policy and/or custom of defendant University Police.

205. At all relevant times, defendants Jane Does 1-20 and John Does 1-20, by virtue of their positions as employees, representatives, and/or agents of Defendant University Police, had final policy making authority on behalf of defendant University Police.

206. As a result of defendants Jane Does 1-20 and John Does 1-20's high level positions, influence, and connections their decisions, statements, instructions, and/or edicts constituted policy and/or custom of defendant University Police.

207. At all relevant times, defendants Jane Smith 1-5 John Smith 1-5, by virtue of their positions as employees, representatives, and/or agents of Defendant William Paterson, had final policy making authority on behalf of defendant William Paterson.

208. As a result of defendants Jane Smith 1-5 John Smith 1-5's high level positions, influence, and connections their decisions, statements, instructions, and/or edicts constituted policy and/or custom of defendant William Paterson.

209. Defendant William Paterson is responsible for the state and federal constitutional transgressions and violations of "New Jersey Civil Rights Act," N.J.S.A. 10:6-1 et seq. of its agents, employees, and servants, defendants President Waldron, Mr. Fulleman, and Jane Smith 1-5 John Smith 1-5, stated herein because said improper actions and misconduct represented decisions, statements, instructions, and/or edicts made by those whose final policy making authority and, thus, constituted policy and/or custom of defendant William Paterson.

210. Moreover, defendant William Paterson failed to train and/or supervise defendants President Waldron, Mr. Fulleman, and Jane Smith 1-5 John Smith 1-5 and same constituted deliberate indifference to plaintiffs.

211. The improper actions and misconduct of defendants President Waldron, Mr. Fulleman, and Jane Smith 1-5 John Smith 1-5 were part and parcel of policies, procedures, and/or customs officially sanctioned, mandated, and/or ordered by Defendant William Paterson.

212. William Paterson neglected and/or refused to prevent the wrongs that occurred.

213. Defendant University Police is responsible for the state federal constitutional transgressions and violations of "New Jersey Civil Rights Act," N.J.S.A. 10:6-1 et seq. of its agents, employees, and servants, defendants Sergeant DeSimone, Mr. Fulleman, and Jane Does 1-20 and John Does 1-20, stated herein because said improper actions and misconduct represented decisions, statements, instructions, and/or edicts made by those whose final policy making authority and, thus, constituted policy and/or custom of defendant University Police.

214. Moreover, defendant University Police failed to train and/or

supervise defendant Sergeant DeSimone, defendant Mr. Fulleman, and defendants Jane Does 1-20 and John Does 1-20 and same constituted deliberate indifference to plaintiffs.

215. The improper actions and misconduct of defendants Sergeant DeSimone, Mr. Fulleman, and Jane Does 1-20 and John Does 1-20 were part and parcel of policies, procedures, and/or customs officially sanctioned, mandated, and/or ordered by Defendant University Police.

216. Defendant University Police neglected and/or refused to prevent the wrongs that occurred.

217. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

218. Plaintiffs' losses and damages are cognizable under the "New Jersey Civil Rights Act," N.J.S.A. 10:6-1 et seq.

WHEREFORE, plaintiffs pray for judgment against defendants, William Paterson and University Police individually, jointly and severally, for

46

the following relief, and such other relief as the Court may deem proper:

    a. Compensatory damages in an amount to be determined at trial;

    b. Punitive damages;

    c. Civil penalties against Defendants pursuant to N.J.S.A. § 10-2(e);

    d. Interest;

    e. Attorneys' fees; and

    f. Costs of Suit.

## COUNT EIGHT

**VIOLATION OF LAW AGAINST DISCRIMINATION N.J.S.A. § 10:5-1, et seq.**

219. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 218 as set forth above.

220. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 unlawfully discriminated against plaintiffs on the basis of their race and gender.

221. The policies, procedures, and practices implemented and enforced by defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 discriminated against plaintiffs by subjecting them to disparate treatment because of their gender and/or race.

222. As a purported female victim, the Accuser's allegations against the male plaintiffs were accepted as true without any investigation being performed and without the development of any facts or exculpatory evidence.

223. Plaintiffs Collick and Williams were presumed guilty and were

47

not afforded the full protections of the law or their due process rights because they were male.

224. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 discriminated against plaintiffs by subjecting them to disparate treatment because of their race and/or their gender.

225. Upon information and belief, the Accuser is of Latina or Spanish origin.

226. All of the alleged perpetrators, including plaintiffs Collick and Williams were African American males.

227. Upon information and belief, all of the investigation and arresting officers were either Caucasian or Latino.

228. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 discriminated against Plaintiffs by improperly investigating, detaining, interrogating, and arresting plaintiffs on the basis of their race as opposed to the facts of the allegations.

229. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5's unlawful and discriminatory conduct constitutes a willful and wanton violation of the New Jersey Law Against Discrimination and was undertaken with reckless indifference to plaintiffs' civil rights.

230. Plaintiffs have been disparately impacted and disparately

48

treated as a result of defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5's discriminatory conduct.

231. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 were of such positions that their edicts and acts represent official policy, procedure, and/or custom of defendants William Paterson and the University Police.

231. The improper actions and misconduct of defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 were part and parcel of policies, procedures, and/or customs officially sanctioned, mandated, and/or ordered by Defendants William Paterson and the University Police.

232. Defendants William Paterson and the University Police neglected and/or refused to prevent the wrongs that occurred.

233. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 aided and abetted defendants William Paterson and the University Police in committing the aforementioned discrimination.

234. Defendants William Paterson and the University Police are thus responsible for the allegations stated herein of their agents, employees, representatives, and/or servants as alleged herein.

235. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and

psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

236. Plaintiffs' losses and damages are cognizable under the "New Jersey Law Against Discrimination," N.J.S.A. § 10:5-1, et seq.

WHEREFORE, plaintiffs pray for judgment against the defendants, individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

      a. Compensatory damages in an amount to be determined at trial;

      b. Punitive damages;

      c. Interest;

      d. Attorneys' fees; and

      e. Costs of Suit.

## COUNT NINE

### (FALSE ARREST AND IMPRISONMENT)

237. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 236 as set forth above.

238. At all times material and relevant herein, Defendants Mr. Fulleman, Sergeant DeSimone, John Does 1-20, and Jane Does 1-20 were acting

within the scope of their authority as police officers of William Paterson and the University Police.

239. At all times material and relevant herein, defendants Mr. Fulleman, Sergeant DeSimone, John Does 1-20, and Jane Does 1-20 acted under the color of the law of the State of New Jersey.

240. Defendants Mr. Fulleman, Sergeant DeSimone, John Does 1-20, and Jane Does 1-20 intentionally and without reasonable basis made an improper arrest of and/or restrained plaintiffs Collick and Williams's freedom of movement for an unreasonable period of time thereafter, contrary to the common laws of the State of New Jersey.

241. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against defendants individually jointly and severally, for the following relief, and such other relief as the Court may deem proper:

51

a. Compensatory damages in an amount to be determined at trial;

b. Punitive damages;

c. Interest;

d. Attorneys' fees; and

e. Costs of Suit.

## COUNT TEN

### (MALICIOUS PROSECUTION)

242. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 241 as set forth above.

243. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 maliciously and unlawfully initiated a criminal process against plaintiffs as a pretextual justification for the injuries inflicted upon plaintiffs Collick and Williams and/or in order to protect themselves from criminal and civil liability.

244. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 initiated and/or caused the initiation of criminal process and charges against plaintiffs Collick and Williams without legal or factual justification and were not based upon probable cause.

245. Said criminal process and charges terminated favorably to and/or in a manner not adverse to plaintiffs Collick and Williams.

246. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain

consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against the defendants, individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

    a. Compensatory damages in an amount to be determined at trial;

    b. Interest;

    c. Attorneys' fees; and

    d. Costs of Suit.

### COUNT ELEVEN

### (MALICIOUS ABUSE OF PROCESS)

247. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 246 as set forth above.

248. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 caused an issuance of process in the form

of an investigation, interview, arrest, and imprisonment of Plaintiffs.

249. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 used said "process" to accomplish some ulterior purpose for which it was not designed or intended, or which has not the legitimate purpose of the particular process employed.

250. Specifically, defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 used the issuance of process as a means to unlawfully and unjustifiably interrogate and arrest plaintiffs Collick and Williams.

251. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 knew or had reason to believe that the criminal process initiated against plaintiffs was groundless and thereafter made misrepresentations to gain an advantage over plaintiffs Collick and Williams's certain constitutional claims and/or to protect their interests.

252. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth

Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, Plaintiffs pray for judgment against the Defendants, individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

      a. Compensatory damages in an amount to be determined at trial;

      b. Punitive Damages;

      c. Interest;

      d. Attorneys' fees; and

      e. Costs of Suit.


## COUNT TWELVE

### (TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)

253. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 252 as set forth above.

254. Plaintiffs Collick and Williams had the reasonable expectation of economic advantage or benefit arising out of its relationships with defendant William Paterson and the Educational Opportunity Fund Program, namely financial aid enabling access to higher education.

255. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 had knowledge of plaintiffs Collick and Williams's expectancy of economic advantage and were aware of Plaintiffs' relationship

with William Paterson and the Educational Opportunity Fund Program.

256. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 wrongfully and without justification interfered with plaintiff's expectancy of economic advantage or benefit where their false, misleading, and highly offensive statements portrayed plaintiffs Collick and Williams in a negative light, as well as their wrongful and unlawful investigation, prosecution, and other actions severed plaintiffs' relationships with defendant William Paterson and the Educational Opportunity Fund Program.

257. As a result of defendants' willful and/or negligent conduct, plaintiffs were expelled from William Paterson.

258. By willfully and/or negligently making such statements and/or committing such acts, defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5, tortiously interfered with plaintiffs' relationships with William Paterson and the Educational Opportunity Fund without justification or cause.

259. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth

Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against the defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 individually, jointly and severally, for the following relief, and other such relief as the Court may deem proper:

 a. Compensatory damages in an amount to be determined at trial;

 b. Punitive damages;

 c. Interest;

 d. Attorneys' fees; and

 e. Costs of suit.

COUNT THIRTEEN

(BREACH OF CONTRACT)

260. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 259 as set forth above.

261. Plaintiffs Collick and Williams had a contractual relationship, either express or implied with defendant William Paterson.

262. Said contract was formed when plaintiffs Collick and Williams paid tuition and fees to defendant Williams Paterson and when plaintiffs Collick and Williams became subject to the terms contained in defendant William Paterson's Code of Conduct.

263. Plaintiffs Collick and Williams had a reasonable expectation

57

that defendant William Paterson and its agents, employees, and/or representatives would adhere to the terms of said contract.

264. Plaintiffs Collick and Williams also had a reasonable expectation that defendant William Paterson's stated policies and procedures would comply with the requirement under Title IX regulations to provide an equitable process for adjudicating claims of sexual misconduct and to ensure due process to both the accuser and the accused.

265. Defendant William Paterson and defendants president Waldron, Mr. Fulleman, John Smith 1-5 and Jane Smith 1-5, acting on its behalf, breached the expressed and/or implied agreements with Plaintiffs Collick and Williams.

266. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against the defendant William Paterson, for the following relief, and such other relief as the Court may

deem proper:

    a. Compensatory damages in an amount to be determined at trial;

    b. Interest;

    c. Attorneys' fees; and

    d. Costs of Suit.

## COUNT FOURTEEN

(BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

267. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 266 as set forth above.

268. Defendant William Paterson and defendants President Waldron, Mr. Fulleman, John Smith 1-5 and Jane Smith 1-5 acting on its behalf breached and violated the covenant of good faith and fair dealing implied in the agreement(s) with plaintiffs Collick and Williams by failing to abide by its own regulations and by disciplining plaintiffs notwithstanding the lack of evidence in support of the Accuser's allegations other than the allegations themselves.

269. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable

59

through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against defendant William Paterson for the following relief, and such other relief as the Court may deem proper:

      a. Compensatory damages in an amount to be determined at trial;

      b. Interest;

      c. Attorneys' fees; and

      d. Costs of Suit.

### COUNT FIFTEEN

#### (NEGLIGENT TRAINING AND SUPERVISION)

270. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 269 as set forth above.

271. Defendants President Waldron, Mr. Fulleman, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and/or Jane Smith 1-5 failed to properly train, supervise, and discipline defendants Ellen DeSimone, John Does 1-20, Jane Does 1-20, John Smith 1-5, Jane Smith 1-5, investigating members of the University Police, and other agents and/or employees of William Paterson and/or University Police on how to properly investigate allegations of sexual misconduct.

272. Defendants Sergeant DeSimone, John Does 1-20, Jane Does 1-20, John Smith 1-5, Jane Smith 1-5, and individual agents, employees, and/or representatives of William Paterson and the University Police were at no

time trained on how to properly respond to allegations such as those made by the Accuser.

273. Defendants William Paterson and the University Police were negligent in screening, hiring, training, supervising, disciplining, and/or retaining the Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, John Does 1-20, Jane Does 1-20, John Smith 1-5 and/or Jane Smith 1-5 in this matter, who they knew or should have known were not qualified to act properly in this matter.

274. William Paterson and the University Police are liable for the aforesaid acts under the doctrine of *respondeat superior* and because they permitted conditions to exist which facilitated and/or permitted such conduct to occur.

275. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against the defendants

61

jointly and severally, for the following relief, and such other relief as the Court may deem proper:

    a. Compensatory damages in an amount to be determined at trial;

    b. Interest;

    c. Attorneys' fees; and

    d. Costs of Suit.

## COUNT SIXTEEN

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

276. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 275 as set forth above.

277. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and/or Jane Smith's 1-5 conduct and actions detailed herein were intentional, extreme, and outrageous.

278. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and/or Jane Smith 1-5 intended to cause, or were in reckless disregard of the probability that their actions and conduct would cause, severe emotional distress to Plaintiffs Collick and Williams.

279. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and/or Jane Smith 1-5's misconduct described herein was undertaken with malice, willfulness, and reckless indifference to the rights of others.

280. As a direct and proximate result, plaintiffs have been deprived

of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against the defendants, individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

     a. Compensatory damages in an amount to be determined at trial;

     b. Punitive damages;

     c. Interest;

     d. Attorneys' fees; and

     e. Costs of Suit.

## COUNT SEVENTEEN

### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

281. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 280 as set forth above.

282. Defendants President Waldron, Mr. Fulleman, Sergeant

63

DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and/or Jane Smith 1-5 had a continuing affirmative duty to perform their professional services in such a manner as not to inflict emotional distress on Plaintiffs Collick and Williams.

283. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and/or Jane Smith 1-5 breached their duties by continually negligently inflicting emotional distress on Plaintiffs Collick and Williams.

284. In addition, plaintiff Nancy Williams sustained severe emotional distress while observing defendants' tortious conduct against her son, plaintiff Collick.

285. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et

64

seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against the defendants, individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

    a. Compensatory damages in an amount to be determined at trial;

    b. Interest;

    c. Attorneys' fees; and

    d. Costs of Suit.

## COUNT EIGHTEEN

### (NEGLIGENCE)

286. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 285 as set forth above.

287. At all times material and relevant hereto, defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and/or Jane Smith 1-5 owed Plaintiffs Collick and Williams a duty of care.

288. At all times material and relevant hereto, defendants William Paterson and the University Police, as well as defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, John Does 1-20, Jane Does 1-20, John Smith 1-5 and/or Jane Smith 1-5 acting on their behalf, were charged with the responsibility of ensuring that all members of the William Paterson student body were not deprived of the freedom and rights bestowed upon them by the Constitution of the State of New Jersey and the United States Constitution.

289. At all times material and relevant hereto, defendants William

65

Paterson and the University Police maintained and executed reckless and grossly inadequate sets of procedures, standards, guidelines, training, disciplining, and/or supervising the William Paterson student body.

290.  Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and/or Jane Smith 1-5 breached their duty of care when they were negligent in investigating the Accuser's allegations, interrogating, detaining, and arresting plaintiffs Collick and Williams.

291.  As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against the defendants, individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

a. Compensatory damages in an amount to be determined at trial;

b. Interest;

66

c. Attorneys' fees; and

d. Costs of Suit.

## COUNT NINETEEN

### (GROSS NEGLIGENCE)

292. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 291 as set forth above.

293. As outlined above, Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and/or Jane Smith 1-5 breached their duty of care in investigating the Accuser's allegations, interrogating, detaining, and arresting Plaintiffs Collick and Williams.

294. Defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and/or Jane Smith 1-5's actions exhibited an extreme absence of and failure to exercise slight care or diligence.

295. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered

a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against the defendants, individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

    e. Compensatory damages in an amount to be determined at trial;

    f. Interest;

    g. Attorneys' fees; and

    h. Costs of Suit.

## COUNT TWENTY

### RESPONDEAT SUPERIOR

296. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 295 as set forth above.

297. The individual defendants, President Waldron, Mr. Fulleman, Sergeant DeSimone, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5 were agents, employees, representatives, and/or servants of the non-individual defendants, William Paterson and the University Police.

298. As a result, the non-individual defendants, William Paterson and the University Police, are responsible for the improper actions and conduct of their agents, employees, representatives, and/or servants who are individual defendants under the doctrine of vicarious liability.

299. As a direct and proximate result, plaintiffs have been deprived of a college education and the ensuing benefits, have been unable to obtain consistent employment, have lost career opportunities and earning

68

capacity, have suffered immeasurable and permanent emotional and psychological injuries, have had their reputation and characters permanently ruined, have suffered an extended loss of freedom, have suffered physical and economic injuries, have suffered a deprivation of their constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States as made actionable through 42 U.S.C. § 1983, were confined to jail for nine days, have suffered a deprivation of their constitutional rights guaranteed Article 1 of the New Jersey Constitution as made actionable through N.J.S.A. § 10:5-1, et seq., and have and will continue to suffer permanent and irreparable harm.

WHEREFORE, plaintiffs pray for judgment against the defendants, individually, jointly and severally, for the following relief, and such other relief as the Court may deem proper:

    a. Compensatory damages in an amount to be determined at trial;

    b. Punitive damages;

    c. Interest;

    d. Attorneys' fees; and

    e. Costs of Suit.

COUNT TWENTY-ONE

DECLARATORY JUDGMENT

300. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 299 as set forth above.

301. Defendant William Paterson and the individual defendants, President Waldron, Mr. Fulleman, Sergeant DeSimone, John Does 1-20, Jane

69

Does 1-20, John Smith 1-5 and Jane Smith 1-5, acting on its behalf have committed numerous violations of its contracts with plaintiffs Collick and Williams, of its own policies and procedures, and of federal and state law.

302. As a direct and proximate result thereof, plaintiffs Collick and Williams's educations, future careers, and reputations have been severely and irreparably damaged.

303. Without appropriate redress, the unfair outcome of defendants President Waldron, Mr. Fulleman, Sergeant DeSimone, William Paterson, the University Police, John Does 1-20, Jane Does 1-20, John Smith 1-5 and Jane Smith 1-5's investigation and ultimate expulsion of plaintiffs Collick and Williams will continue to cause irreversible damages to plaintiffs.

304. As a result of the foregoing, there exists a justiciable controversy as to the outcome, permanency, and future handling of plaintiffs' student records at defendant William Paterson.

305. By reason of the foregoing, plaintiffs Collick and Williams request, pursuant to 28 U.S.C. § 2201, a declaration that: (1) the outcome and findings made by William Paterson be reversed; (2) plaintiffs' reputations be restored; (3) plaintiffs' disciplinary records be expunged; (4) the record of plaintiffs' expulsion from defendant William Paterson University be removed from their education files; and (5) William Paterson's rules, regulations, and guidelines are unconstitutional as applied.

### PRAYER FOR RELEIF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs and against Defendants, individually, jointly, and severally, as follows:

A. Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorneys' fees, expenses, and other costs permitted by law, including but not limited to 42 U.S.C. § 1988 and any other applicable authority, in amounts to be determined by the Court;

B. Awarding prejudgment interest;

C. Awarding compensatory damages in an amount to be proven at trial;

D. Awarding punitive damages in an amount to be proven at trial;

E. Such other relief as to the Court appears just and proper.

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury.

## DESIGNATION OF TRIAL COUNSEL

Michael J. Epstein is hereby designated as trial counsel.

THE EPSTEIN LAW FIRM, P.A.

By: MICHAEL J. EPSTEIN

Dated: December 21, 2015

71

## CERTIFICATION

I hereby certify that, pursuant to Rule 4:5-1: (1) the within matter in controversy is not the subject of any other action pending in any other court or arbitration; (2) no other action or arbitration proceeding is contemplated; and (3) no other necessary party to be joined in the subject litigation is presently known.

THE EPSTEIN LAW FIRM, P.A.

By: _____

MICHAEL J. EPSTEIN

Dated: December 21, 2015

72

# Exhibit A

William Paterson University is dedicated to providing a campus environment free from violence for all members of the campus community. For this reason, William Paterson University does not tolerate any form of violence including domestic/dating violence, stalking and/or sexual violence. William Paterson University will pursue the perpetrators of such acts to the fullest extent possible and is committed to supporting victims of domestic/dating violence, stalking and/or sexual violence by providing access to appropriate safety and support services.

Domestic/dating violence, stalking and/or sexual violence incidents are occurring at an alarming rate on the nation's college campuses. Such incidents happen to people of all genders, races, ethnicities, religions, ages, abilities, sexual orientations, gender expressions, sexual identities etc. These incidents affect people of all socioeconomic backgrounds and education levels. These incidents can occur between strangers, acquaintances, friends, roommates, family members and intimate partners[1].

Domestic/dating violence, stalking, and sexual violence are crimes in the State of New Jersey and are subject to criminal prosecution. In addition, William Paterson University has stringent policies related to these issues as described in the next few sections.

This policy applies to conduct that takes place on the property of William Paterson University or at any function sponsored by William Paterson University.  This also includes students living together off-campus. Anyone violating this policy will be subjected to disciplinary action up to and including expulsion from William Paterson University, termination of employment and/or criminal prosecution.

Domestic/dating violence can be defined as a pattern of abusive behavior that is used by an intimate partner to gain or maintain power and control over the other intimate partner. It can be committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim. It can also be committed by one roommate[2] over another. Domestic/dating violence can be physical, sexual, emotional, economic, or psychological actions or threats of actions that influence another person. This includes any behaviors that intimidate, manipulate, humiliate, isolate, frighten, terrorize, coerce, threaten, blame, hurt, injure, wound someone, or destroy someone's property.

- **Physical Abuse:** Hitting, slapping, shoving, grabbing, pinching, biting, hair pulling, etc are types of physical abuse. This type of abuse also includes denying a partner/roommate medical care or forcing alcohol and/or drug use upon him or her.
- **Sexual Abuse:** Coercing or attempting to coerce any sexual contact or behavior without consent. Sexual abuse includes, but is certainly not limited to, marital rape, attacks on sexual parts of the body, forcing sex after physical violence has occurred, or treating one in a sexually demeaning manner (more about this in the Sexual Violence section).

---

[1] Intimate partners: In both opposite-sex and same-sex relationships where persons are married, living together, or dating.
[2] Roommate: Persons who share common living areas (i.e. living room, kitchen) and/or persons who share a dorm room.

- **Emotional Abuse:** Undermining an individual's sense of self-worth and/or self-esteem is abusive. This may include, but is not limited to constant criticism, diminishing one's abilities, name-calling, or damaging one's relationship with his or her children.
- **Economic Abuse:** Is defined as making or attempting to make an individual financially dependent by maintaining total control over financial resources, withholding one's access to money, or forbidding one's attendance at school or employment.
- **Psychological Abuse:** Elements of psychological abuse include - but are not limited to - causing fear by intimidation; threatening physical harm to self, partner, children, or partner's family or friends; destruction of pets and property; and forcing isolation from family, friends, or school and/or work.

Under the New Jersey Prevention of Domestic Violence Act of 1991, N.J.S.A. 2C:25-17 et seq., domestic violence means the occurrence of one or more of the following criminal offenses upon a victim: Homicide, Assault, Terroristic threats, Kidnapping, Criminal restraint, False imprisonment, Sexual assault, Criminal sexual contact, Lewdness, Criminal mischief, Burglary, Criminal trespass, Harassment, Stalking. A victim of domestic violence is a person protected by the Act and includes any person:

- who is 18 years of age or older; OR,
- if under 18, is an emancipated minor, and who has been subjected to domestic violence by a spouse, former spouse or any other person who is a present or former household member; OR
- regardless of age, has been subjected to domestic violence by a person with whom the victim has a child in common, or with whom the victim anticipates having a child in common, if one of the parties is pregnant; OR
- regardless of age, has been subjected to domestic violence by a person with whom the victim has had a dating relationship.

The domestic violence offender must be over the age of 18 or emancipated at the time of the offense to be considered an offender under this Act.

Stalking is a course of conduct directed at a specific person that would cause a reasonable person to fear for her/his safety or the safety of another person or to suffer other emotional distress. Course of conduct is defined as

- repeatedly maintaining a visual or physical proximity to a person; directly, indirectly, or through third parties, by any action, method, device, or means, following, monitoring, observing, surveilling, threatening or communicating to or about, a person; OR
- interfering with a person's property; repeatedly committing harassment against a person; OR
- repeatedly conveying, or causing to be conveyed, verbal or written threats or threats conveyed by any other means of communication or threats implied by conduct or a combination thereof directed at or toward a person.

Stalking includes any behaviors or activities occurring on at least two occasions that collectively instill fear in a victim, and/or threaten her/ his safety, physical health or cause other severe mental suffering or distress. Such behaviors and activities may include, but are not limited to, the following:

- Non-consensual communication, including face-to-face communication, telephone calls, voice messages, e-mails, text messages, written letters, gifts, or any other communications that are undesired and place another person in fear;
- Use of online, electronic, or digital technologies, including: Posting of pictures or information in chat rooms or on Web sites; Sending unwanted/unsolicited email or talk requests; Posting private or public messages on Internet sites, social networking sites, and/or school bulletin boards; Installing spyware on a victim's computer; Using Global Positioning Systems (GPS) to monitor a victim;
- Pursuing, following, waiting, or showing up uninvited at or near a residence, workplace, classroom, or other places frequented by the victim;
- Surveillance or other types of observation including staring, "peeping";

2

- Trespassing;
- Vandalism;
- Non-consensual touching;
- Direct verbal or physical threats;
- Gathering information about an individual from friends, family, and/or co-workers;
- Threats to harm self or others;

If a person is repeatedly attempting to communicate with you by any means, in a threatening or harassing manner, you are encouraged to report it to University Police.

Sexual violence takes many forms including attacks such as sexual assault or attempted sexual assault, as well as any unwanted sexual contact or threats. There are three categories of sexual violence: Sexual Assault, Sexual Contact or Lewdness.

- **Sexual assault** occurs when one person penetrates the other by any means, whether vaginally, anally or orally without the consent[3] of the other person.
- **Sexual contact** occurs when one person touches the intimate parts of another person's body, even through clothes, without that person's consent. That impermissible touching can be either for the perpetrator to obtain sexual gratification or to degrade or humiliate the other person or to obtain power and control over the other person.
- **Lewdness** involves the perpetrator exposing his/her intimate parts without a person's consent to obtain sexual gratification or to degrade or humiliate the other person or to obtain power and control over the other person.

Sexual violence in any form is a devastating crime. Offenders commit sexual violence via force, threats, coercion, manipulation, pressure or tricks. A person is considered to be a sexual offender if he/she forces, threatens, coerces, manipulates, pressurizes or tricks anyone into committing any of the above listed acts on a third person. Whatever the circumstances, no one should be subjected to sexual violence.

---

[3] Consent in this policy means a clear YES to the specific act in question. Consent is informed, knowing and voluntary. Consent is active, not passive. Silence, in and of itself, cannot be interpreted as consent. Consent can be given by words or actions, as long as those words or actions create mutually understandable permission regarding the conditions of sexual activity. Consent to one form of sexual activity cannot imply consent to other forms of sexual activity. Previous relationships or consent cannot imply consent to future sexual acts. Consent must be present throughout the sexual activity -- at any time, a participant can communicate that he or she no longer consents to continuing the activity. If there is confusion as to whether anyone has consented or continues to consent to sexual activity, it is essential that the participants stop the activity until the confusion can be clearly resolved. Consent cannot be procured by use of physical force, compelling threats, intimidating behavior, or coercion. Coercion is unreasonable pressure for sexual activity. Coercive behavior differs from seductive behavior based on the type of pressure someone uses to get consent from another. When someone makes clear to you that they do not want sex, that they want to stop, or that they do not want to go past a certain point of sexual interaction, continued pressure beyond that point can be coercive. In order to give effective consent, one must be of legal age. If you have sexual activity with someone you know to be- or should know to be-mentally or physically incapacitated by alcohol or other drug use, unconsciousness or blackout, you are in violation of this policy. Incapacitation is a state where one cannot make a rational, reasonable decision because they lack the ability to understand the who, what, when, where, why or how of their sexual interaction. This policy also covers someone whose incapacity results from mental disability, sleep, involuntary physical restraint, or from the taking of a so-called "date-rape" drug. Possession, use and/or distribution of any of these substances, including Rohypnol, Ketomine, GHB, Burundanga, etc. is prohibited, and administering one of these drugs to another student for the purpose of inducing incapacity is a violation of this policy.

William Paterson University encourages reporting of all incidents of domestic/dating violence, stalking and/or sexual violence to the University Police (973-720-2300) or the Office of Judicial Affairs (973-720-2218). Whether a student chooses to report or not, they can seek help and discuss their options with the Campus Victim Services Coordinator (973-720-2578).

A student who is under the influence of alcohol or drugs at the time of a domestic/dating violence, stalking and/or sexual violence incident should not be reluctant to seek assistance for that reason. Use of alcohol or drugs never makes a victim at fault for domestic/dating violence, stalking and/or sexual violence. The Office of the Vice President for Student Development will not pursue disciplinary violations against a student (or against a witness) for his or her improper use of alcohol or drugs (e.g., underage drinking) if the student is making a good faith report of domestic/dating violence, stalking and/or sexual violence.

The decision to report incidents of domestic/dating violence, stalking and/or sexual violence to the police or campus authorities is entirely the victim's choice. Advocates are available, regardless of whether a person wishes to make a formal report, to inform victims of the reporting procedures and offer appropriate referrals, and to provide accompaniment to hospitals, law enforcement or social service providers. Students who are unsure of their rights or whether they want to make a formal complaint or report can contact the Passaic County Women's Center or the William Paterson University Counseling, Health and Wellness Center for information on available options. William Paterson University offers services to victims even if they choose not to report the incidents. However, without a report, the institution may be limited in its ability take action against the offender.

A student who chooses to file a report can discuss with the University Police or the Office of the Vice President for Student Development whether legal proceedings will be instituted in the local courts. If the victim is exhibiting signs of injury/complains of pain and/or a weapon was involved during the incident and/or if there was a violation of a restraining order and/or there is an active warrant, a mandatory arrest of the offender is warranted.

Once an incident has been brought to the attention of a campus authority, a report must be made in accordance with the University's obligations under the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act ("Clery Act") and/or Title IX of the Education Amendments of 1972 ("Title IX"). William Paterson University staff will also need to report an incident to University Police if it warrants the undertaking of additional safety and security measures for the protection of the victim and the campus community or other situations in which there is a clear and imminent danger, and when a weapon may be involved.

a. Get to a safe place as soon as possible.
b. Get medical attention, if needed, as soon as possible: (a) The University's Counseling, Health & Wellness Center provides information and referral for students who need medical attention (973-720-2360) (b) The Passaic County Women's Center has a 24-hour hotline (973-881-1450) and is available to provide information about counseling, advocacy, accompaniment to hospitals, law enforcement, and or social services at the victim's request.
c. Contact University Police by calling 973-720-2300 or 911. The University Police are available at all times and will protect victims' safety and seek to apprehend offenders; they also provide transportation to victims who have been assaulted.
d. Contact Residence Life Staff (973-720-2714), and/or (c) The Office of the Vice President for Student Development (973-720-2179).
e. Try to preserve all evidence (voice messages, text messages, letters, emails, phone records, diary of incidents that occurred etc).
f. A student may also contact a counselor directly by calling the University's Counseling, Health & Wellness Center at 973-720-2257. There is a counselor on call 24 hours a day in the event of an emergency.

4

g.  In order to preserve evidence, do not bathe, shower, douche, change your clothes, eat, drink, smoke, or urinate if possible. If you do change your clothes, put all of the clothes you were wearing throughout the duration of the incident in a paper bag. Plastic bags may alter evidence rendering it unusable.

h.  Get immediate medical attention for possible injuries, sexually transmitted diseases, or pregnancy. A medical exam is also necessary to gather physical evidence.

a.  William Paterson University will make every reasonable effort to safeguard the identities of students who seek help and/or report domestic/dating violence, stalking and/or sexual violence. This includes record-keeping that excludes personally-identifiable information about victims. While steps are taken to protect the privacy of victims, the University may need to investigate an incident and take action once an allegation is known, whether or not the student chooses to pursue a complaint.

b.  When seeking private advice and support from the various offices listed herein or from any University employee, victims should be aware that the Counseling Center is the one place on campus that victims can go where they are assured complete confidentiality.

c.  Anyone who is aware of an act or acts of violence can anonymously report the incident/s by completing the anonymous reporting form found of the University Police website at https://secure.wpunj.edu/police/police.cfm

- William Paterson University is committed to supporting victims of domestic/dating violence, stalking and/or sexual violence by providing the necessary safety and support services. Acts of retaliation (including coercion, intimidation, threats, or any other action deemed so by administrators) against any student making a complaint will not be tolerated. This will also preclude the malicious use of the Student Code of Conduct solely for the purpose of re-victimization. Student victims are entitled to reasonable accommodations and services regardless of their gender, race, ethnicity, religion, age, ability, sexual orientation, gender expression, sexual identity etc. William Paterson University provides a variety of services on campus and has partnerships with various community based organizations that provide services for victims. **A one-stop on-campus location for information and assistance is the Campus Victim Services Coordinator (973-720-2578). The Campus Victims Services Coordinator is housed within the WPU Women's Center.** The Women's Center provides a supportive and safe environment, offers information, explains options, and makes contact with other on and off campus services (973-720-2946).

Other available services include:

- **24-Hour Hotlines:** Passaic County Women's Center has a 24-hour hotline (973-881-1450) which provides information about medical assistance and a full range of crisis services to victims. NJ Statewide Domestic Violence Hotline (800-572-7233); New Jersey Coalition Against Sexual Assault Hotline (800-601-7200).

- **University Police:** The university police are available at all times at 973-720-2300 and will protect victims' safety and seek to apprehend offenders. They also provide transportation to victims who have been assaulted. Victims can request to speak with a Domestic Violence Response Team (DVRT) advocate at the university police department. The university police are located on campus and are in the first building on the left when using Entry One (on Pompton Road near the Catholic Ministry Building).

* **Domestic Violence Response Team (DVRT) Program:** This program is State mandated to assist law enforcement in handling cases of domestic violence so that each victim can receive the specialized information and support that they deserve. When a victim of domestic violence seeks the assistance of the University Police (or their local police departments), he/she is offered the services of a DVRT volunteer advocate. In a confidential setting, DVRT volunteer advocates will provide victims of domestic violence with immediate support at the moment of crisis and provide all available information regarding the law, safety options, and available resources. More information about DVRT's can be found at http://www.njcbw.org/dvTeam.html.

* **Sexual Assault Response Team (SART) and Sexual Assault Nurse Examiner (SANE) Programs:** The SART/SANE programs are NJ State mandated and utilize a victim-centered approach to sexual assault cases. The SART/SANE program is available to victims of sexual violence. When a sexual assault victim reports, a SART Team, consisting of a police officer, a victim advocate and a SANE nurse (who is a registered nurse with specialized training) respond to assist the victim. The victim is interviewed by the police officer, afforded counseling, advice and social services by the victim advocate, and forensic evidence is obtained by the SANE nurse in an effective and sensitive manner. These teams are on-call 24-hours a day. More information about SART/SANE can be found at http://www.njcasa.org/content/sexual-assault-response-teams-sart

SART/SANE designated hospitals in Passaic County include:
1. St Joseph's Regional Medical Center, 703 Main Street, Paterson, NJ 07503. (973) 754-2000
2. Chilton Memorial Hospital, 97 West Parkway, Pompton Plains, NJ 07444. (973) 831-5000
3. St. Mary's Hospital, 350 Boulevard, Passaic, NJ 07055. (973) 365-4300

Note: All other hospitals are also equipped to treat sexual violence victims in their emergency rooms but access to the specialized SART team is only available at the hospitals listed above. An advocate from a local sexual violence crisis center is afforded to all victims of sexual violence at any hospital throughout the state regardless of their affiliation with SANE/SART program

* **Comprehensive Services:** The Passaic County Women's Center (PCWC), located at 1027 Madison Avenue in Paterson, New Jersey is the lead State designated domestic violence and sexual violence service provider in Passaic County. PCWC has a close relationship with WPU and offers hotline phone response, sheltering for victims of domestic violence and/or sexual violence, individual counseling, group counseling, court preparation, accompaniment to hospitals, court, law enforcement agencies, or social service providers. All services provided by the Passaic County Women's Center are free and confidential. Exceptions to that confidentiality are if a person discloses threats to harm self or others, or if there is child abuse involved. The Passaic County Women's Center provides services in English, Spanish and Arabic and can make provisions for more than 140 languages via use of the Language Line.

* **Medical/Psychological Support:** The WPU Counseling, Health & Wellness Center provides information and referral for students who need medical attention at 973-720-2360. A student may also contact a counselor by calling 973-720-2257. There is a counselor on call 24 hours a day in the event of an emergency. Counselors will maintain confidentiality, help explain possible options, and provide information and emotional support.

* **Restraining Order:** In domestic violence situations, a victim may wish to obtain a restraining order against the alleged perpetrator. In emergent situations and when the Superior Court is closed, a temporary restraining order (TRO) can be obtained through the William Paterson University Police Department (973-720-2300), or your local police department. During court hours, a restraining order can be obtained through Passaic County Family Court, 401 Grand St., Paterson (973-247-8488).

* **SAFE WALK/Transportation:** William Paterson University provides an escort service to any person who does not want to walk alone at night. To request this service please call 973-720-7400. Victims in danger may seek Police Escort 973-720-2301. In addition, if alternative transportation is needed, assistance can be requested through the Office of Commuter Services (973-720-3944).

6

- Planned Parenthood for Pompton Lakes (973-839-2363) and Paterson (973-345-3883) provide confidential counseling and testing for sexually transmitted diseases, human immunodeficiency virus, and/or pregnancy.
- Peer Health Advocates: William Paterson University's Peer Health Advocates (973-720-2924) provide peers with education on healthy lifestyle choices which promote lifelong health awareness and informed decision making skills.
- Academic Schedule: Request for change in an academic schedule due to conflicts with a member of the class can be requested from Office of Vice President for Student Development (973-720-2179).
- On Campus Housing: Request for alternative housing options can be requested from Office of Residence Life (973-720-2714).
- Employment Concerns: Request for change in an on-campus work assignment can be requested from Campus Victim Services Coordinator (973-720-2578).
- Interim Suspension: The imposition of an interim suspension on the offender can be requested by contacting the Office of Judicial Affairs (973-720-2218).
- Passaic County Prosecutor's Office of Victim Witness Advocacy provides information, advocacy, emotional support, and referrals to victims and witnesses coping with the trauma and burdens experienced in the aftermath of crime. The office (973-881-4887) strives to minimize the inconvenience to victims and witnesses during the course of criminal prosecution. These goals are achieved through the compassionate delivery of a wide range of direct services.
- Title IX Coordinator: Sexual harassment of students, which includes acts of sexual violence, is a form of sex discrimination prohibited by Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681 et seq., and its implementing regulations. Title IX mandates the University to designate a Title IX coordinator who oversees all Title IX complaints and meets with students as needed. The Title IX coordinator at William Paterson University is Michelle N. Johnson, Office of Employment Equity and Diversity. She can be reached by phone at 973-720-2389 or johnsonm73@wpunj.edu.

## NEW JERSEY CAMPUS SEXUAL ASSAULT/VICTIMS

The State of New Jersey recognizes that the impact of violence on its victims and the surrounding community can be severe and long lasting. Thus, it has established the Campus Sexual Assault/Victim's Bill of Rights to insure that the needs of victims are met and that the colleges and universities in New Jersey create and maintain communities that support human dignity. William Paterson University will provide to the victims of domestic/dating violence, stalking and sexual violence the rights afforded under this Bill of Rights.

### Campus Sexual Assault Victims

- on the campus of any public or independent institution of higher education in the State of New Jersey, and
- where the victim or alleged perpetrator is a student at that institution, and/or
- when the victim is a student involved in an off-campus sexual assault.

- To be free from any suggestion that victims must report the crimes to be assured of any other right guaranteed under this policy
- To have any allegations of sexual assault treated seriously; the right to be treated with dignity
- To be free from any suggestion that victims are responsible for the commission of crimes against them
- To be free from any pressure from campus personnel to:
  - report crimes if the victim does not wish to do so
  - report crimes as lesser offenses than the victim perceives the crime to be
  - refrain from reporting crimes
  - refrain from reporting crimes to avoid unwanted personal publicity.

- To be notified of existing campus and community-based medical, counseling, mental health, and student services for victims of sexual assault whether or not the crime is formally reported to campus or civil authorities
- To have access to campus counseling under the same terms and conditions as apply to other students in their institution seeking such counseling
- To be informed of and assisted in exercising:
  - o any rights to confidential or anonymous testing for sexually transmitted diseases, human immunodeficiency virus, and/or pregnancy.
  - o any rights that may be provided by law to compel and disclose the results of testing of sexual assault suspects for communicable diseases.

- To be afforded the same access to legal assistance as the accused
- To be afforded the same opportunity to have others present during any campus disciplinary proceeding that is allowed the accused
- To be concurrently notified of the outcome of the sexual assault disciplinary proceeding against the accused
- To be afforded the right to appeal both the outcome/finding and any sanctions that are applied to the responsible party/accused

- To have any allegation of sexual assault investigated and adjudicated by the appropriate criminal and civil authorities of the jurisdiction in which the sexual assault is reported
- To receive full and prompt cooperation and assistance of campus personnel in notifying the proper authorities
- To receive full, prompt, and victim-sensitive cooperation of campus personnel with regard to obtaining, securing, and maintaining evidence, including a medical examination when it is necessary to preserve evidence of the assault.

- To require campus personnel to take reasonable and necessary actions to prevent further unwanted contact of victims by their alleged assailants
- To be notified of the options for, and provided assistance in, changing academic, transportation, working and living situations if such changes are requested and reasonably available.

- Each campus must guarantee that this Bill of Rights is implemented. It is the obligation of the individual campus governing board to examine resources dedicated to services required and to make appropriate requests to increase or reallocate resources where necessary to ensure implementation
- Each campus shall make every reasonable effort to ensure that every student at that institution receives a copy of this document
- Nothing in this act or in any "Campus Assault Victim's Bill of Rights" developed in accordance with the provisions of this act, shall be construed to preclude or in any way restrict any public or independent institution of higher education in the State from reporting any suspected crime or offense to the appropriate law enforcement authorities.

- Not having past and irrelevant conduct discussed during any resulting proceedings
- Submitting a written account of the incident
- Having one's identity protected in compliance with Title IX & FERPA
- Having an opportunity to present an impact statement during the judicial board hearing process

- Requesting immediate on-campus housing relocation, transfer of classes, change in transportation or working situations or other steps to prevent unnecessary or unwanted contact or proximity to an alleged assailant. When possible and reasonably available, requests will be accommodated.

Students accused of domestic/dating violence, stalking and/or sexual violence:
- Will be treated with fairness and respect. The University will ensure that its investigations and disciplinary proceedings comply with due process requirements.
- May discuss their situations privately with counselors at the WPU Counseling Center (973-720-2257) or with the staff at the Office of Vice President for Student Development (973-720-2179). (Please refer to Section 5. Privacy & Confidentiality)
- May seek academic or housing accommodations and/or alternative transportation or work assignments, when such accommodations are related to problems related to the accusation. See section #6 above for the contact information needed to make the requests.
- May consider seeking the assistance of an advisor or an attorney to assist in preparation of the case and/or accompany him/her to any related meetings or institutional proceedings.

Acts of retaliation (including coercion, intimidation, threats, or any other action deemed so by administrators) against any accused student will not be tolerated.

Disciplinary sanctions for violations of this domestic/dating violence, stalking and/or sexual violence policy and/or of the student code of conduct will be imposed in accordance with applicable William Paterson University policies, including but not limited to, expulsion or termination of employment. The University's determination shall be based on the preponderance of evidence in the case.

William Paterson University typically conducts a full investigation within sixty days of receiving a complaint. Additional time may be necessary depending of the complexity of the investigation and the severity and extent of domestic/dating violence, stalking and/or sexual violence. Both parties will be simultaneously provided with written notification of the outcome of the investigation/proceeding and, if applicable, either party may file an appeal within three days. Both parties will be given periodic status updates on the investigation.

The appropriate University disciplinary process is determined by the status of the person accused of engaging in domestic/dating violence, stalking and/or sexual violence.

If the accused is a student, the complaint is addressed with the procedures for student discipline as set forth in the University's Student Code of Conduct. If the accused is a staff employee or a faculty member, the complaint is addressed in accordance with the Civil Service Act, N.J.S.A. 11A:1-1 et seq., and the regulations promulgated thereunder, N.J.A.C. 4A:2-1.1 et seq.,  N.J.S.A. 18A:6-18 and/or the relevant collective bargaining agreement.

# Exhibit B

# The Student Code of Conduct 2014-15

### University Regulations and Disciplinary Procedures

When students become members of the William Paterson University community they are expected to abide by the University's rules, regulations, and behavioral standards. These standards are reasonable and are based on the concept of responsible citizenship. The University does not attempt to regulate the lives or activities of students except to assure its ability to accomplish its educational mission and protect the health, safety, and security of members of its community.

By choosing to affiliate with William Paterson University, all student members of the University are expected to uphold the standards of this community. This includes students who have been notified of their admission to the University and/or who are matriculated, enrolled or registered in any University academic program or activity, at the undergraduate or graduate level. Students on a leave of absence and persons who were students when they allegedly violated the Student Code of Conduct are also included. The Student Code of Conduct shall apply to conduct that occurs on University premises and at University sponsored events, both on and off campus. The Student Code of Conduct may also apply to the off campus behavior of students, including those who are participating in study abroad programs.

These procedures have been developed to articulate the University's behavioral standards and to provide a format that guarantees procedural fairness to all students. The disciplinary process is intended to be educational. The implementation of the disciplinary procedures may vary in formality depending upon the gravity and nature of the alleged offense. In addition, the sanctions applied will fall within a range based upon the gravity of the particular offense and other individual or situational circumstances.

It is important to note that the threshold utilized for determining responsibility for alleged policy violations will be the "preponderance of the evidence". This means that the hearing officer will weigh all information available about an incident and ask if the violation is more likely than not to have occurred. If the answer is affirmative, then the student(s) will be found responsible for the violation.

### Student Code of Conduct

### I. Students' Rights and Responsibilities

a) Students and student organizations should be free to examine and discuss all questions of interest to them and to express opinions publicly and privately. They should always be free to support, by orderly means, causes that do not disrupt the regular and essential operations of the University. [For more information regarding this matter, please refer to the University Demonstration policy.]

b) Students have the right to affiliate with recognized student organizations and engage in activities, provided those activities adhere to normal University policies and do not jeopardize the health, safety, or welfare of members of the University community.

c) It is the responsibility of all students of the University to adhere to the letter and spirit of duly enacted University policies, rules, and regulations. Students who violate said policies, rules, and regulations are likely to face disciplinary action.

d) The University shall attempt to handle disciplinary matters in an expeditious manner.

e) The University will guarantee procedural fairness in all its disciplinary actions.

f) Acts of retaliation (including coercion, intimidation, threats, or any other action deemed so by administrators) against any student making a complaint will not be tolerated. This will also preclude the malicious use of the Student Code of Conduct solely for the purpose of re-victimization.

## II. Institutional Authority to Ensure Fulfillment of the University's Mission

The authority to discipline students for violation of University policies, rules, and regulations is assigned by the President of the University to the Office of the Vice President for Student Development for implementation by the Vice President or by his/her designee. The Vice President for Student Development has assigned oversight of the student conduct process to the Associate Vice President for Campus Life. The Director of Student Conduct, reporting to the Associate Vice President for Campus Life, administers the student conduct process.

## III. Proscribed Conduct

A student or student organization may be accountable to both the University and civil authorities for acts that violate the law as well as the Student Code of Conduct. Disciplinary action at the University will normally proceed during the pending criminal proceedings and will not be subject to challenge on the grounds that pending criminal charges involving the same incident have been postponed, dismissed, or reduced. The University reserves the right to apply its own standard and procedure under this policy and to reach its own determination on violations of this code unaffected by the standard, procedure or outcome of any civil or criminal proceedings.

Disciplinary action may be taken against students for violation of University policies, rules, and regulations including, but not limited to those listed below:

A. The possession, use, sale, distribution, or sharing of any controlled substance (or non-prescriptive drug or prescription not for the user) or drug paraphernalia in violation of federal, state, or municipal laws. http://www.wpunj.edu/student-conduct/student-handbook/alcohol-and-drug-policy.dot

B. Violation of the University's alcoholic beverage policy and any federal, state, or municipal laws associated with the possession and use of alcohol. http://www.wpunj.edu/student-conduct/student-handbook/alcohol-and-drug-policy.dot

C. Theft of University or personal property, removing or transferring University equipment or furniture from one location to another without official authorization, or possession of stolen property.

D. Any attempt to defraud the University or member of the University community.

E. Causing damage to University premises or property.

F. Misuse of, or tampering with, any electrical system, wiring, telephone service, fire safety equipment or other security devices, or the violation of University policy pertaining thereto.

G. Unauthorized entry into any University building or office.

H. Violation of published rules governing residence halls.

I. Possession or use of firearms or weapons of any kind or description.

J. Possession of fireworks or other combustible materials.

K. Failure to comply with directives issued by representatives of the University when they are acting in their official capacities.

L. Assault, physical abuse, verbal abuse, threats, intimidation, harassment, stalking, bullying, cyber bullying, coercion and/or other conduct that threatens or endangers the health or safety of any person.

M. Disorderly conduct as defined by the laws of the State of New Jersey.

N. Intentionally or recklessly interfering with normal University business or University sponsored activities, including, but not limited to: invited speakers, studying, teaching, research, University administration, or fire, police, or emergency services.

O. Intentionally initiating or causing to be initiated any false report, warning, threat of fire, explosion, or other emergency.

P. Intentionally furnishing false information to the University or to a University official verbally or in writing.

Q. Forgery, alteration, or unauthorized use of any University documents or instruments of identification.

R. All forms of academic dishonesty, including cheating, fabrication, facilitating academic dishonesty such as purchasing or sale of research papers, and plagiarism. (Students charged with a violation of this section of the Code will be subject to the procedures outlined in the separate policy on Academic Integrity.)http://www.wpunj.edu/cte/wpu-academic-integrity-policy.dot

S. Hazing, including organizing, engaging in, facilitating, or promoting any conduct that places or may place another person in danger of bodily harm or serious psychological distress. http://www.wpunj.edu/dotAsset/372833.pdf

T. Computer misuse, including but not limited to hardware theft or fraud, duplicating copy protected software, downloading copyrighted material, unauthorized access, subverting restrictions, and plagiarizing class programs. (Specific rules governing the use of computers and computer labs on campus are developed and

distributed by Instruction Research and Technology. Violations of such rules will be construed as violations of this section of the Code of Conduct.) http://www.wpunj.edu/it/policies/index.dot

U. Unwanted sexual interactions, including verbal and physical acts or threats. http://www.wpunj.edu/womens-center/DV_DAV_STLK_SA_Policy_Revised_4-11-14.pdf

Please note that the range of sanctions assigned to students found responsible for a violation of this policy is: Disciplinary Probation, Suspension or Expulsion from Housing, Suspension from the University, or Expulsion from the University.

V. Harassment, intimidation, or bullying which includes any single or series of, gesture[s], written, verbal or physical act[s], or electronic communication[s] that is reasonably perceived as being motivated by an actual or perceived characteristic, such as race, color, religion, ancestry, national origin, gender, sexual orientation, gender identity and expression, or a mental, physical or sensory disability, or by any other distinguishing characteristic, and that a reasonable person should have known will have the effect of:

1. Physically or emotionally harming a student, damaging the student's property, or placing a student in reasonable fear of such harm, or

2. Insulting or demeaning any student or group of students in such a way as to cause disruption in or interference with the orderly operation of the University, or

3. Creating a hostile educational environment for the student by severely and pervasively infringing on the rights of the student and interfering with a student's education or causing physical or emotional harm to the student

4. Such action is prohibited whether it takes place on or off University property or substantially disrupts or interferes with the orderly operation of any function sponsored by the University.

W. Violations of local, state, or federal law on University property, or off campus when such violation has an adverse effect upon individual members of the University community so as to violate the laws, policies or rights of the University members or otherwise prevent other University members from engaging in the pursuit of their duties, mission or education objectives.

X. Any other action by a student or recognized student group on or off campus that, in the judgment of University officials, has an adverse effect on the University.

Y. Abuse of the Student Conduct Process including, but not limited to falsification, distortion or misrepresentation of information before a hearing officer or members of the University Hearing Board; disruption or interference of a University Hearing Board or administrative hearing; attempting to discourage an individual's proper participation in the student conduct process; attempting to influence another person to commit an abuse of the student conduct process.

Generally, violations of rules and regulations in the residence halls will be handled by the Department of Residence Life. Alleged policy violations regarding student organizations will be adjudicated by the Office of Campus Activities and Student Leadership. However, violations that could result in suspension or expulsion will be adjudicated through the Office of Student Conduct.

### IV. Interim Suspension and Special Circumstances

Students can be suspended from academic pursuits and/or various campus properties of the University on an interim basis, if they are deemed to be a clear and present danger to either themselves or the University community by the Office of Student Conduct. In such cases, a hearing will be scheduled as expeditiously as possible to determine whether the interim suspension should be lifted or remain pending final adjudication.

### CLEAR AND PRESENT DANGER POLICY

If a currently enrolled student commits an on-campus act that results in arrest, creates a public safety issue, or violates the Student Code of Conduct, the Office of Student Conduct reserves the right to restrict or remove that student's access to campus. This decision will be made in consultation with Campus Police regarding the level and duration of restricted access and may also involve input from Residence Life staff members.

A student can be restricted from the residential area of campus or entire campus based on the specific circumstances of the incident. The Office of Student Conduct requires that a University Hearing Board be convened to determine the possibility of reinstatement or separation from the Institution.

### PERSONA NON GRATA POLICY

If a former student or an unaffiliated person commits an act that results in arrest, creates a public safety issue, or violates the Student Code of Conduct, the Office of Student Conduct reserves the right to restrict or remove that person's access to campus. This decision will be made in consultation with Campus Police regarding the level and duration of restricted access. The minimum length of restriction will be one calendar year. Violations of this restriction will result in an extension of the restriction.

Should this former student or unaffiliated person wish to apply for admission/re-admission to the University at a later date, the Office of Student Conduct will require a University Hearing Board take place after the completion of the restricted period and before the admission process. This University Hearing Board will provide an opportunity for the former student or unaffiliated person to address the event.

### V. Due Process

It has been recognized that due process in higher education disciplinary matters does not parallel the requirements of due process in a court of law. However, the University ensures that fundamental requirements of due process in all disciplinary matters will be implemented. These requirements are:

1. Accused students will be notified via their William Paterson University email account of charges within a reasonable time period.

2. Notification via the accused students William Paterson University email address of the date, time, and place of the hearing at least five business days in advance.

3. The opportunity to present information and eye-witnesses.

4. The opportunity to choose any one person as an advisor throughout the conduct process.

5. Written notification of findings and sanction or penalties imposed.

6. Written notification of an appeal process.

## VI. Disciplinary Procedures

Allegations of policy violations may be brought by any member of the University community or by the University itself. When charges are brought against a student for violation of University policies, rules or regulations, the following procedures will be in effect:

1. Alleged violations must be formally submitted to the Director of Student Conduct.

2. Alleged violations related to incidents that occur in residence halls must be submitted to the Department of Residence Life.

3. Any alleged violation should be filed as soon as possible after an incident takes place, preferably within five business days.

4. When the allegations of a given case are deemed serious, and/or may have a significant impact on the overall campus community, the Director of Student Conduct reserves the right to convene the University Hearing Board to address the issue. Cases that are serious enough to warrant suspension or expulsion are required to be heard by the University Hearing Board. In some cases, a student may be interim suspended from the residence halls and/or the University, pending an investigation and/or hearing or final resolution of the charges.

5. Alleged violations that are not deemed serious enough to warrant suspension or expulsion may be handled by the Director of Student Conduct or designee.

### Cases Addressed by the Director of Student Conduct or Designee

Upon receipt of a charge or charges against a student, the alleged violator of the Student Code of Conduct will be sent a letter of notification to their William Paterson University email account.

Through the notification letter:

1. The student will be apprised of the date and time of the hearing.

2. The student will be informed of the specific alleged violation(s).

3. The student will be provided with a copy of the information that led to the alleged violation(s), as per the guidelines created by Campus Police.

4. The student will be notified of the right to bring eye-witnesses to the hearing. An eye-witness is someone who has direct knowledge of the alleged violation(s).

5. The student will be notified of the right to bring an advisor to the hearing. An advisor may counsel the student on what information to present or offer advice on the inclusion of other relevant information. An advisor is not permitted to:  advocate on behalf of the student, to address the hearing officer, to question the eyewitnesses or to request a schedule change. An advisor who interferes in the hearing process will be removed.

6. The student will be informed that failure to attend the hearing without prior notification automatically waives the student's right to participate in the hearing process. The hearing will proceed without the input of the student.

7. The student will be informed of the process and timeline for rescheduling a hearing.

Upon completion of a full investigation and after all hearings have been conducted, the student or students who have been charged will receive a letter to notify them of the outcome. If the student is found responsible for a violation of the Student Code of Conduct, that student's cumulative conduct history will be considered when determining sanctions.

**The Appeal Process for Cases Addressed by the Director of Student Conduct or Designee**

The appeal process can only be implemented in cases where the outcome has resulted in Suspension or Expulsion from the University residence halls. The accused student has three (3) business days from the date he or she was informed of the decision to file a written appeal to the Associate Vice President of Campus Life. The grounds for appeal may only be for one or more of the following reasons:

a) Severity of the sanction

b) Procedural error/violation of due process protections

c) New evidence that was not known to the Hearing Officer at the time of deliberation. Please note that a student's failure to attend a hearing or provide information during a hearing does not constitute grounds for appeal on the basis of new evidence.

The Associate Vice President will review the appeal exclusively on these grounds and respond in writing within ten (10) business days of receipt of appeal.

**Cases Addressed by the University Hearing Board**

1. Upon receipt of serious charges to be brought before the University Hearing Board, the Director of Student Conduct or designee will direct, in writing, the student being charged to appear at a specified time and place to attend a pre-hearing investigation meeting. The student will receive written details of alleged violation(s) of the Student Code of Conduct. The student will also receive a copy of the information that led to the alleged violation(s), as per the guidelines created by Campus Police. The student will have the opportunity to give additional information that may be presented to the University Hearing Board for review during the hearing. This meeting also provides the student with an opportunity to ask any questions he or she may have regarding the process and possible outcomes.

2. After the pre-hearing investigation meeting, the student will be sent written notification of the following information:

a) the time and place of the hearing

b) specific charges against the student

c) the right to have eye-witnesses present; students must provide to the Director of Student Conduct, the names of the eye-witnesses at least 72 hours prior to the time of the hearing.

d) the right to have an advisor present; students must provide to the Director of Student Conduct, the name of the advisor at least 72 hours prior to the time of the hearing.

e) the right to present information

f) the names of the hearing board members who will be present at the hearing (if known)

g) the name and title of the hearing officer

h) the name of the complainant to the extent consistent with University policy and the law

i) a handout which describes the hearing process

3. The hearing conducted by the University Hearing Board is closed except to those individuals directly involved in the alleged policy violation and campus departmental representatives deemed necessary by the Director of Student Conduct.

4. Both the complainant and the accused have the right to be assisted by an advisor of their choice. An advisor may assist the accused student in the preparation of his/her information; an advisor may help provide support to a complainant. However, the advisor is neither permitted to advocate on behalf of the student, question eye-witnesses, directly address the hearing officer or members of the University Hearing Board, nor request a schedule change. An advisor who interferes in the hearing process will be removed.

5. An audio taped record of the hearing is made and kept in the Office of the Vice President of Student Development. All deliberations of the University Hearing Board are confidential.

6. The University Hearing Board will consist of a non-voting hearing officer and five (5) voting board members.

7. In cases alleging sexual violence, the following additional procedures will apply.

The Complaining Student may choose to:

- Attend the University Hearing Board in the same room with the charged student;
- Attend the University Hearing Board in the same room but separated by a screen from the charged student;
- Attend the University Hearing Board in the same room with the charged student and a police officer present;
- Attend the University Hearing Board via skype from another location on-campus;
- Not attend the University Hearing Board but submit a written statement;
- Not attend the University Hearing Board and not submit a written statement.

The Charged Student may choose to:

* Attend the University Hearing Board;
* Not attend the University Hearing Board but submit a written statement;
* Not attend the University Hearing Board and not submit a written statement.

Both parties are afforded the right to be simultaneously provided with concurrent written notification of the outcome of the University Hearing Board;

The Complaining Student is afforded the right to appeal both the outcome of the University Hearing Board and any sanctions that are applied to the charged student to the Vice President for Student Development in writing within three (3) business days. The response to an appeal is issued within ten (10) business days of receipt. The Charged Student is afforded the right to appeal according to the procedures defined below in Appeal Process for Cases Addressed by the University Hearing Board.

**The University Hearing Board's Determination**

The University Hearing Board's determination shall be based on the preponderance of evidence in the case. The question before the University Hearing Board will be whether it is more likely than not that the accused student violated the Student Code of Conduct. The University Hearing Board will make the final determination of whether a student is held responsible or not responsible for violating the Student Code of Conduct. The Director of Student Conduct, acting on behalf of the University Hearing Board, shall inform the accused student of the final outcome of the University Hearing Board, the sanction(s) imposed by the University Hearing Board, and the appeal process. The Vice President of Student Development serves as the appellate arm of the University conduct process.

**The Appeal Process for Cases Addressed by the University Hearing Board**

The appeal process can only be implemented in cases where the outcome has resulted in Suspension or Expulsion from the University. The accused student has three (3) business days from the date he or she was informed of the University Hearing Board's decision to file a written appeal to the Vice President of Student Development. The grounds for appeal may only be for one or more of the following reasons:

a) Severity of the sanction

b) Procedural error/violation of due process protections

c) New evidence that was not known to the University Hearing Board at the time of its deliberation. Please note that a student's failure to attend a hearing or provide information during a hearing does not constitute grounds for appeal on the basis of new evidence.

The Vice President will review the appeal exclusively on these grounds and respond in writing within ten (10) business days of receipt of the appeal.

**Modification of the Code of Conduct**

The Student Code of Conduct may be amended from time to time. If a change is made, students will be notified through email. Copies of the revised code will be available online and in the Office of Student Conduct.

**VI. Sanctions**

The following sanctions may be assigned for violations of the Student Code of Conduct. All result in written notifications being placed in the student's disciplinary file, either in the Office of Student Conduct or in the Office of Residence Life. These sanctions may be imposed separately or in conjunction with other sanctions. Please note that a student's cumulative conduct history will be considered for the assignment of sanctions.

*1. Official Warning* — The student receives notification from the Director of Student Conduct or designee, indicating that a violation of the Student Code of Conduct has occurred and warning that any subsequent violation may be treated more seriously.

*2. Campus Life Probation* – A defined period of time whereby any registered student is given an opportunity to modify his or her behavior or risk more severe sanctions. Any subsequent violation of the Student Code of Conduct, while on Campus Life Probation, may result in further disciplinary action.

*3. Disciplinary Probation* — A student on disciplinary probation is no longer in good standing with the University. He or she cannot be a member of recognized student organizations, serve as a representative of the University, or participate in intramural, club, or intercollegiate sports for a period of time. [The minimum time is one semester. The maximum time is four semesters.] Any violation of the Student Code of Conduct by the student during the time he/she is on disciplinary probation may result in suspension or expulsion from the University.

*4. Restitution* — The student is required to make payment to the University or to other persons, groups, or organizations for damages incurred as a result of violations of the Student Code of Conduct.

*5. Suspension or Expulsion from the University Residence Halls* – The student may not reside in, visit, or enter any of the residence halls on campus. This includes entrances, foyers, lounges, rooms, hallways, and common areas.

*6. Suspension from the University* — The student may not be a registered student, be present on campus, or attend University sponsored events for any reason while he or she is suspended from the University. The minimum length of a suspension is one semester; there is no maximum.

*7. Expulsion from the University* — The student may not ever again be a registered student, be present on campus, or attend University sponsored events.

*8. Order of No Contact* – The student and his/her friends and acquaintances may be restricted from having any contact with another member of the University community. This sanction can include but is not limited to the

exclusion from any University building or property, and avoidance of a specified University member, whether on University property or not, and placing an affirmative duty on the student and his/her friends or acquaintances to maintain a specified distance away from the designated University member.

9. *Administrative Relocation* – The student can be required to relocate to a new housing assignment during or after the conclusion of the hearing process. This sanction is utilized to ensure the safety and peace of mind of the residential community at the discretion of the Director of Student Conduct or Department of Residence Life Staff.

10. *Other Sanctions* — Educational sanctions may be imposed in addition to or instead of the aforementioned sanctions. For example, students may be required to work on research projects or write letters of apology. Students may have community service projects or educational workshops assigned.

If good cause exists, as determined by the Director of Student Conduct and in consultation with appropriate University officials, any and all of the above sanctions can be imposed on the student on an interim basis pending an investigation, hearing and/or final resolution of any pending charges.

Please take note of the following:

1. There is no refund of tuition and fees if withdrawal from courses and/or campus residence is affected due to violations of the Student Code of Conduct.

2. Violation of University policies or state or federal law while on campus may result in revocation of privileges concerning the use of campus facilities.

3. Students who choose not to attend the scheduled hearing are not entitled to appeal the hearing outcome based on new evidence, as the omission of information in the hearing does not constitute grounds for appeal.

4. Additional charges may arise through the conduct process and result in an administrative hearing or University Hearing Board.

# FAQ

## Do I have to attend my hearing?

No, attendance is not required at the hearing; however, if you choose not to attend you have forfeited your right to present information about the situation that created the allegation of a policy violation. It is strongly recommended that students attend any scheduled hearings.

## What is the difference between an administrative hearing and a University Hearing Board?

An administrative hearing is required for alleged policy violations that are not deemed serious enough to warrant suspension or expulsion. These hearings may be handled by the Director of Student Conduct or one of the Resident Directors from the Department of Residence Life.

A University Hearing Board is required when the allegations of a policy violation are deemed serious, and/or may have a significant impact on the overall campus community. Cases that are serious enough to warrant suspension or expulsion are required to be heard by the University Hearing Board. The University Hearing Board is composed of a non-voting Hearing Officer and five voting Hearing Board Members.

## Why do I have to go through the Student Conduct Process if I'm already going to court?

The Student Conduct Process is an educational experience that directly relates to the mission and values of William Paterson University. It is separate and distinct from New Jersey state law that informs the civil and criminal code which can result in arrest. By choosing to affiliate with William Paterson University, all student members of the University are expected to uphold the standards of this community. As a result, the University administers its own conduct process.

## Who can I bring as my advisor?

All students who have been alleged to have violated policy have the right to bring an advisor to the hearing. The student may choose any one person to serve as her or his advisor throughout the student conduct process. This person can be a parent, an instructor, a mentor, or even a lawyer. An advisor may counsel the student on what

information to present or offer advice on the inclusion of other relevant information. An advisor is not permitted to advocate on behalf of the student, to address the hearing officer or members of the University Hearing Board, to question the eyewitnesses or to request a schedule change. An advisor who interferes in the hearing process will be removed.

## What if my lawyer will be my advisor?

This is permitted. Prior to the hearing, please review with your lawyer the restrictions placed on advisors within the student conduct process. The expectation is for the student to speak for herself or himself at any student conduct proceeding. Your lawyer may counsel you on what information to present or offer advice on the inclusion of other relevant information. Your lawyer is not permitted to advocate on your behalf, to address the hearing officer or members of the University Hearing Board, to question the eyewitnesses or to request a schedule change. If your lawyer interferes in the hearing process, he or she will be removed.

## Who qualifies as a witness?

All students who have been alleged to have violated policy will be informed of the right to bring witnesses to the hearing. The witness must be an eye-witness: someone who was present at the time of the event and who has direct knowledge of the alleged violation(s).

## Who gets to know what happens during my hearing?

You will be informed of the hearing outcome via written communication from the Hearing Officer. Only University Hearing Boards are digitally recorded for appeal purposes. The information presented during a hearing is confidential and cannot be shared with others except in circumstances where there has been a clearly identified victim or victims.

## What information can be given to victims of sexual assault violations?

New federal regulations regarding Title IX of the Educational Amendments of 1972 require that victims of sexual assault violations will be simultaneously provided with written notification of the outcome of the hearing and have the right to file an appeal within three days of notification.

# What information can be given to victims of physical assault violations?

The Family Educational Rights and Privacy Act of 1974 allows for victims of physical assault violations to be notified of the hearing outcome and any sanctions assigned for the purposes of that student's peace of mind.

Students should consult other regular University publications for announcements and procedures regarding University policies. These publications include, but are not limited to, the Undergraduate Catalog, the Student Handbook, and the University website. The complete Student Disciplinary Code is published in the Student Handbook

The Counseling, Health and Wellness Center is a certified rapid HIV testing center and offers free CONFIDENTIAL testing to all students. Tests are done by appointment only. Although the University may be unaware that infected students may be unreasonably engaged in conduct that threatens the health of others, we will attempt to offer protection to the community at large while still protecting the rights of the person with HIV.

Section 504 of the Federal Rehabilitation Act of 1973 prohibits discrimination against individual(s) with disabilities. No qualified student with disabilities at William Paterson University is to be excluded from participation in, be denied benefits of, or be subjected to, discrimination under any program or activities of the college community. The knowledge that a given individual is carrying HIV could have such a profound and possibly irrational effect upon the recipient of this information who then might take steps that could easily compromise the campus life of the individual in question. The likelihood is that such information could not legally be placed in any non-medical files without the expressed written permission of the student, according to the Family Educational Rights and Privacy Act of 1974. This Act would probably apply to any verbal communication as well, and thus confidentiality must extend to faculty, administrators, other students, and even partners.

The diagnosis of HIV or AIDS can be made by any appropriately trained medical provider and will then be reported to the New Jersey State Department of Health in accordance with state laws. The hospital or the student may report back the results of such testing, which are confidential, as part of the student health record. Often, a student would continue outside health care and not report to the Student Health Service. Education and counseling are available through the Counseling Center and the Health and Wellness Center when requested.

William Paterson University complies with the requirements of the FAMILY EDUCATIONAL RIGHTS AND PRIVACY ACT (FERPA).

Students may authorize release of their academic, financial aid, student account and/or disciplinary records to a third party (i.e.., parents, grandparents, etc.) by completing the FERPA form on-line. You may adjust access to the respective records at any time by simply logging into WPConnect Self Service Online Services under "Enrollment Services". These permissions will remain active until your anticipated date of graduation.

A) Students and student organizations should be free to examine and discuss all questions of interest to them and to express opinions publicly and privately. They should always be free to support, by orderly means, causes that do not disrupt the regular and essential operations of the University. [For more information regarding this matter, please refer to the University Demonstration policy.]

B) Students have the right to affiliate with student organizations and engage in activities, provided those activities adhere to normal University policies and do not jeopardize the health, safety, or welfare of members of the University community.

C) It is the responsibility of all students of the University to adhere to the letter and spirit of duly enacted University policies, rules, and regulations. Students who violate said policies, rules, and regulations are likely to face disciplinary action.

D) The University shall attempt to handle disciplinary matters in an expeditious manner.

E) The University will guarantee procedural fairness in all its disciplinary actions.

### Institutional Authority to Ensure Fulfillment of the University's Mission

The authority to discipline students for violations of University policies, rules, and regulations is assigned by the President to the Office of the Dean of Student Development for implementation by the Dean of Student Development or his/her designee. Disciplinary action may be taken against students for violation of University policies, rules, and regulations.

### Due Process and Disciplinary Procedures

It has been recognized that due process in higher education disciplinary matters does not parallel the requirements of due process in a court of law. However, the University ensures that fundamental requirements of due process in all disciplinary matters will be implemented. These requirements are:

1. Written notification of charges and possible penalties within a reasonable time period.

2. The opportunity either to have a hearing on the charges or waive the right to a hearing and accept the penalties to be imposed.

3. Written notification of the time, place, and date of hearing at least three business days in advance.

4. The opportunity to present evidence and witnesses.

5. Written notification of findings and sanction or penalties imposed.

6. Written notification of an appeal process.

Charges may be brought by any member of the University community or by the University itself. When charges are brought against a student for violation of University policies, rules, or regulations, the following procedures will be in effect:

1. Charges must be in writing and submitted to the Office of the Vice President of Student Development. Charges related to incidents that occur in residence halls must be submitted to the Department of Residence Life.

2. Any charge should be filed as soon as possible after an incident takes place, preferably within one week's time.

3. When the allegations of a given case are deemed serious, and/or may have a significant impact on the overall campus community, the Office of the Vice President of Student Development

reserves the right to convene the University Hearing Board to address the issue. Cases that are serious enough to warrant suspension or expulsion are required to be heard by the University Hearing Board .

4. Alleged violations that are not deemed serious enough to warrant suspension or expulsion may be handled by the Vice President of Student Development's designee.

NOTE: The entire policy and procedures are published in the Student Handbook.

**Discrimination Complaint Procedure for Students**

The University has promulgated both informal and formal procedures for resolving student complaints of discrimination. Any student who believes that he or she has been discriminated against on the basis of race, sex (including sexual harassment), age, national origin, religion, marital status, physical or mental handicap, or sexual orientation should follow the procedures outlined in the Discrimination Complaint Procedure for Students. The entire procedure is published in the Student Handbook.

**Demonstration Guidelines and Procedures**

The University is committed to the principles of academic freedom and deliberative discourse. All members of the campus community are encouraged to participate fully in the academic life and governance of the institution through various administrative and advisory committees, in the performance of their respective roles, and in all forums, formal and informal, for debate and deliberation.

Recognizing that a healthy and productive climate for debate involves a provision for criticism and dissent, the University affirms the right of those including students, faculty, staff, and members of the public who dissent from conditions, issues, or proposed actions to express their views by whatever orderly means they deem appropriate, preserving the rights of others to their beliefs and opinions. Protest and dissent by verbal and other symbolic means are, therefore, protected.

Protest and dissent which interfere with the freedom of speech, assembly, or ability to carry on normal activities among any individuals or groups exceed the bounds of protection. When, in the judgment of the President or his/her designee, dissent or protest interferes with the rights of others, actions will be taken by the President or his/her designee to rectify the situation by appropriate means.

It is the duty of the President and the administration, and the responsibility of all the members of the campus community, to affirm the rights of all protected expression and communication.

**Procedures**

For the purpose of enhancing the campus climate and preserving the rights of individuals and

groups, the University institutes the following guidelines and procedures to assist members of the community in meeting these expectations.

**A. Regarding organized demonstrations:**

1. All persons or organizations intending to stage demonstrations on the William Paterson University campus must contact the Vice President of Student Development (or designee) one week prior to the event. The Vice President of Student Development will designate an appropriate area for the demonstration, i.e., one which will not restrict access to buildings or facilities or otherwise obstruct the conduct of normal activities. The Vice President of Student Development shall notify the individual or group of his/her decision regarding time, place, and manner of the event as soon as possible to allow for general notification.

**B. Regarding spontaneous demonstrations**

1. Because not all conditions, events, or actions that stimulate dissent may themselves be foreseeable, and because demonstrations may emerge under such circumstances, there is an expectation that spontaneous demonstrations occur from time to time.

2. Under these circumstances it is the responsibility of both the Vice President of Student Development (or designee) and the demonstrating parties to cooperate with the aim of supporting the rights of all and protecting the safety of all while enabling the expression of opinion.

3. The Vice President of Student Development and dissenting parties will therefore negotiate:

    1. To seek to remedy the situation which gives rise to the demonstration, if possible or appropriate, or

    2. To provide a forum for the expression of opinion and the continuation of debate and dialogue that seeks to resolve conflict, find remedy, or allow for meaningful expression of ideas.

**Violations**

Since the spirit of these guidelines and procedures is violated when any party abrogates the rights of individuals or groups as outlined above, it is the responsibility of all parties to avoid such abrogation in the following ways:

1. In the event that a demonstration or other expression of dissent becomes disruptive to the rights of others or poses a threat to health and safety, including that of the dissenting parties, the Vice President of Student Development or other designated representative of the administration in his/her absence shall assume responsibility, on behalf of the University, for presenting to the disruptive parties the concerns of the University and shall seek to provide alternative avenues for expression. In the event that accommodation is not reached, the Vice President of Student Development or other representative of the administration shall ask the disruptive parties to cease their activities.

2. The production of noise, for instance, through the use of loudspeakers but not only by electronic or other means or other annoying effects in the environment that disrupt the activities of others will be considered a violation of any agreement regarding a scheduled or spontaneous demonstration and will result in a request to cease disruption immediately.

3. In rare cases where activities are disruptive and the disruptive parties refuse to comply with a request to conduct alternative activities or to cease disruption, the University reserves the right and has the responsibility to the community, after due deliberation and consultation, to request

the intervention of University Police to ensure the health and safety, access to facilities, and concurrence with the law.

4. If the demonstration causes disruption, destruction, or inconvenience, the demonstration leader will be informed by the Vice President of Student Development or his/her representative that the William Paterson University Police may be called to end the demonstration if there is no compliance with the directives or if the behavior causing the disruption, destruction, or inconvenience does not cease.

**Adjudication and Appeal**

1. Individuals or groups who believe that their rights have not been respected under these guidelines and procedures may seek remedy by written communication with the Vice President of Student Development.

2. Individuals or groups who deliberately violate this policy will face sanctions following a hearing by the Office of the Vice President of Student Development.

3. Appeal of decisions regarding complaints of the violation of rights or the imposition of sanctions shall be heard by the Vice President of Student Development.

4. In rare circumstances, when no other avenue is to be discovered for adjudication and appeal, the President or his/her designee shall appoint a mediating team to discover the facts of a situation and make recommendations regarding appropriate remedies or sanctions. The decision of the President or his/her delegated representative, following this review, shall be the final decision of the University.

**Extracurricular Activities: Participation and Policy**

1. Extracurricular activities are here defined as participation in any clubs, programs or organizations that are recognized by the University or any of its agencies for which academic credit is not received.

2. All extracurricular activities shall be open to all full-time and part-time students who have paid the appropriate student activity fees, except where the organizations are members of national bodies that have more stringent requirements.

3. Students in leadership positions are required:

   1. to maintain a minimum GPA of 2.3 throughout their term in office. Students without GPAs (first semester first-year students and transfer students) will be permitted to participate, but continuance will depend upon meeting said GPA requirements after their first term here at William Paterson University.
   2. to carry a minimum of 9 credits (undergraduate) or 6 (graduate) each semester for spring and fall.

**Notes:**

1. Students who do not maintain this standard will become ineligible to continue in a leadership position(s).
2. Individual organizations may require higher academic standards for their leadership positions.
3. Members of clubs and organizations are required to maintain a minimum cumulative GPA of 2.0 or greater. Those students whose cumulative average falls below 2.0 will be placed on extracurricular probation.
4. Students whose cumulative GPA falls below the minimum requirement of a 2.0 are strongly encouraged to seek out campus resources like the Academic Support Center or their

departmental offices to develop those skills needed to raise their academic grade point average to once again actively participate in campus activities.

5. Students whose "term" GPA falls below 2.0 or two terms consecutively are also placed on extracurricular probation.
6. Students on extracurricular probation must not participate in extracurricular activities including, but not limited to holding leadership positions, volunteering or engaging in the development and implementation of campus activities, etc.
7. The Office of Campus Activities and Student Leadership will periodically monitor student progress and take any needed action to address those students on extracurricular probation.

**Proof of Immunization**

The State of New Jersey has enacted legislation that requires students enrolled at William Paterson University to provide proof of immunization against measles, mumps, and rubella and Hepatitis B. In addition, the State of New Jersey has enacted legislation (A1546) requiring new resident students at a four-year institution of higher education to provide proof of immunization of the Meningococcal vaccine. The following documents will be accepted as evidence of immunization history provided the specific immunization and the exact date of each immunization administered are recorded.

1. An official school immunization record from any primary or secondary school in New Jersey indicating compliance with the immunization requirements of N.J.A.C. 9:2-14.3.
2. A record from any public health department indicating compliance with the immunization requirements of N.J.A.C. 9:2-14.3.
3. A record signed by a physician licensed to practice medicine or osteopathy in any jurisdiction of the United States or foreign country or other licensed health professional approved by the New Jersey State Department of Health indicating compliance with the immunization requirements of N.J.A.C. 9:2-14.3.

**Exemptions**
1. Any student born before January 1,1957 will be exempt from documenting the measles, mumps and rubella vaccine only.
2. If immunization conflicts with religious beliefs, it is necessary for the student to file a statement specifically stating the religious doctrine that prohibits the vaccination.
3. If a student has a medical contraindication to the vaccine, he or she must provide a written statement from a licensed medical provider. The statement must include the reason and specific period of time the vaccine is contraindication.

All students are required to submit the University Health Form, which includes a completed health record and current immunization information. Immunizations for tetanus, meningitis, and a test for tuberculosis are highly recommended for all University students.

Please submit all documentation to the Counseling, Health and Wellness Center, Overlook South. Failure to file proper documentation will prevent continued enrollment at the University. Contact the Counseling, Health and Wellness Center with any questions regarding the immunization requirements.

**Affirmative Action Policy**

William Paterson University does not discriminate on the basis of race, color, age, sex, religion, creed, national origin, sexual orientation, or disability. University policies and practices are consistent with federal and state laws pertaining to equal opportunity in admission and

education policies, scholarship, loan, athletic, and other school-administered programs.

Specifically, William Paterson University complies with Title IX of the Education Amendments of 1972, Section 504 of the Vocational Rehabilitation Act of 1973, Title VI of the Civil Rights Act of 1964, and all of their respective implementing regulations.

**Sexual Harassment Policy**

William Paterson University is committed to developing and sustaining a community where all can learn and work together free from harassment and exploitation. This policy is intended to address all members of the University community including students, faculty, librarians, professional staff, clerical staff, maintenance, campus police and security, managers, administrators, and the Board of Trustees, as well as any vendors doing business with the University.

Sexual harassment encompasses any sexual attention that is unwanted. Sexual harassment can be verbal, visual, or physical. It can range from repeated unwelcome sexual flirtation and inappropriate gender-based put-downs of individuals or groups of people to physical abuses, such as sexual assault or rape. Whether particular verbal, nonverbal, or physical conduct constitutes harassment in violation of this policy depends upon all of the circumstances involved, the context in which the conduct occurred, and the frequency, severity, and pattern of the conduct.

The University recognizes that even the possibility of harassment is destructive to individuals, to groups, and to the community. While sexual harassment most often takes place in situations where there is a power differential between the persons involved, the University recognizes that sexual harassment may occur between persons of the same status. Sexual harassment may also occur between persons of the same sex.

Sexual harassment contaminates teacher/student and supervisor/subordinate relationships as well as those among student peers and faculty or staff colleagues. When, through fear of reprisal, a student, staff member, or faculty member submits or is pressured to submit to unwanted sexual attention, the entire community is undermined.

The University will not tolerate among members of the community, behavior that creates an unacceptable working or educational environment, and it will initiate appropriate sanctions against the offender.

Sexual harassment of students, which includes acts of sexual violence, is a form of sex discrimination prohibited by Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681 et seq., and its implementing regulations. Complaints about sexual harassment should be directed to the Title IX coordinator at William Paterson University , Michelle N. Johnson, Office of Employment Equity and Diversity. She can be reached by phone at 973-720-2389 or johnsonm73@wpunj.edu.

William Paterson University is dedicated to providing a campus environment free from violence for all members of the campus community. For this reason, William Paterson

University does not tolerate any form of violence including domestic/dating violence, stalking and/or sexual violence. William Paterson University will pursue the perpetrators of such acts to the fullest extent possible and is committed to supporting victims of domestic/dating violence, stalking and/or sexual violence by providing access to appropriate safety and support services.

Domestic/dating violence, stalking and/or sexual violence incidents are occurring at an alarming rate on the nation's college campuses. Such incidents happen to people of all genders, races, ethnicities, religions, ages, abilities, sexual orientations, gender expressions, sexual identities etc. These incidents affect people of all socioeconomic backgrounds and education levels. These incidents can occur between strangers, acquaintances, friends, roommates, family members and intimate partners[1].

Domestic/dating violence, stalking, and sexual violence are crimes in the State of New Jersey and are subject to criminal prosecution. In addition, William Paterson University has stringent policies related to these issues as described in the next few sections.

This policy applies to conduct that takes place on the property of William Paterson University or at any function sponsored by William Paterson University. This also includes students living together off-campus. Anyone violating this policy will be subjected to disciplinary action up to and including expulsion from William Paterson University, termination of employment and/or criminal prosecution.

### Domestic/Dating Violence

Domestic/dating violence can be defined as a pattern of abusive behavior that is used by an intimate partner to gain or maintain power and control over the other intimate partner. It can be committed by a person who is or has been in a social relationship of a romantic or intimate nature with the victim. It can also be committed by one roommate[2] over another. Domestic/dating violence can be physical, sexual, emotional, economic, or psychological actions or threats of actions that influence another person. This includes any behaviors that intimidate, manipulate, humiliate, isolate, frighten, terrorize, coerce, threaten, blame, hurt, injure, wound someone, or destroy someone's property.

- **Physical Abuse:** Hitting, slapping, shoving, grabbing, pinching, biting, hair pulling, etc are types of physical abuse. This type of abuse also includes denying a partner/roommate medical care or forcing alcohol and/or drug use upon him or her.
- **Sexual Abuse:** Coercing or attempting to coerce any sexual contact or behavior without consent. Sexual abuse includes, but is certainly not limited to, marital rape, attacks on sexual parts of the body, forcing sex after physical violence has occurred, or treating one in a sexually demeaning manner (more about this in the Sexual Violence section).
- **Emotional Abuse:** Undermining an individual's sense of self-worth and/or self-esteem is abusive. This may include, but is not limited to constant criticism, diminishing one's abilities, name-calling, or damaging one's relationship with his or her children.
- **Economic Abuse:** Is defined as making or attempting to make an individual financially dependent by maintaining total control over financial resources, withholding one's access to money, or forbidding one's attendance at school or employment.

- **Psychological Abuse:** Elements of psychological abuse include - but are not limited to - causing fear by intimidation; threatening physical harm to self, partner, children, or partner's family or friends; destruction of pets and property; and forcing isolation from family, friends, or school and/or work.

Under the New Jersey Prevention of Domestic Violence Act of 1991, N.J.S.A. 2C:25-17 et seq., domestic violence means the occurrence of one or more of the following criminal offenses upon a victim:  Homicide, Assault, Terroristic threats, Kidnapping, Criminal restraint, False imprisonment, Sexual assault, Criminal sexual contact, Lewdness, Criminal mischief, Burglary, Criminal trespass, Harassment, Stalking. A victim of domestic violence is a person protected by the Act and includes any person:

- who is 18 years of age or older; OR,
- if under 18, is an emancipated minor, and who has been subjected to domestic violence by a spouse, former spouse or any other person who is a present or former household member; OR
- regardless of age, has been subjected to domestic violence by a person with whom the victim has a child in common, or with whom the victim anticipates having a child in common, if one of the parties is pregnant; OR
- regardless of age, has been subjected to domestic violence by a person with whom the victim has had a dating relationship.

The domestic violence offender must be over the age of 18 or emancipated at the time of the offense to be considered an offender under this Act.

### Stalking

Stalking is a course of conduct directed at a specific person that would cause a reasonable person to fear for her/his safety or the safety of another person or to suffer other emotional distress. Course of conduct is defined as

- repeatedly maintaining a visual or physical proximity to a person; directly, indirectly, or through third parties, by any  action, method, device, or means, following, monitoring, observing, surveilling, threatening or communicating to or about, a person; OR
- interfering with a person's property; repeatedly committing harassment against a person; OR
- repeatedly conveying, or causing to be conveyed, verbal or written threats or threats conveyed by any other means of communication or threats implied by conduct or a combination thereof directed at or toward a person.

Stalking includes any behaviors or activities occurring on at least two occasions that collectively instill fear in a victim, and/or threaten her/ his safety, physical health or cause other severe mental suffering or distress. Such behaviors and activities may include, but are not limited to, the following:

- Non-consensual communication, including face-to-face communication, telephone calls, voice messages, e-mails, text messages, written letters, gifts, or any other communications that are undesired and place another person in fear;
- Use of online, electronic, or digital technologies, including: Posting of pictures or information in chat rooms or on Web sites; Sending unwanted/unsolicited email or talk requests; Posting private or public messages on Internet sites, social networking sites, and/or school bulletin boards; Installing spyware on a victim's computer; Using Global Positioning Systems (GPS) to monitor a victim;
- Pursuing, following, waiting, or showing up uninvited at or near a residence, workplace, classroom, or other places frequented by the victim;
- Surveillance or other types of observation including staring, "peeping";

- Trespassing;
- Vandalism;
- Non-consensual touching;
- Direct verbal or physical threats;
- Gathering information about an individual from friends, family, and/or co-workers;
- Threats to harm self or others;

If a person is repeatedly attempting to communicate with you by any means, in a threatening or harassing manner, you are encouraged to report it to University Police.

## Sexual Violence

Sexual violence takes many forms including attacks such as sexual assault or attempted sexual assault, as well as any unwanted sexual contact or threats. There are three categories of sexual violence: Sexual Assault, Sexual Contact or Lewdness.

- **Sexual assault** occurs when one person penetrates the other by any means, whether vaginally, anally or orally without the consent[3] of the other person.
- **Sexual contact** occurs when one person touches the intimate parts of another person's body, even through clothes, without that person's consent. That impermissible touching can be either for the perpetrator to obtain sexual gratification or to degrade or humiliate the other person or to obtain power and control over the other person.
- **Lewdness** involves the perpetrator exposing his/her intimate parts without a person's consent to obtain sexual gratification or to degrade or humiliate the other person or to obtain power and control over the other person.

Sexual violence in any form is a devastating crime. Offenders commit sexual violence via force, threats, coercion, manipulation, pressure or tricks. A person is considered to be a sexual offender if he/she forces, threatens, coerces, manipulates, pressurizes or tricks anyone into committing any of the above listed acts on a third person. Whatever the circumstances, no one should be subjected to sexual violence.

William Paterson University encourages reporting of all incidents of domestic/dating violence, stalking and/or sexual violence to the University Police (973-720-2300) or the Office of Judicial Affairs (973-720-2218). Whether a student chooses to report or not, they can seek help and discuss their options with the Campus Victim Services Coordinator (973-720-2578).

**A student who is under the influence of alcohol or drugs at the time of a domestic/dating violence, stalking and/or sexual violence incident should not be reluctant to seek assistance for that reason.** Use of alcohol or drugs never makes a victim at fault for domestic/dating violence, stalking and/or sexual violence. The Office of the Vice President for Student Development will not pursue disciplinary violations against a student (or against a witness) for his or her improper use of alcohol or drugs (e.g., underage drinking) if the student is making a good faith report of domestic/dating violence, stalking and/or sexual violence.

The decision to report incidents of domestic/dating violence, stalking and/or sexual violence to the police or campus authorities is entirely the victim's choice.  Advocates

are available, regardless of whether a person wishes to make a formal report, to inform victims of the reporting procedures and offer appropriate referrals, and to provide accompaniment to hospitals, law enforcement or social service providers. Students who are unsure of their rights or whether they want to make a formal complaint or report can contact the Passaic County Women's Center or the William Paterson University Counseling, Health and Wellness Center for information on available options. William Paterson University offers services to victims even if they choose not to report the incidents. However, without a report, the institution may be limited in its ability take action against the offender.

A student who chooses to file a report can discuss with the University Police or the Office of the Vice President for Student Development whether legal proceedings will be instituted in the local courts. If the victim is exhibiting signs of injury/complains of pain and/or a weapon was involved during the incident and/or if there was a violation of a restraining order and/or there is an active warrant, a mandatory arrest of the offender is warranted.

Once an incident has been brought to the attention of a campus authority, a report must be made in accordance with the University's obligations under the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act ("Clery Act") and/or Title IX of the Education Amendments of 1972 ("Title IX"). William Paterson University staff will also need to report an incident to University Police if it warrants the undertaking of additional safety and security measures for the protection of the victim and the campus community or other situations in which there is a clear and imminent danger, and when a weapon may be involved.

### If you are a victim of domestic/dating violence, stalking and/or sexual violence:

1. Get to a safe place as soon as possible.
2. Get medical attention, if needed, as soon as possible: (a) The University's Counseling, Health & Wellness Center provides information and referral for students who need medical attention (973-720-2360) (b) The Passaic County Women's Center has a 24-hour hotline (973-881-1450) and is available to provide information about counseling, advocacy, accompaniment to hospitals, law enforcement, and or social services at the victim's request.
3. Contact University Police by calling 973-720-2300 or 911. The University Police are available at all times and will protect victims' safety and seek to apprehend offenders; they also provide transportation to victims who have been assaulted.
4. Contact Residence Life Staff (973-720-2714), and/or (c) The Office of the Vice President for Student Development (973-720-2179).
5. Try to preserve all evidence (voice messages, text messages, letters, emails, phone records, diary of incidents that occurred etc).
6. A student may also contact a counselor directly by calling the University's Counseling, Health & Wellness Center at 973-720-2257. There is a counselor on call 24 hours a day in the event of an emergency.
7. In order to preserve evidence, do not bathe, shower, douche, change your clothes, eat, drink, smoke, or urinate if possible.  If you do change your clothes, put all of the clothes you were

wearing throughout the duration of the incident in a paper bag. Plastic bags may alter evidence rendering it unusable.

8. Get immediate medical attention for possible injuries, sexually transmitted diseases, or pregnancy. A medical exam is also necessary to gather physical evidence.

9. William Paterson University will make every reasonable effort to safeguard the identities of students who seek help and/or report domestic/dating violence, stalking and/or sexual violence. This includes record-keeping that excludes personally-identifiable information about victims. While steps are taken to protect the privacy of victims, the University may need to investigate an incident and take action once an allegation is known, whether or not the student chooses to pursue a complaint.

10. When seeking private advice and support from the various offices listed herein or from any University employee, victims should be aware that the Counseling Center is the one place on campus that victims can go where they are assured complete confidentiality.

11. Anyone who is aware of an act or acts of violence can anonymously report the incident/s by completing the anonymous reporting form found of the University Police website at https://secure.wpunj.edu/police/police.cfm

## If you are a victim of sexual violence, in addition to above:

- William Paterson University is committed to supporting victims of domestic/dating violence, stalking and/or sexual violence by providing the necessary safety and support services. Student victims are entitled to reasonable accommodations and services regardless of their gender, race, ethnicity, religion, age, ability, sexual orientation, gender expression, sexual identity etc. William Paterson University provides a variety of services on campus and has partnerships with various community based organizations that provide services for victims. **A one-stop on-campus location for information and assistance is the Campus Victim Services Coordinator (973-720-2578). The Campus Victims Services Coordinator is housed within the WPU Women's Center.**The Women's Center provides a supportive and safe environment, offers information, explains options, and makes contact with other on and off campus services (973-720-2946).

Other available services include:

- **24-Hour Hotlines:** Passaic County Women's Center has a 24-hour hotline (973-881-1450) which provides information about medical assistance and a full range of crisis services to victims. NJ Statewide Domestic Violence Hotline (800-572-7233); New Jersey Coalition Against Sexual Assault Hotline (800-601-7200).

- **University Police:** The university police are available at all times at 973-720-2300 and will protect victims' safety and seek to apprehend offenders. They also provide transportation to victims who have been assaulted. Victims can request to speak with a Domestic Violence Response Team (DVRT) advocate at the university police department. The university police are located on campus and are in the first building on the left when using Entry One (on Pompton Road near the Catholic Ministry Building).

- **Domestic Violence Response Team (DVRT) Program:** This program is State mandated to assist law enforcement in handling cases of domestic violence so that each victim can receive the specialized information and support that they deserve. When a victim of domestic violence seeks the assistance of the University Police (or their local police departments), he/she is offered the services of a DVRT volunteer advocate. In a confidential setting, DVRT volunteer advocates will provide victims of domestic violence with immediate support at the moment of crisis and provide all available information regarding the law, safety options, and available resources. More information about DVRT's can be found at http://www.njcbw.org/dvTeam.html.

- **Sexual Assault Response Team (SART) and Sexual Assault Nurse Examiner (SANE) Programs:** The SART/SANE programs are NJ State mandated and utilize a victim-centered approach to sexual assault cases. The SART/SANE program is available to victims of sexual violence. When a sexual assault victim reports, a SART Team, consisting of a police officer, a victim advocate and a SANE nurse (who is a registered nurse with specialized training) respond to assist the victim. The victim is interviewed by the police officer, afforded counseling,

advice and social services by the victim advocate, and forensic evidence is obtained by the SANE nurse in an effective and sensitive manner. These teams are on-call 24-hours a day. More information about SART/SANE can be found at http://www.njcasa.org/content/sexual-assault-response-teams-sart

SART/SANE designated hospitals in Passaic County include:

1. St Joseph's Regional Medical Center, 703 Main Street, Paterson, NJ 07503. (973) 754-2000

2. Chilton Memorial Hospital, 97 West Parkway, Pompton Plains, NJ 07444. (973) 831-5000

3. St. Mary's Hospital, 350 Boulevard, Passaic, NJ 07055. (973) 365-4300

Note: All other hospitals are also equipped to treat sexual violence victims in their emergency rooms but access to the specialized SART team is only available at the hospitals listed above. An advocate from a local sexual violence crisis center is afforded to all victims of sexual violence at any hospital throughout the state regardless of their affiliation with SANE/SART program

- **Comprehensive Services:** The Passaic County Women's Center (PCWC), located at 1027 Madison Avenue in Paterson, New Jersey is the lead State designated domestic violence and sexual violence service provider in Passaic County. PCWC has a close relationship with WPU and offers hotline phone response, sheltering for victims of domestic violence and/or sexual violence, individual counseling, group counseling, court preparation, accompaniment to hospitals, court, law enforcement agencies, or social service providers. All services provided by the Passaic County Women's Center are free and confidential. Exceptions to that confidentiality are if a person discloses threats to harm self or others, or if there is child abuse involved. The Passaic County Women's Center provides services in English, Spanish and Arabic and can make provisions for more than 140 languages via use of the Language Line.
- **Medical/Psychological Support:** The WPU Counseling, Health & Wellness Center provides information and referral for students who need medical attention at 973-720-2360. A student may also contact a counselor by calling 973-720-2257. There is a counselor on call 24 hours a day in the event of an emergency. Counselors will maintain confidentiality, help explain possible options, and provide information and emotional support.
- **Restraining Order:** In domestic violence situations, a victim may wish to obtain a restraining order against the alleged perpetrator. In emergent situations and when the Superior Court is closed, a temporary restraining order (TRO) can be obtained through the William Paterson University Police Department (973-720-2300), or your local police department. During court hours, a restraining order can be obtained through Passaic County Family Court, 401 Grand St., Paterson (973-247-8488).
- **SAFE WALK:** William Paterson University provides an escort service to any person who does not want to walk alone at night. To request this service please call 973-720-7400. Victims in danger may seek Police Escort 973-720-2301.
- **Planned Parenthood** for Pompton Lakes (973-839-2363) and Paterson (973-345-3883) provide confidential counseling and testing for sexually transmitted diseases, human immunodeficiency virus, and/or pregnancy.
- **Peer Health Advocates:** William Paterson University's Peer Health Advocates (973-720-2924) provide peers with education on healthy lifestyle choices which promote lifelong health awareness and informed decision making skills.

- **Academic Schedule**: Request for change in an academic schedule due to conflicts with a member of the class can be requested from Office of Vice President for Student Development (973-720-2179).
- **On Campus Housing**: Request for alternative housing options can be requested from Office of Residence Life (973-720-2714).
- **Interim Suspension**: The imposition of an interim suspension on the offender can be requested by contacting the Office of Judicial Affairs (973-720-2218).
- **Passaic County Prosecutor's Office of Victim Witness Advocacy** provides information, advocacy, emotional support, and referrals to victims and witnesses coping with the trauma and burdens experienced in the aftermath of crime. The office (973-881-4887) strives to minimize the inconvenience to victims and witnesses during the course of criminal prosecution. These goals are achieved through the compassionate delivery of a wide range of direct <u>services</u>.
- Title IX Coordinator: Sexual harassment of students, which includes acts of sexual violence, is a form of sex discrimination prohibited by Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. §§ 1681 et seq., and its implementing regulations. Title IX mandates the University to designate a Title IX coordinator who oversees all Title IX complaints and meets with students as needed. The Title IX coordinator at William Paterson University is Michelle N. Johnson, Office of Employment Equity and Diversity. She can be reached by phone at 973-720-2389 or <u>johnsonm73@wpunj.edu</u>.

The State of New Jersey recognizes that the impact of violence on its victims and the surrounding community can be severe and long lasting. Thus, it has established the Campus Sexual Assault/Victim's Bill of Rights to insure that the needs of victims are met and that the colleges and universities in New Jersey create and maintain communities that support human dignity. **William Paterson University will provide to the victims of domestic/dating violence, stalking and sexual violence the rights afforded under this Bill of Rights.**

## *Campus Sexual Assault/Victim's Bill of Rights (NJSA 18A:61E-2)*

### *The following rights shall be accorded to victims of sexual assault that occur:*

- on the campus of any public or independent institution of higher education in the State of New Jersey, and
- where the victim or alleged perpetrator is a student at that institution, and/or
- when the victim is a student involved in an off-campus sexual assault.
- To be free from any suggestion that victims must report the crimes to be assured of any other right guaranteed under this policy
- To have any allegations of sexual assault treated seriously; the right to be treated with dignity
- To be free from any suggestion that victims are responsible for the commission of crimes against them
- To be free from any pressure from campus personnel to:
  - report crimes if the victim does not wish to do so
  - report crimes as lesser offenses than the victim perceives the crime to be
  - refrain from reporting crimes
  - refrain from reporting crimes to avoid unwanted personal publicity.
- To be notified of existing campus and community-based medical, counseling, mental health, and student services for victims of sexual assault whether or not the crime is formally reported to campus or civil authorities
- To have access to campus counseling under the same terms and conditions as apply to other students in their institution seeking such counseling
- To be informed of and assisted in exercising:

- any rights to confidential or anonymous testing for sexually transmitted diseases, human immunodeficiency virus, and/or pregnancy.
- any rights that may be provided by law to compel and disclose the results of testing of sexual assault suspects for communicable diseases.
- To be afforded the same access to legal assistance as the accused
- To be afforded the same opportunity to have others present during any campus disciplinary proceeding that is allowed the accused
- To be concurrently notified of the outcome of the sexual assault disciplinary proceeding against the accused
- To be afforded the right to appeal both the outcome/finding and any sanctions that are applied to the responsible party/accused
- To have any allegation of sexual assault investigated and adjudicated by the appropriate criminal and civil authorities of the jurisdiction in which the sexual assault is reported
- To receive full and prompt cooperation and assistance of campus personnel in notifying the proper authorities
- To receive full, prompt, and victim-sensitive cooperation of campus personnel with regard to obtaining, securing, and maintaining evidence, including a medical examination when it is necessary to preserve evidence of the assault.
- To require campus personnel to take reasonable and necessary actions to prevent further unwanted contact of victims by their alleged assailants
- To be notified of the options for, and provided assistance in, changing academic, transportation, working and living situations if such changes are requested and reasonably available.
- Each campus must guarantee that this Bill of Rights is implemented. It is the obligation of the individual campus governing board to examine resources dedicated to services required and to make appropriate requests to increase or reallocate resources where necessary to ensure implementation
- Each campus shall make every reasonable effort to ensure that every student at that institution receives a copy of this document
- Nothing in this act or in any "Campus Assault Victim's Bill of Rights" developed in accordance with the provisions of this act, shall be construed to preclude or in any way restrict any public or independent institution of higher education in the State from reporting any suspected crime or offense to the appropriate law enforcement authorities.
- Not having past and irrelevant conduct discussed during any resulting proceedings
- Submitting a written account of the incident
- Having one's identity protected in compliance with Title IX & FERPA

### Human Dignity Rights

### Rights to Resources On and Off Campus

### Campus Judicial Rights

### Legal Rights

### Campus Intervention Rights

### Statutory Mandates

### In addition to the aforementioned rights, a person who reports domestic/dating violence, stalking and/or sexual violence has the right to the following at William Paterson University:

Having an opportunity to present an impact statement
- during the judicial board hearing process

- Requesting immediate on-campus housing relocation, transfer of classes, change in transportation or working situations or other steps to prevent unnecessary or unwanted contact or proximity to an alleged assailant. When possible, requests will be accommodated.

Students accused of domestic/dating violence, stalking and/or sexual violence:

- Will be treated with fairness and respect. The University will ensure that its investigations and disciplinary proceedings comply with due process requirements.
- May discuss their situations privately with counselors at the WPU Counseling Center (973-720-2257) or with the staff at the Office of Vice President for Student Development (973-720-2179). (Please refer to Section 5. Privacy & Confidentiality)
- May seek academic or housing accommodations, when such accommodations are related to problems related to the accusation.
- May consider seeking the assistance of an advisor or an attorney to assist in preparation of the case and/or accompany him/her to any related meetings or institutional proceedings.

Disciplinary sanctions for violations of this domestic/dating violence, stalking and/or sexual violence policy and/or of the student code of conduct will be imposed in accordance with applicable William Paterson University policies, including but not limited to, expulsion or termination of employment. The University's determination shall be based on the preponderance of evidence in the case.


William Paterson University typically conducts a full investigation within sixty days of receiving a complaint.  Additional time may be necessary depending of the complexity of the investigation and the severity and extent of domestic/dating violence, stalking and/or sexual violence.  Both parties will be simultaneously provided with written notification of the outcome of the investigation/proceeding and, if applicable, either party may file an appeal within three days. Both parties will be given periodic status updates on the investigation.

The appropriate University disciplinary process is determined by the status of the person accused of engaging in domestic/dating violence, stalking and/or sexual violence.

If the accused is a student, the complaint is addressed with the procedures for student discipline as set forth in the University's Student Code of Conduct. If the accused is a staff employee or a faculty member, the complaint is addressed in accordance with the Civil Service Act, N.J.S.A. 11A:1-1 et seq., and the regulations promulgated thereunder, N.J.A.C. 4A:2-1.1 et seq.,  N.J.S.A. 18A:6-18 and/or the relevant collective bargaining agreement.

---

[1] Intimate partners: In both opposite-sex and same-sex relationships where persons are married, living together, or dating.
[2] Roommate: Persons who share common living areas (i.e. living room, kitchen) and/or persons who share a dorm room.
[3] **Consent** in this policy means a clear YES to the specific act in question. Consent is informed, knowing and voluntary. Consent is active, not passive. Silence, in and of

itself, cannot be interpreted as consent. Consent can be given by words or actions, as long as those words or actions create mutually understandable permission regarding the conditions of sexual activity. Consent to one form of sexual activity cannot imply consent to other forms of sexual activity. Previous relationships or consent cannot imply consent to future sexual acts. Consent must be present throughout the sexual activity -- at any time, a participant can communicate that he or she no longer consents to continuing the activity. If there is confusion as to whether anyone has consented or continues to consent to sexual activity, it is essential that the participants stop the activity until the confusion can be clearly resolved. Consent cannot be procured by use of physical force, compelling threats, intimidating behavior, or coercion. Coercion is unreasonable pressure for sexual activity. Coercive behavior differs from seductive behavior based on the type of pressure someone uses to get consent from another. When someone makes clear to you that they do not want sex, that they want to stop, or that they do not want to go past a certain point of sexual interaction, continued pressure beyond that point can be coercive. In order to give effective consent, one must be of legal age. If you have sexual activity with someone you know to be- or should know to be-mentally or physically incapacitated by alcohol or other drug use, unconsciousness or blackout, you are in violation of this policy. Incapacitation is a state where one cannot make a rational, reasonable decision because they lack the ability to understand the who, what, when, where, why or how of their sexual interaction. This policy also covers someone whose incapacity results from mental disability, sleep, involuntary physical restraint, or from the taking of a so-called "date-rape" drug. Possession, use and/or distribution of any of these substances, including Rohypnol, Ketomine, GHB, Burundanga, etc. is prohibited, and administering one of these drugs to another student for the purpose of inducing incapacity is a violation of this policy

**Consensual Relations**

The University's educational mission is promoted by professionalism in employee/student relationships. Consensual amorous relationships between supervisors and their subordinates, or faculty and students undermine the ethical integrity of the University community. Such relationships are problematic for the people involved and may have a negative impact on others in the work environment.

Other students and employees may be affected by such unprofessional behavior because it may place or may be perceived to place the staff/faculty member in a position to favor or advance one person's interest at the expense of others, and implicitly makes obtaining benefits contingent on amorous or sexual favors.

Therefore:

- No faculty member shall have an amorous relationship (consensual or otherwise) with a student who is enrolled in his or her course and/or whose academic work is being evaluated by the faculty member. No staff member shall have an amorous relationship with a student

whom the staff member has the power to penalize or reward.

- A staff/faculty member who fails to withdraw from participation in activities or decisions that may reward or penalize a student with whom the staff/faculty member has or has had an amorous relationship is deemed to have violated his or her ethical obligation to the student, other students, colleagues, and the University.

- Supervisory staff/faculty who engage in consensual relationships with individuals they supervise or their students should be aware that they are violating University policy and are subject to formal disciplinary action, up to and including removal.

# Exhibit C



OFFICE OF THE DEAN OF STUDENT DEVELOPMENT - JUDICIAL AFFAIRS
300 POMPTON ROAD, WAYNE, NEW JERSEY 07470-2103
973.720.2218 FAX 973.720.2341 • WWW.WPUNJ.EDU

11/29/14

## NOTICE OF INTERIM SUSPENSION

Garrett Collick
Overlook North F-53

Dear Garrett:

A report has been filed alleging that you were involved in a serious incident on the campus of William Paterson University. Until further notice, pursuant to N.J.S.A. 2C:18-3 (b) you are not licensed or privileged to enter any of the grounds or facilities of William Paterson University of New Jersey. You are temporarily suspended as you have been deemed a clear and present danger to yourself or other members of the University community.

Please be advised that you are facing disciplinary action for this matter and your interim suspension will remain in effect until your case has been adjudicated through the University Disciplinary process.

You will need to contact my office at 973-720-2218 as soon as possible to arrange to meet to discuss the university's adjudication process thoroughly.

Sincerely,

*jtumlin*

Jennifer Tumlin
Director, Student Conduct & Dispute Resolution

CC:   Joe Cafarelli, Director of Residence Life
      Francisco Diaz, Associate Vice President for Campus Life
      Rebecca Fegeley-Baird, Residence Life
      Robert Fulleman, Director of Public Safety & Campus Police


Garrett Collick      Garrett Collick
Sat. E. Lf   11/29/14

# Exhibit D

## Campus Incident

November 30, 2014

**To the William Paterson University Community**

On November 25, 2014, a sexual assault of a female student allegedly took place in a residential hall on our campus. Five male students who were living in the residence halls have been arrested and charged. As soon as the victim reported this incident, she was attended to by university counselors and police officers. All of the alleged perpetrators of this heinous crime have been barred from campus. Prosecution is being handled by the Passaic County Prosecutor's office and the university is fully cooperating in the prosecution.

I am angry and dismayed that this crime was committed on our campus and allegedly by students.

My deepest concern is for the victim of this criminal act who has courageously stepped forward to take legal action and seek justice. No expression of anger or sadness on my part can alleviate the harm done to the victim and my heart goes out to her and her family. I offer the full support of the University community.

William Paterson University – its students, faculty, staff, and board of trustees – is horrified by this alleged sexual assault. Our University is a place of learning and personal growth where individuals are respected. It is our responsibility to provide a safe environment for all its members and to be a campus where students can grow and thrive.

We are committed to ensuring that William Paterson University will always be a place where students feel safe and sound. This commitment extends from our classrooms to our residence halls and to everywhere on our campus.

Kathleen Waldron
President
William Paterson University

israel.ortiz 11:54:23 Thursday, December 24, 2015

```
CVM0045              AUTOMATED CASE MANAGEMENT SYSTEM           12/24/15
                        RECEIPTS ENTRY/ADJUSTMENTS             11:50

     VENUE     : PASSAIC        COURT : LAW CVL        DOCKET # : L   004351  15
     CASE TITLE : COLLICK ET ALS VS WILLIAM PATERSON UNIVERSITY ETAL

 TRANSACTION DATE : 12  24  2015    TRANS ID: Z000002   UNDIST AMT:        .00
                    LAST                  FIRST      MI
 PAYOR NAME      : CHIESA SHAHINIAN      GIANTOMAS

 AMT RECVD :       5.95   TRANS TYPE: CPF    PAYMENT TYPE: CG   BATCH NUM: 009
 CK/CHARGE/RECPT #:    111425              CHARGE REF #:

                  ACCOUNT CODE         SUBACCT     DISTRIBUTED   SUBLEDGER
                                        CODE        AMOUNT        CODE
                     41002             1   16          5.95



  COMMENTS : COPY FEE FOR L-4351-15
  CV900975 RECEIPTS ENTERED
  PF1 - SCP ADD PENDING DISBURSEMENT   PF11-CHECK BALANCE
```