# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| GARRETT COLLICK and NOAH WILLIAMS, | Civil Action No. 2:16-cv-471-KM-JBC |
| Plaintiffs, | |
| vs. | |
| WILLIAM PATERSON UNIVERSITY, KATHLEEN M. WALDRON, ROBERT FULLEMAN, ELLEN DESIMONE, WILLIAM PATERSON UNIVERSITY POLICE DEPARTMENT, JOHN DOES 1-20 (names fictitious as presently unknown), employees, representatives, and/or agents of defendant WILLIAM PATERSON UNIVERSITY POLICE DEPARTMENT, JANE DOES 1-20 (names fictitious as presently unknown), employees, representatives, and/or agents of defendant WILLIAM PATERSON UNIVERSITY POLICE DEPARTMENT, JOHN SMITH 1-5 (names fictitious as presently unknown), employees, representatives, agents, and/or spokespersons of defendant WILLIAM PATERSON UNIVERSITY, and JANE SMITH 1-5 (names fictitious as presently unknown), employees, representatives, agents, and/or spokespersons of defendant WILLIAM PATERSON UNIVERSITY, | |
| Defendant. | |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Jeffrey S. Chiesa
Matthew E. Beck
CHIESA SHAHINIAN & GIANTOMASI PC
One Boland Drive
West Orange, NJ  07052
mbeck@csglaw.com
973.325.1500
*Attorneys for Defendants*

On the brief:
  Mauro G. Tucci Jr.
  James R. Hearon
  Carla M. Zavala

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS................................................................................................ i

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ......................................................................................... 3

PROCEDURAL HISTORY........................................................................................ 8

LEGAL STANDARD................................................................................................. 8

LEGAL ARGUMENT ............................................................................................... 10

I.      SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFFS'
        SECTION 1983 AND NJCRA CLAIMS ...................................................... 10

        A.      Probable Cause Existed At The Time Of The Arrests Based On
                M.M.'s Positive Identification Of Her Attackers................................... 11

        B.      Defendants Are Entitled To Qualified Immunity Because The
                Arrests Of Plaintiffs Were Reasonable ............................................... 22

II.     PLAINTIFFS' CLAIMS AGAINST THE UNIVERSITY AND ITS
        OFFICIALS FAIL AS A MATTER OF LAW............................................... 26

        A.      The University Is An Arm Of The State That Has Sovereign
                Immunity................................................................................................ 26

        B.      The University Is Not A "Person" For The Purposes Of Section 1983
                Or NJCRA............................................................................................... 28

        C.      Plaintiffs' Governmental Responsibility Claims Fail Because
                Probable Cause Negates Their Underlying Constitutional Claims...................... 29

III.    SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFFS'
        REMAINING STATE LAW CLAIMS .......................................................... 30

        A.      Probable Cause Is An Absolute Defense To All Of Plaintiffs' State
                Law Claims ............................................................................................ 30

        B.      Defendants Are Entitled To The Good Faith Immunity Under The
                New Jersey Tort Claims Act ................................................................. 33

        C.      Plaintiffs' Claim For Malicious Prosecution Claim Is Barred Under
                The Tort Claims Act .............................................................................. 34

D.     Plaintiffs' Negligence Claim Is Barred By The Charitable Immunity Act .................................................................................................... 35

E.     Plaintiffs' Claim For Intentional Infliction Of Emotional Distress Also Fails Against WPU ........................................................................... 36

CONCLUSION ................................................................................................................ 37

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alston v. City of Camden*,
  168 N.J. 170 186 (2001) ...................................................................................................33, 34

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)...........................................................................................................9, 10

*Anderson v. Perez*,
  677 Fed. App'x 49 (3d Cir. 2017).................................................................................12, 17, 18

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) ...................................................................................................22, 23, 24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................................22

*Beck v. Ohio*,
  379 U.S. 89 (1964).....................................................................................................................13

*Berg v. Cty. of Allegheny*,
  219 F.3d 261 (3d Cir. 2000).....................................................................................................12

*Bland v. City of Newark*,
  900 F.3d 77 (3d Cir. 2018).......................................................................................................26

*Bresko v. John*,
  87 Fed. App'x 800 (3d Cir. 2004).....................................................................12, 14, 17, 21

*Brinegar v. U.S.*,
  338 U.S. 160 (1949)...................................................................................................................13

*Brockington v. Spano*,
  2013 WL 1811903 (D.N.J. Apr. 29, 2013) ...........................................................................15

*Brosseau v. Haugen*,
  543 U.S. 194 (2004)...................................................................................................................23

*Brown v. State*,
  230 N.J. 84 (2017) .....................................................................................................................22

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).....................................................................................................................9

*City & Cnty. of San Francisco v. Sheehan,*
    135 S. Ct. 1765 (2015)........................................................................26

*Collick v. William Paterson Univ.,*
    699 Fed. App'x 129 (3d Cir. 2017)........................................................8

*Cooper v. City of Philadelphia,*
    636 Fed. App'x 588 (3d Cir. 2016)..................................10, 13, 17, 20

*Didiano v. Balicki,*
    488 Fed. App'x 634 (3d Cir. 2012) ......................................................28

*District of Columbia v. Wesby,*
    138 S. Ct. 577 (2018)................................................................ *passim*

*Doe v. Abington Friends Sch.,*
    480 F.3d 252 (3d Cir. 2007)...................................................................9

*Fielder v. Stonack,*
    141 N.J. 101 (1995) ............................................................................33

*Fitchik v. N.J. Transit Rail Operations, Inc.,*
    873 F.2d 655 (3d Cir. 1989) ...........................................................26, 27

*Gerald M. v. Connelly,*
    858 F.2d 378 (7th Cir. 1988) ..............................................................20

*Graber v. Richard Stockton College of New Jersey,*
    313 N.J. Super. 476 (App. Div. 1998) ................................................36

*Grimm v. Churchill,*
    932 F.2d 674 (7th Cir. 1991) .......................................................13, 20

*Hamel v. State,*
    321 N.J. Super. 67 App. Div. 1999)...................................................36

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982)...............................................................23, 33, 34

*Herman v. City of Millville,*
    66 F. App'x 363 (3d Cir. 2003) ....................................................31, 32

*Hoag v. Brown,*
    397 N.J. Super. 34 (App. Div. 2007) ..................................................37

*Hope v. Pelzer,*
    536 U.S. 730 (2002)............................................................................23

*Ingram v. County of Bucks*,
    144 F.3d 265 (3d Cir. 1998)............................................................................9

*James v. N.J. State Police (In re Gibbons)*,
    957 F.3d 165 (3d Cir. 2020)..........................................................................24

*Janowski v. City of North Wildwood*,
    259 F. Supp. 3d 113 (D.N.J. 2017) ...............................................................29

*Jones v. Pi Kappa Alpha International Fraternity, Inc.*,
    765 Fed. App'x 802 (3d Cir. 2019)..........................................................27, 28

*Kisela v. Hughes*,
    138 S. Ct. 1148 (2018).................................................................................24

*Lallemand v. Univ. of R.I.*,
    9 F.3d 214 (1st Cir. 1993).............................................................15, 16, 17

*Leang v. Jersey City Bd. Of Educ.*,
    198 N.J. 557 (2009) .....................................................................................30

*Lind v. Schmid*,
    67 N.J. 255 (1975) ......................................................................................31

*LoBiondo v. Schwartz*,
    199 N.J. 62 (2009) ......................................................................................31

*Maliandi v. Montclair State University*,
    845 F.3d 77 (3d Cir. 2016)......................................................................27, 28

*Malley v. Briggs*,
    475 U.S. 335 (1986).....................................................................................25

*Mammaro v. N.J. Div. of Child Prot. & Permanency*,
    814 F.3d 164 (3d Cir.), *cert. denied*, 137 S. Ct. 161 (2016) .............................23, 24

*Martinez v. South Woods State Prison*,
    2019 WL 6130972 (App. Div. Nov. 19, 2019)........................................................28

*Maryland v. Pringle*,
    540 U.S. 366 (2003) .....................................................................................12

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).....................................................................................10

*Mesgleski v. Oraboni*,
    330 N.J. Super. 10 (App. Div. 2000) ...............................................................30

*Merkle v. Upper Dublin Sch. Dist.*,
   211 F.3d 782 (3d Cir. 2000)............................................................12, 21

*Messerschmidt v. Millender*,
   565 U.S. 535 (2012)........................................................................25

*Monell v. Department of Social Services of the City of New York*,
   436 U.S. 658 (1978)........................................................................29

*Mulholland v. Gov't Cty. of Berks, Pa.*,
   706 F.3d 227 (3d Cir. 2013)...............................................................29

*Mullenix v. Luna*,
   577 U.S. 7 (2015)....................................................................23, 24

*O'Connell v. State*,
   171 N.J. 484 (2002) .......................................................................36

*Obilo v. City Univ. of City of New York*,
   2003 WL 1809471 (E.D.N.Y. Apr. 7, 2003) ..............................15, 16, 17

*Olson v. Ako*,
   724 F. App'x 160 (3d Cir. 2018) ...........................................................24

*Orsatti v. N.J. State Police*,
   71 F.3d 480 (3d Cir. 1995)...........................................................*passim*

*Paff v. Kaltenbach*,
   204 F.3d 425 (3d Cir. 2000)................................................................13

*Panarello v. City of Vineland*,
   160 F. Supp. 3d 734 (D.N.J. 2016) ................................................29, 30

*Parks v. Pep Boys*,
   275 N.J. Super. 1 (App. Div. 1995) ......................................................32

*Pearson v. Callahan*,
   555 U.S. 223 (2009)........................................................................23

*Petaccio v. Davis*,
   76 Fed. App'x 442 (3d Cir. 2003)..................................................14, 17

*Peters v. Del. River Port Auth. of Pa. & N.J.*,
   16 F.3d 1346 (3d Cir. 1994)...............................................................9

*Plumhoff v. Rickard*,
   572 U.S. 765 (2014)................................................................22, 26

*Reichle v. Howards,*
   566 U.S. 658 (2012) ..................................................................23

*Ricketti v. Barry,*
   2015 WL 2376013 (D.N.J. May 18, 2015) .................................................32, 33

*Sharrar v. Felsing,*
   128 F.3d 810 (3d Cir. 1997)..................................................................12

*Sherwood v. Mulvihill,*
   113 F.3d 396 (3d Cir. 1997) ..................................................................12

*Shields v. Zuccarini,*
   254 F.3d 476 (3d Cir. 2001)....................................................................9

*Steinberg v. Sahara Sam's Oasis, LLC,*
   226 N.J. 344 (2016) ..................................................................32

*Stetser v. Jinks,*
   572 Fed. App'x. 85 (3d Cir. 2014)..................................................................21

*Tangwall v. Stuckey,*
   135 F.3d 510 (7th Cir. 1998) ..................................................................19, 20

*Tarus v. Borough of Pine Hill,*
   189 N.J. 497 (2007) ..................................................................30

*Thomas v. Cumberland County,*
   749 F.3d 217 (3d Cir. 2014)..................................................................29

*Torchinsky v. Siwinski,*
   942 F.2d 257 (4th Cir. 1991) ..................................................................13

*U.S. v. Cortez,*
   449 U.S. 411 (1981) ..................................................................12

*U.S. v. Emanuele,*
   51 F.3d 1123 (3d Cir. 1995)..................................................................14

*U.S. v. Harris,*
   482 F.2d 1115 (3d Cir. 1973)..................................................................13

*U.S. v. Laville,*
   480 F.3d 187 (3d Cir. 2007)..................................................................12

*Van Engelen v. O'Leary,*
   323 N.J. Super. 141 (App. Div. 1999) ..................................................................35

*Vega v. Ripley,*
    571 Fed. App'x 96 (3d Cir. 2014) ............................................................... 13, 20

*White v. Pauly,*
    137 S. Ct. 548 (2017) ..................................................................................... 26

*Wildoner v. Borough of Ramsey,*
    162 N.J. 375 (2000) ................................................................................... 31, 33

*Will v. Mich. Dep't of State Police,*
    491 U.S. 58 (1989) ......................................................................................... 28

*Wilson v. Russo,*
    212 F.3d 781 (3d Cir. 2000) ................................................................. *passim*

*Wright v. City of Philadelphia,*
    409 F.3d 595 (3d Cir. 2005) ........................................................................ 12

*Wychunas v. O'Toole,*
    252 F. Supp. 2d 135 (M.D. Pa. 2003) ........................................................ 13

**Statutes**

U.S. Const., Amend. IV ......................................................................... *passim*

U.S. Const., Amend. XI ................................................................................ 26

42 U.S.C. § 1983 ..................................................................................... *passim*

N.J.S.A. 2A:53A-7 ........................................................................................ 35

N.J.S.A. 10:6-2 ......................................................................................... *passim*

N.J.S.A. 18A:64-1 ........................................................................................ 36

N.J.S.A. 18A:64-45 ...................................................................................... 28

N.J.S.A. 59:1-1 ............................................................................................. 33

N.J.S.A. 59:2-10 ........................................................................................... 36

N.J.S.A. 59:3-3 ....................................................................................... 33, 34

N.J.S.A. 59:3-8 ....................................................................................... 34, 35

N.J.S.A. 59:3-14 ........................................................................................... 35

## PRELIMINARY STATEMENT

Under federal and New Jersey law, it is uncontroverted that a victim's positive identification of her attacker is, by itself, sufficient probable cause to arrest the accused. In November 2014, a female student ("M.M.") at defendant William Paterson University (the "University" or "WPU") reported to defendant William Paterson University Police Department (the "University Police") that she had been the victim of a five-on-one sexual assault by other students in a University dormitory the night before. M.M. positively identified plaintiffs Garrett Collick ("Collick") and Noah Williams ("Williams") (collectively, "Plaintiffs") by name as two of her attackers. The lead investigator for the University Police, defendant Ellen DeSimone ("Det. Sgt. DeSimone") spoke with M.M. for hours, took her statement, accompanied her for a sexual assault forensic examination that revealed injuries to M.M.'s throat, and the next day obtained security data and video that confirmed the accused students were present in the relevant dormitory at the time of the incident. Based on this information, which was all that was known to them at the time, the University Police obtained warrants and arrested the five accused students, including the Plaintiffs. After the grand jury later declined to indict the accused students, Plaintiffs asserted claims against the University, the University Police, Det. Sgt. DeSimone, President Kathleen Waldron, and Public Safety Director Robert Fulleman ("Director Fulleman") (collectively, "Defendants").

Defendants now move for summary judgment to dismiss Plaintiffs' Complaint. Plaintiffs' remaining claims all arise from their allegedly unlawful arrests and include violation of 42 U.S.C. § 1983 ("Section 1983") and the New Jersey Civil Rights Act, N.J.S.A. 10:6-2 (the "NJCRA"), governmental responsibility, and New Jersey common law claims for false arrest and imprisonment, malicious prosecution, negligence, gross negligence, negligent training and

supervision, intentional infliction of emotional distress, and respondeat superior.  After extensive discovery, there is no dispute between the parties as to the material facts of the investigation. Rather, Plaintiffs simply argue that the University Police should have investigated more before arresting them.  However, because the University Police had probable cause at the time of arrest, the arrests were not unlawful, were not the result of negligence, were not intended to cause emotional distress, and do not expose the University or its officials to liability for the actions of the University Police.

Regardless of any information that was developed post-arrest, at the time Plaintiffs were arrested, the University Police knew that M.M. had positively identified Plaintiffs by name as two of her five attackers, that M.M. had suffered injuries consistent with her account of the sexual assault, and that security card data and video placed Plaintiffs at the dormitory at the time of the alleged attack.  Furthermore, Det. Sgt. DeSimone spent hours with M.M. while taking her statement and had no reason to doubt her credibility.  At the time of the arrests, it is undisputed that the University Police were not aware of any exculpatory evidence.  As such, and applying blackletter federal and New Jersey law, M.M.'s positive identification of Plaintiffs satisfied the constitutional standard for probable cause to arrest them.  M.M.'s injuries and the security data were corroborative but not required.  All of Plaintiffs' claims fail as a matter of law based on the existence of probable cause.

Additionally, Plaintiffs' claims are all barred by qualified immunity because, based on applicable case law, it was objectively reasonable for the University Police to conclude that they had probable cause to arrest the five suspects, including Plaintiffs, relying on M.M.'s positive identifications.  Plaintiffs cannot identify clearly established legal authority that would lead every reasonable police officer to conclude that, based on the information available to the University

Police, probable cause was lacking here and that further investigation was mandatory. More specifically, Plaintiffs cannot present clearly established law holding that police officers may not establish probable cause based solely on a sexual assault victim's identification. Thus, the University Police enjoy qualified immunity because they reasonably believed that they had probable cause to arrest Plaintiffs.

The existence of probable cause is fatal to every single one of Plaintiffs' claims. The applicability of qualified immunity also bars Plaintiffs' civil rights claims. Moreover, certain of Plaintiffs' state law claims are also barred by applicable statutory immunities. As set forth more fully below, there are no disputes of any material facts, and so Defendants are entitled to summary judgment dismissing Plaintiffs' Complaint in its entirety and with prejudice.

## STATEMENT OF FACTS

On the afternoon of Tuesday, November 25, 2014 – two days before Thanksgiving – the University Police responded to a call from the University's Counseling, Health and Wellness Center about a female student, M.M., who claimed she had been the victim of a five-on-one sexual assault in the Overlook South dormitory on the WPU campus the night before. (Declaration of Ellen DeSimone ("DeSimone Decl."), Exh. A at 1-2; Declaration of Counsel ("Counsel Decl."), Exh. A at 95:4-7). The responding officer, Det. Sgt. DeSimone, had extensive training in sexual assault investigations and had investigated dozens of sexual assaults for the University Police. (DeSimone Decl., Exh. B; Counsel Decl., Exh. A at 27:25 – 36:5).

In their initial conversation, M.M. told Det. Sgt. DeSimone that she had been sexually assaulted by five male students after midnight earlier that same day. (DeSimone Decl., Exh. A at 2). When identifying her attackers, she specifically named Plaintiffs Collick and Williams, both of whom she knew well. (*Id.*). M.M. promptly agreed to a sexual assault forensic examination at

St. Joseph's Hospital, and Det. Sgt. DeSimone drove her to retrieve her clothes worn during the attack before taking her to the hospital. (*Id.*; Counsel Decl., Exh. A at 103:17 – 104:22).

At the hospital, Det. Sgt. DeSimone had ample opportunity to take M.M.'s report of the five-on-one sex assault. This included both Det. Sgt. DeSimone's direct interview of M.M., as well as being present during a forensic interview of M.M. by the sexual assault nurse examiner, Joanne Hatt ("Nurse Hatt").[1] (DeSimone Decl., Exh. A at 3-7; Counsel Decl., Exh. A at 125:21 – 158:25; Exh. B at 46:23 – 47:2). M.M. recounted the incident several times, and she consistently reported that she had been searching for Collick the night before, found him in a dormitory room at Overlook South with his friends, that she was not permitted to leave the room, that she was forced to submit to oral and vaginal sex with five men that night, and that Collick and Williams were two of her attackers. (*Id.*). She also reported that she knew both Plaintiffs well because she had previously had sex with each of them. (Counsel Decl., Exh. A at 121:11-14, 122:10 – 123:22).

More specifically, M.M. stated that she and Collick had plans to see each other on the evening of Monday, November 24, 2014, but Collick did not show up and she went to look for him. (DeSimone Decl., Exh. A at 3, 4; Counsel Decl., Exh. A at 148:15-21). Late that night, M.M. found Collick watching television with fellow students Williams, Termaine Scott ("Scott"), and Darius Singleton ("Singleton") in Scott's dorm room in Overlook South residence hall. (DeSimone Decl., Exh. A at 3, 4). Also present was Williams' cousin "Walt," who was not a WPU student. (*Id.*). M.M. tried to convince Collick to come back to her room to have sex, but he

---

[1] Prior to the forensic medical examination of a rape victim, a sex assault nurse examiner (in this case Nurse Hatt) typically conducts a detailed forensic interview to gain information necessary to perform the physical exam. M.M. consented to have Det. Sgt. DeSimone remain in the room during Nurse Hatt's interview. (DeSimone Decl., Exh. A at 4; Counsel Decl., Exh. A at 128:22 – 129:20; Exh. B at 46:12 – 47:2).

refused.  (*Id.* at 3, 4; Counsel Decl., Exh. A at 129:24 – 132:12).  Collick reportedly told M.M., "If you want to have sex with me, you have to have sex with all of us."  (DeSimone Decl., Exh. A at 4; Counsel Decl., Exh. A at 150:5-8).  M.M. was not comfortable with that and tried to leave.  (DeSimone Decl., Exh. A at 3, 5; Counsel Decl., Exh. A at 142:23 – 143:11).

As M.M. was walking towards the door, the lights went off and someone was standing in front of the door.  (DeSimone Decl., Exh. A at 3, 5; Counsel Decl., Exh. A at 143:21 – 144:4).  She said the men in the room began taunting her and saying they wanted to have sex, but she made excuses to leave.  (DeSimone Decl., Exh. A at 3, 5; Counsel Decl., Exh. A at 144:16–24).  After some period of time, Collick grabbed her by the back of the head and forced his penis into her mouth.  (DeSimone Decl., Exh. A at 3, 5; Counsel Decl., Exh. A at 145:2-5, 146:8-18).  While Collick was forcing her to perform oral sex on him, another male student whose name M.M. did not know – later identified as Jahmel Latimer ("Latimer") – entered the room.  (DeSimone Decl., Exh. A at 3, 5, 8).  Latimer then grabbed M.M.'s hair and forced her to give him oral sex while Collick groped her and other males in the room said to "pass the rock" (a basketball term meaning to pass the ball around).  (*Id.* at 5).  When M.M. was able to get up unexpectedly, Collick again grabbed her head, forced her down, and put his penis in her mouth.  (*Id.*).  Latimer then pulled down M.M.'s pants and began having vaginal sex with her.  (*Id.*).  She was next forced to perform oral sex on Singleton, who also digitally penetrated her vagina and remarked that "she is so dry[.]" (*Id.* at 6).  Williams then took Singleton's place, forcing his penis into M.M.'s mouth, while Collick attempted to have vaginal sex with her but could not maintain an erection.  (*Id.*).

At her first opportunity, M.M. made excuses to leave and was able to exit the dorm room, but she was followed back to her room by Williams, Scott, and Walt.  (*Id.*).  Once back at her room, the males demanded that Williams be allowed to "finish" and that Walt have a turn.  (*Id.*).

When they refused to leave, M.M. relented and laid on the bed so that Williams and then Walt could have vaginal sex with her, after which each promptly left her room. (*Id.*). Scott then asked if he would get a turn, but M.M. told him she had been "forced to do something I didn't want to do," and made him leave. (*Id.* at 6-7).

While Nurse Hatt conducted her physical examination, Det. Sgt. DeSimone obtained photographs of both Collick and Williams. (*Id.* at 4). She subsequently showed the photographs to M.M. without providing names, and M.M. confirmed they were Collick and Williams who had participated in the five-on-one gang rape. (*Id.*).

After the physical examination, Nurse Hatt informed Det. Sgt. DeSimone that M.M.'s mouth and throat was red and appeared to have "abnormalities." (*Id.* at 7; Counsel Decl., Exh. B at 73:5-17, 85:6-12, 86:7-22). Nurse Hatt identified these injuries as "petechiae," which are small ruptured blood vessels that could be caused by rough oral sex. (Counsel Decl., Exh. B at 73:5-12, 85:6-12). While waiting for M.M.'s hospital release forms, M.M. told Det. Sgt. DeSimone that she had not used illegal drugs or alcohol the night before but did take prescription medication. (DeSimone Decl., Exh. A at 7; Counsel Decl., Exh. A at 169:17-18). Det. Sgt. DeSimone returned M.M. to campus after midnight. (DeSimone Decl., Exh. A at 7; Counsel Decl., Exh. A at 173:4-7).

The next day, Wednesday, November 26, 2014, Det. Sgt. DeSimone reviewed security data for the Overlook South dormitory. (DeSimone Decl., Exh. A at 8-10). Specifically, she reviewed WPU identification swipe card access to the dormitory and video surveillance of the entrance. (*Id.*). Both the time stamps of the swipe cards and the video confirmed that M.M. and all the suspects, including Plaintiffs, were at the dormitory in the hours before and after the five-on-one sexual assault. (*Id.*). By that afternoon, Det. Sgt. DeSimone had determined that there was

probable cause to arrest Plaintiffs and the other suspects for the sexual assault against M.M. (Counsel Decl., Exh. A at 194:5-9).

On Friday, November 28, 2014 – the day after Thanksgiving – Det. Sgt. DeSimone conferred with Gina Pfund, the Senior Assistant Prosecutor for Passaic County in charge of the Domestic Violence Unit, about potential charges against the suspects.  (DeSimone Decl., Exh. A at 10; Counsel Decl., Exh. A at 176:7-15, 177:17 – 178:5).  Det. Sgt. DeSimone subsequently contacted the Wayne Municipal Court Clerk seeking arrest warrants for Collick, Williams, and the other three students, all of which were approved based on probable cause.  (DeSimone Decl., Exh. A at 10; Exhs. C-D; Counsel Decl., Exh. A at 77:20 – 79:20, 178:6-9; Exh. C at 52:15-17, 54:24-25).  Collick was charged with aggravated sexual assault in the first degree, one count of conspiracy to commit sexual assault in the second degree, one count of involuntary servitude in the third degree, and one count of aggravated sexual contact in the third degree.  (DeSimone Decl., Exh. A at 10; Exh. C). Williams was charged with aggravated sexual assault in the first degree, kidnapping in the first degree, conspiracy to commit sexual assault in the second degree, and involuntary servitude in the third degree. (DeSimone Decl., Exh. A at 10; Exh. D).

Plaintiffs and the other suspects were arrested at various locations the following day, Saturday, November 29, 2014.  (DeSimone Decl., Exh. A at 11; Counsel Decl., Exh. A at 178:10-12).  Post-arrest, the suspects admitted that five-on-one sex occurred – including both Collick[2] and Williams – but they claimed that M.M. consented.  (DeSimone Decl., Exh. A at 12-15).  About two months later, on January 26, 2015, a Passaic County grand jury declined to indict Collick or Williams on those criminal charges.  (DeSimone Decl., Exh. E).

---

[2] Collick initially lied and said he was not involved, but he later admitted that he participated in five-on-one sex with M.M.  (DeSimone Decl., Exh. A at 12; Counsel. Decl., Exh. D at 134:3-25.)

## PROCEDURAL HISTORY

Plaintiffs filed their 21-count Complaint in the Superior Court of New Jersey on December 21, 2015.  (Counsel Decl., Exh. E; D.E. 1-1).  On January 27, 2016, Defendants removed the matter to United States District Court.  (D.E. 1).  Defendants filed a motion to dismiss on March 18, 2016.  (D.E. 14).   By Order dated November 17, 2016, the Court dismissed Count 10 (malicious prosecution) as to the University and the University Police, Count 11 (malicious abuse of process) in its entirety; Count 12 (tortious interference) as to the University; Count 17 (negligent infliction of emotional distress) in its entirety; and all claims for racial discrimination based on substantive due process and equal protection.  (Counsel Decl., Exh. F; D.E. 28).  This Court and, on appeal, the Third Circuit declined to apply qualified immunity to dismiss Plaintiffs' Fourth Amendment-based claims to allow Plaintiffs the opportunity to take discovery as to the reasonableness of the University Police's pre-arrest investigation.  *Collick v. William Paterson Univ.*, 699 Fed. App'x 129, 130-131 (3d Cir. 2017).

Following extensive fact discovery, by Consent Order dated May 9, 2019, the Court dismissed Count 1 (Title IX); Count 3 (Section 1985 conspiracy); Count 4 (Section 1986 neglect); Count 8 (New Jersey Law Against Discrimination); Count 12 (tortious interference); Count 13 (breach of contract); Count 14 (breach of the covenant of good faith and fair dealing); Count 21 (declaratory judgment); and all claims for discrimination or arising out of the University disciplinary process (including due process and equal protection).  (Counsel Decl., Exh. G; D.E. 73).  The remaining active claims all arise from the allegedly unlawful arrest of Plaintiffs.

## LEGAL STANDARD

Pursuant to Rule 56(c), a motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Where there are no genuine issues of material fact, the Court may properly resolve any remaining questions of law on summary judgment. *See*, *e.g.*, *Ingram v. County of Bucks*, 144 F.3d 265, 267 (3d Cir. 1998).

A fact is material if it might affect the outcome of the case, and an issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007).  All facts and inferences must be construed "in the light most favorable to the nonmoving party." *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994).  Where the non-moving party bears the burden of proof on an issue, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.

The party seeking summary judgment must initially provide the Court with the basis for its motion. *Id.* at 323.  This requires the moving party to either establish that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or demonstrate that the non-moving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *Id.* at 322–23.  Once the party seeking summary judgment has carried this initial burden, the burden shifts to the non-moving party. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001).

To avoid summary judgment, where the non-moving party will bear the burden of proof at trial on a dispositive issue, he or she must demonstrate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324.  The opposing party must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material

facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* at 587 (internal quotations and citation omitted). In addition, summary judgment may be granted if the nonmoving party's "evidence is merely colorable, or is not significantly probative." *Anderson*, 477 U.S. at 249-50 (citations omitted).

Here, the material facts of this matter are not in dispute. Rather, the only issues before the Court are clear legal ones, specifically whether the arrests of Plaintiffs were constitutional – that is whether their arrests were supported by probable cause – and whether Defendants are entitled to the defense of qualified immunity. The answer to both of these questions is "yes."

## LEGAL ARGUMENT

## I.   SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFFS' SECTION 1983 AND NJCRA CLAIMS

Plaintiffs' Section 1983 and NJCRA claims fail because the University Police never violated Plaintiffs' "right not to be improperly restrained, arrested and imprisoned without due process of law." (*See* Counsel Decl., Exh. E at ¶¶ 144, 152.). Simply put, the University Police had probable cause to arrest Plaintiffs when they did and had no obligation to investigate further before arresting Plaintiffs. Plaintiffs' arguments to the contrary utterly disregard longstanding federal precedent that directly contradict their contentions.

The Third Circuit has definitively held that "a victim's identification, **even without any other evidence**, will 'usually be sufficient to establish probable cause'" unless "the officer is aware of '[i]ndependent exculpatory evidence or substantial evidence of the witness's own unreliability.'" *Cooper v. City of Philadelphia*, 636 Fed. App'x 588, 589 (3d Cir. 2016) (emphasis added) (quoting *Wilson v. Russo*, 212 F.3d 781, 790 (3d Cir. 2000)). As set forth in Defendants' Statement of Facts, the victim here, M.M., identified her attackers to the University Police,

provided them with a detailed account of the sexual assault, and sustained injuries corroborating her report of the assault. The lead investigator, who had extensive training in sex assault investigations, spent hours with M.M. on the day of her report and had no reason to doubt her statement. (DeSimone Decl., Exh. A at 1-7). Security data and video confirmed that the suspects, including Plaintiffs, were actually in the dormitory at the time of the alleged incident. (*Id.* at 8-10). Further, it is undisputed that the University Police did not possess any further information – certainly no exculpatory information – before any of the suspects were arrested. (Counsel Decl., Exh. A at 136:5-6, 139:7-13). Under clearly-settled law, there is no question that there was probable cause to arrest Plaintiffs based on these facts.

Moreover, there can be no doubt that qualified immunity applies here as well. There is absolutely no legal authority in any jurisdiction, let alone clearly established law, that would support Plaintiffs' contention that University Police lacked probable cause to arrest them. More specifically, there was no violation of any "clearly established" right identified in controlling case law or a "robust consensus" of cases that would have prevented the University Police from arresting Plaintiffs based solely on M.M.'s positive identification, let alone an identification corroborated by a medical report of injuries and security data. At the time of arrest, no legal authority existed that would have led all reasonable officers to conclude they lacked probable cause to arrest Plaintiffs based on the information available, and so qualified immunity applies here. Accordingly, Plaintiffs' Section 1983 and NJCRA claims in Counts 2 and 6 fail as a matter of law and should be dismissed.

### A. Probable Cause Existed At The Time Of The Arrests Based On M.M.'s Positive Identification Of Her Attackers

Plaintiffs' Fourth Amendment claims fail because the University Police had probable cause to arrest Plaintiffs at the time they were arrested. The Fourth Amendment "prohibits arrests

without probable cause." *Berg v. Cty. of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000). It is axiomatic that an arrest based on probable cause does not violate the Fourth Amendment. *U.S. v. Laville*, 480 F.3d 187, 194 (3d Cir. 2007). "[A] court may grant summary judgment if 'no genuine issue of material fact exists as to whether' there was probable cause." *Anderson v. Perez*, 677 Fed. App'x 49, 52 (3d Cir. 2017) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)).

Although the criminal charges against Plaintiffs were ultimately dismissed, "the constitutional validity of the arrest does not depend on whether the suspect actually committed any crime," thus it is "irrelevant" if a suspect "is later acquitted of the crime for which she or he was arrested." *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir. 2005). Further, police can rely on the credible report of a single witness (including the victim) to find probable cause. *See Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 n.8 (3d Cir. 2000); *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997); *Bresko v. John*, 87 Fed. App'x 800, 802 (3d Cir. 2004). To that end, an officer is "not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed." *Merkle*, 211 F.3d at 790 n.8; *see also Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995) ("[W]hether the officers conducted the investigation negligently is not a material fact.").

As the Supreme Court recently reiterated, a determination whether arresting officers had probable cause is based upon "the whole picture" or "the totality of the circumstances" confronting them at the time of the arrest. *District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018) (citing *U.S. v. Cortez*, 449 U.S. 411, 417 (1981)). This requires courts to "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount[ed] to 'probable cause.'" *Wesby*, 138 S. Ct. at 586 (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). "Probable cause is measured by the low

standard, requiring only a 'fair probability' that the person committed the crime." *Wychunas v. O'Toole*, 252 F. Supp. 2d 135, 142 (M.D. Pa. 2003) (quoting *Wilson*, 212 F.3d at 789). Probable cause "does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." *Orsatti*, 71 F.3d at 483. Rather, probable cause exists if the circumstances are sufficient to cause a prudent person to believe that a crime has been committed and the person to be arrested committed it. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000). A reviewing court must assess the "knowledge and information which the officers possessed <u>at the time of arrest</u>, coupled with the factual occurrences immediately precipitating the arrest" in determining if probable cause existed. *U.S. v. Harris*, 482 F.2d 1115, 1117 (3d Cir. 1973) (emphasis added). Courts must allow room for error when officers are determining whether they had probable cause for an arrest, "[b]ut the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." *Brinegar v. U.S.*, 338 U.S. 160, 176 (1949).

Federal courts, including the Third Circuit, have long held that "a positive identification by a victim witness, without more," is ordinarily sufficient to establish probable cause, absent "[i]ndependent exculpatory evidence" or "substantial evidence of the witness's own unreliability" known to the officer at the time of arrest. *Vega v. Ripley*, 571 Fed. App'x 96, 99 (3d Cir. 2014); *Wilson*, 212 F.3d at 790; *Cooper*, 636 Fed. App'x at 589; *see also Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991) ("It is surely reasonable for a police officer to base his belief in probable cause on a victim's reliable identification of his attacker."); *Grimm v. Churchill*, 932 F.2d 674, 675 (7th Cir. 1991) ("When an officer has received his information from some person – normally the putative victim or an eye witness – who it seems reasonable to believe is telling the truth, he has probable cause.") (internal quotations and citations omitted). The reliability of a victim's

identification of her attacker is based on the totality of the circumstances, which may include the opportunity to observe the accused, the accuracy of the initial description, the victim's degree of certainty in the identification, and the length of time between the crime and the identification. *U.S. v. Emanuele*, 51 F.3d 1123, 1128 (3d Cir. 1995).

As the Third Circuit observed in *Wilson*, there are two basic camps of probable cause cases based on victim identifications; namely, "(1) those in which there was no exculpatory evidence or evidence of witness unreliability . . . and (2) those in which the court concluded that a positive identification was not fatally undermined by unreliability or exculpatory evidence." 212 F.3d at 790. In cases where there is no exculpatory evidence or evidence of victim unreliability known to the arresting officers, which is the case here, the Third Circuit has routinely found probable cause existed and dismissed a plaintiff's Section 1983 claims against the arresting officers.

For instance, in *Petaccio v. Davis*, 76 Fed. App'x 442 (3d Cir. 2003), a suspect was arrested for allegedly raping four teenage girls after the officers established probable cause based solely on positive identifications by three of the four victims. *Id.* at 444. After the suspect was exonerated by DNA evidence, he brought Section 1983 claims against the arresting officers for false arrest, false imprisonment, and malicious prosecution. *Id.* In affirming the district court's dismissal of these claims, the Third Circuit adhered to the guiding principle that "[a] victim's identification of a party as the perpetrator may validly provide probable cause to charge that party" and found probable cause existed because "three rape victims identified [the plaintiff] as their assailant." *Id.* at 445. Because the officers did not know of the exculpatory DNA evidence at the time of the arrest, the Third Circuit affirmed that the victims' identification of the plaintiff was sufficient to establish probable cause. *Id.*; *see also Bresko*, 87 Fed. App'x at 801 (affirming dismissal of plaintiff's Section 1983 claims where the detective "received information from" the victim that the

plaintiff "had allegedly raped her" and "[s]he provided a detailed statement of alleged rape" because "[t]his was sufficient to establish probable cause to obtain a warrant"); *Brockington v. Spano*, 2013 WL 1811903, at \*5 (D.N.J. Apr. 29, 2013) (dismissing false arrest and imprisonment claim because "the witness/victim's identification of Plaintiff to police defendants, implicating Plaintiff in the crime, establishes probable cause for Plaintiff's arrest and detention.").

In the specific context of sex assault investigations at public universities, federal courts have dismissed Section 1983 false arrest claims by finding probable cause based solely on a student's identification of her alleged attacker. *See Lallemand v. Univ. of R.I.*, 9 F.3d 214, 217 (1st Cir. 1993); *Obilo v. City Univ. of City of New York*, 2003 WL 1809471, at \*18 (E.D.N.Y. Apr. 7, 2003). In *Lallemand v. University of Rhode Island*, a state university student claimed that she had been raped and assaulted by a student named "Dan" at a fraternity. 9 F.3d at 214-15. Shortly after the assault, a fraternity pledge named "David" was arrested despite the difference in names after the victim, without hesitation, identified David in a photograph, notwithstanding that his photo did not match the description of the rapist she had previously provided to law enforcement. *Id.* at 215. The charges were dismissed a week later when the victim could no longer recall the attack or identify her attacker. *Id.* The plaintiff filed suit under Section 1983 against the university and the university police alleging, in part, that the university police engaged in an inadequate investigation and ignored exculpatory evidence. *Id.* The First Circuit affirmed the district court's grant of summary judgment dismissing his Section 1983 false arrest claims on the ground that the arresting university police officer actually had probable cause despite earlier discrepancies in the victim's statements concerning her assailant's first name, appearance, and dormitory. *Id.* at 217. The court held that such discrepancies were trivial given their nature and the positive identification by the victim at the time of her report. *Id.* Moreover, the circuit court held that evidence of a

negative rape kit that was not developed until after the arrest did not retroactively negate probable cause that existed at the time of arrest. *Id.*

Similarly, in *Obilo*, a public university student reported a sexual assault by a male student she knew, corroborated by injuries consistent with her report of the attack. *Obilo*, 2003 WL 1809471 at *2. The accused student was subsequently escorted out of class by university security and arrested by police but ultimately was acquitted at trial. *Id.* In response to Section 1983 and malicious prosecution claims, the defendant officers moved to dismiss on the ground that they had probable cause to arrest based on the victim's statement despite the plaintiff's pre-arrest claims of innocence. *Id.* at *5. The district court dismissed his claims based on the existence of probable cause, holding that there was no evidence that the victim's statement was not credible and that the officers had no duty to investigate further for exculpatory evidence prior to arrest. *Id.* at *8. The court also held the officers were entitled to qualified immunity because it was not unreasonable to rely on the victim's statement, which constituted "arguable probable cause." *Id.* at *9.

Like *Lallemand* and *Obilo*, this case presents the straightforward issue of whether university police had probable cause to arrest Plaintiffs based on M.M.'s positive identification of her alleged rapists at a public university. Here there is no dispute that, every step of the way, M.M. told Det. Sgt. DeSimone that she had been sexually assaulted by five males in a WPU dormitory on campus and that she specifically named Plaintiffs as two of her attackers. (DeSimone Decl., Exh. A at 2). She described the sexual assault in detail, providing Det. Sgt. DeSimone with details about the specific locations in the Overlook South dormitory, the chronology of events leading up to the incident, and a detailed description of how she was abused by each of her attackers. (*Id.* at 3-7).

16

Applying these undisputed facts, M.M.'s detailed report of a five-on-one gang rape and identification of Plaintiffs by name was all that was required to establish probable cause to arrest Plaintiffs.  *Wilson*, 212 F.3d at 790; *Bresko*, 87 Fed. App'x at 801; *Cooper*, 636 Fed. App'x at 589; *Petaccio*, 76 Fed. App'x at 445; *Lallemand*, 9 F.3d at 217; *Obilo*, 2003 WL 1809471 at *18. Additionally, although not required, the existence of probable cause was bolstered by the University Police establishing that Plaintiffs were actually at the Overlook South dormitory at the time of the incident based on access card logs that recorded Plaintiffs entering and exiting the dormitory and security video footage of them at the dormitory entrance that night.  (DeSimone Decl., Exh. A at 8-10).

Further, Nurse Hatt's statement that M.M. suffered injuries consistent with forced oral sex corroborates M.M.'s description of multiple instances of forced oral sex during the alleged sex assault.  In the context of violent crimes, while injuries corroborating a victim's report are not necessary, they do bolster a finding of probable cause.  *See Perez*, 677 Fed. App'x. at 52.  In *Anderson*, the police arrested the plaintiff pursuant to an arrest warrant for alleged robbery and assault.  *Id.* at 51.  The police obtained the arrest warrant based on the victim's identification of Anderson as the perpetrator and the injuries she sustained that were consistent with the alleged robbery and assault.  *Id.*  After the charges were dismissed, Anderson filed suit against the arresting officer alleging, among other things, that the officer lacked probable cause for his arrest.  In affirming the district court's grant of summary judgment to dismiss the claims, the Third Circuit found that "[t]he warrant application and supporting affidavit contained statements from a victim ... who had identified Anderson" and the victim's "statements implicating Anderson were corroborated by [the victim's] physical injuries."  *Id.* at 53.  According to the court, "[t]his

17

information, taken together, gave rise to probable cause that Anderson had committed an offense." *Id.*

On the same day that M.M. first reported a five-on-one sex assault to the University Police, she also submitted to a sexual assault forensic examination that revealed injuries consistent with her description of being forced to perform oral sex.  Specifically, the examining sex assault nurse, Nurse Hatt, told Det. Sgt. DeSimone that M.M. had injuries to the back of her mouth and throat, which could have been caused by oral sex.  (Counsel Decl., Exh. B at 73:5-17, 85:6-12, 86:7-22).  Again, evidence of M.M.'s injuries was not necessary to establish probable cause to arrest Plaintiffs, but it served to reinforce probable cause based on her positive identifications of Plaintiffs as her attackers.  *See Perez*, 677 Fed. App'x. at 52.

Finally, and importantly, M.M.'s positive identification of Plaintiffs was not contradicted by any exculpatory evidence or indication that her report was not reliable at the time of Plaintiffs' arrests.  The Third Circuit has held that, to negate probable cause based on a victim's positive identification of an attacker, any exculpatory evidence must "fatally undermine" the identification. *Wilson*, 212 F.3d at 790.  For instance, in *Wilson v. Russo*, the Third Circuit held that a positive identification constituted probable cause even though the witness's prior description of her attacker did not remotely resemble the man she identified at the time of his arrest.  212 F.3d at 783.  The plaintiff in *Wilson* filed Section 1983 claims against the arresting officer, claiming that the arrest warrant lacked probable cause for neglecting to include exculpatory witness statements that the perpetrator of the robbery was much taller than the plaintiff and that one of the witnesses did not identify the plaintiff in a photo array.  *Id.* at 783-85.  The district court granted summary judgment, finding probable cause existed for the warrant.  On appeal, the Third Circuit weighed the inculpatory evidence against the exculpatory evidence to determine whether the victim's

18

identification was fatally undermined.  Notwithstanding the exclusion of exculpatory information from the warrant application, "these exculpatory facts, when weighed against the inculpatory facts, are not strong enough to undermine a finding of probable cause." *Id.* at 791-92.  The court found that "[t]he strongest inculpatory evidence is clearly the positive identification[,]" regardless of the fact that the victim's initial description of the suspect's height vastly differed from the plaintiff's actual height. *Id.* at 791.  In fact, the court stated "this indication of unreliability does not, from the vantage point of the arresting officer, fatally undermine the forceful positive identification." *Id.*  Accordingly, the district court's grant of summary judgment was affirmed. *Id.* at 792.

In a similar case decided by the Seventh Circuit, a victim reported that she was sexually assaulted by an unknown assailant and described her attacker as being 5'11, 180 pounds, in his mid-20s, with blonde curly hair and blue eyes. *Tangwall v. Stuckey*, 135 F.3d 510, 512 (7th Cir. 1998).  Two months later, the victim was working at a restaurant and when Tangwall entered, she immediately identified him as her attacker and called the police. *Id.* at 512-13.  Notably, Tangwall's actual appearance differed entirely from the victim's initial description in that Tangwall was taller, much heavier, and much older with straight brown hair and green eyes. *Id.* at 513.  After DNA evidence exonerated Tangwall, he filed a Section 1983 claim against the arresting officers for false arrest and imprisonment.  The district court denied the officers' request for summary judgment, but the Seventh Circuit reversed because the victim's "identification of Tangwall in the restaurant ... would have warranted a reasonable officer to conclude that the plaintiff was her attacker" notwithstanding the two-month gap in time. *Id.* at 519.  The court explained that "[w]hen a confirmed rape victim summons the police to her place of work, directs their attention to a man across the room and, being so fearful that she refuses to go anywhere near the individual, exclaims, 'That's my attacker!,' the prudent person ... would naturally be led to

believe that the man so identified had, in fact, committed the crime." *Id.* The court did not find that the discrepancies between the initial description of the attacker and Tangwall's actual appearance, and the significant lapse in time from the date the crime was committed until the identification in the restaurant, to undermine the identification. *Id.* Therefore, "because the law is clear that a believable victim's single identification can provide the basis for probable cause," the arresting officers had probable cause to arrest Tangwall. *Id.* at 519-20. *See also Grimm,* 932 F.2d at 675 (finding probable cause when an officer received information from the victim); *Gerald M. v. Connelly,* 858 F.2d 378, 381 (7th Cir. 1988) (concluding probable cause existed on the basis of a ten-year-old child victim's complaint of abuse).

Here, there are no facts that Plaintiffs can point to that would even remotely suggest that there was exculpatory evidence or evidence of M.M.'s unreliability "**known** by the arresting officers [that] could outweigh the identification such that probable cause would not exist." *Wilson*, 212 F.3d at 790 (emphasis added). There is no dispute that the only evidence known to the University Police prior to the arrests was M.M.'s identification of Plaintiffs as participants in the gang rape, the security information, and the injuries identified by Nurse Hatt. (Counsel Decl., Exh. A at 136:5-6, 139:7-13). Meanwhile, the factual record is devoid of any exculpatory evidence known to the University Police before they arrested Plaintiffs. As to the reliability of M.M.'s report of rape and identifications of Plaintiffs, Det. Sgt. DeSimone – a well-credentialed sexual assault investigator – spent hours talking with M.M., heard her story multiple times, and had no reason to doubt her reliability. (DeSimone Decl., Exh. A at 1-7; Exh. B). As such, M.M.'s identification of Plaintiffs was, by itself, sufficient for probable cause. *See Wilson*, 212 F.3d at 790; *Cooper*, 636 Fed. App'x at 589; *Vega*, 571 Fed. App'x at 99.

In this case, Plaintiffs' primary argument that the University Police needed to investigate further before arresting them is unavailing. The Third Circuit has consistently held that once probable cause exists, "an officer is 'not required to undertake an exhaustive investigation in order to validate the probable cause that, in her mind, already exist[s].'" *Stetser v. Jinks*, 572 Fed. App'x. 85, 87 (3d Cir. 2014) (alterations in original) (quoting *Merkle*, 211 F.3d at 790 n.8). Indeed, once "the facts known to [the officer] establish[] probable cause, [the officer is] not required to investigate further." *Id.*; *see also Bresko*, 87 Fed. App'x at 802 (rejecting the plaintiff's arguments that the arresting officers "should have done more investigation before applying for the arrest warrant" because "for Fourth Amendment purposes, ... [it] is not whether the information on which police officers base their request for an arrest warrant resulted from a professionally executed investigation . . . Instead, it is simply whether probable cause existed. We conclude that it did.") (internal citations omitted).

Here, because probable cause was established based on M.M.'s positive identification supported by corroborating evidence, the University Police were not required to conduct a further investigation to test the veracity of M.M.'s report. As a matter of law, the thoroughness of a criminal investigation is not material to the legal question of probable cause. *See Orsatti*, 71 F.3d at 484 ("[W]hether the officers conducted the investigation negligently is not a material fact."). Notwithstanding Plaintiffs' preference for additional investigation before they were arrested, it is undisputed that Det. Sgt. DeSimone was a well-trained sex assault investigator who took multiple statements from M.M., that M.M. identified Plaintiffs by name as her attackers, that security records put Plaintiffs at the dormitory at the time of the incident, and that Nurse Hatt hold Det. Sgt. DeSimone that M.M. suffered injuries that could have been caused by forced oral sex. While Det. Sgt. DeSimone could have taken additional investigative steps before arresting Plaintiffs, that

possibility is legally irrelevant and "not a material fact." *Orsatti*, 71 F.3d at 484.  The facts that

Det. Sgt. DeSimone was aware of created probable cause, and so any contention that the University

Police had to conduct further pre-arrest investigation is without any legal basis.

Accordingly, this Court should grant summary judgment on Plaintiffs' Section 1983 and

NJCRA claims because the arrests of Plaintiffs were supported by probable cause.

### B.  Defendants Are Entitled To Qualified Immunity Because The Arrests Of Plaintiffs Were Reasonable

Another independent ground to dismiss Plaintiffs' Section 1983 and NJCRA claims is

qualified immunity.   Applying the overwhelming legal authority supporting the existence of

probable cause based on a victim's positive identification, Plaintiffs cannot plausibly contend that

no reasonable officer could conclude that the University Police[3] had probable cause to arrest

Plaintiffs when they did.  To the contrary, Plaintiffs' position throughout this case has been that

the University Police should have investigated further before arresting them.  Their argument is

not supported by any applicable legal authority, and Plaintiffs cannot present this Court with any

case law, let alone clearly established law, rejecting probable cause based on an alleged victim's

report of a gang rape and identification of her attackers by name.

"An official sued under § 1983 is entitled to qualified immunity unless it is shown that the

official violated a statutory or constitutional right that was 'clearly established' at the time of the

challenged conduct."[4]  *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014) (quoting *Ashcroft v. al-*

---

[3] Plaintiffs must prove that each defendant's own actions amount to a violation of clearly established law.  In other words, Plaintiffs cannot rely on Det. Sgt. DeSimone's actions to prove that any other defendant – such as her superior, Director Fulleman – violated clearly established law.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

[4] The defense of qualified immunity applies equally to NJCRA claims as it does to Section 1983 claims.  *See Brown v. State*, 230 N.J. 84, 98 (2017) ("The State's qualified immunity doctrine tracks the federal standard").

*Kidd*, 563 U.S. 731, 735 (2011)).  "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"[5] *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The Court has explained that, "[i]t is not enough that the rule is suggested by then-existing precedent.  The precedent must be clear enough that <u>every</u> reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply."  *Wesby*, 138 S. Ct. at 590 (citing *Reichle*, 566 U.S., at 666) (emphasis added).  Accordingly, absent "controlling [legal] authority" from the Supreme Court, a "robust consensus of cases of persuasive authority" must have placed the legal question confronting the government officials "beyond debate" in order to properly afford them "breathing room to make reasonable but mistaken judgments about open legal questions." *al-Kidd*, 563 U.S. at 741, 743.  Qualified immunity thus "protects government officials from insubstantial claims in order to 'shield officials from harassment, distraction, and liability when they perform their duties reasonably.'"  *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 168 (3d Cir.), *cert. denied*, 137 S. Ct. 161 (2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  Because this is an objective analysis, an official's subjective good faith is irrelevant.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 816-18 (1982).

Importantly, the qualified immunity inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition," *Mullenix*, 577 U.S. at 12, so officials have "fair warning that their conduct violate[s] the Constitution." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  "In other words, there must be sufficient precedent at the time of action, factually similar

---

[5] "[C]ases ... that postdate the conduct in question" are "of no use in the clearly established inquiry" because they "could not have given fair notice to [the defendant]." *Brosseau v. Haugen*, 543 U.S. 194, 200 n.4 (2004).

to the plaintiff's allegations, to put defendant on notice that his or her conduct is constitutionally prohibited." *Mammaro*, 814 F.3d at 169 (citations omitted).

"The dispositive question is whether the violative nature of particular conduct is clearly established." *Mullenix*, 577 U.S. at 12 (emphasis in original). "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *al-Kidd*, 563 U.S. at 742. Said another way, "settled law must squarely govern the specific facts at issue." *James v. N.J. State Police (In re Gibbons)*, 957 F.3d 165, 169 (3d Cir. 2020) (citing *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018)) (internal citations and quotation marks omitted). The Court has "stressed that the 'specificity' of the rule is 'especially important in the Fourth Amendment context.'" *Wesby*, 138 S. Ct. at 590 (quoting *Mullenix*, 577 U.S. at 12); *see also id.* (observing that the clearly established standard "requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him.").

Qualified immunity "gives ample room for mistaken judgments" by shielding "all but the plainly incompetent or those who knowingly violate the law." *Olson v. Ako*, 724 F. App'x 160, 164 (3d Cir. 2018). Qualified immunity is particularly applicable in the arrest context. *See Orsatti*, 71 F.3d at 483 ("[T]he Supreme Court has recognized that it is inevitable that law enforcement officers will in some cases reasonably but mistakenly conclude that probable cause to make an arrest is present. The Court has made clear that in such cases those officers, like other officials who act in ways they reasonably believe to be lawful, will not be held personally liable.").

It is especially important to note that not only is qualified immunity incredibly important in the arrest context where, like in this case, "the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is

the clearest indication that the officers acted in an objectively reasonable manner or, as [the Supreme Court has] sometimes put it, in 'objective good faith.'" *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." *Malley v. Briggs*, 475 U.S. 335, 344-45 (1986) (internal citation omitted). Thus, defendants will be immune unless it is objectively obvious "that <u>no</u> reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." *Id.* at 341 (emphasis added).

The Supreme Court's framework is straightforward: first, "start by defining 'the circumstances with which [the officers] w[ere] confronted.'" *Wesby*, 138 S. Ct. at 590-91 (quoting *Anderson*, 483 U.S., at 640). Second, turn to the question of whether a controlling case from the Supreme Court or robust consensus of cases of persuasive authority have found a Fourth Amendment violation under similar circumstances. *Id.* at 591. Here, on the first point, the University Police confronted: a college student reporting a five-on-one sexual assault and identifying her attackers by name; security records confirming that Plaintiffs were at the dormitory at the time of the incident; and a statement from Nurse Hatt that M.M. suffered injuries to her mouth and throat that could have been caused by forced oral sex.

Turning to the next step, the question is whether "controlling authority" from the Supreme Court or a "robust consensus of cases of persuasive authority" from the Courts of Appeal as of November 2014 placed "beyond debate" a rule that officers facing those *particular* circumstances did not have probable cause to arrest a suspect for sexual assault. No such authority exists. And in the absence of such authority, it could not have been clearly established that the conduct alleged in the complaint constituted a violation of the constitutional rights embodied by the Fourth

Amendment.  *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018) (citation omitted).  Plaintiffs cannot identify a single case that could overcome qualified immunity, notwithstanding that the Supreme Court's has repeatedly "stressed the need to 'identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment.'"  *Wesby*, 138 S. Ct. at 590 (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam)); *see also, e.g.*, *Plumhoff*, 134 S. Ct. at 2023.  And Plaintiffs certainly cannot demonstrate that there was or is any controlling authority or "robust consensus" of cases that would put <u>every</u> reasonable officer on notice that the University Police lacked probable cause to arrest based on M.M.'s positive identification of Plaintiffs by name for an alleged gang rape.  *See City & Cnty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1777 (2015) (holding that an officer was entitled to qualified immunity because "*no precedent clearly established that there was not 'an objective need for immediate entry' here*") (emphasis in original).

Accordingly, because the University Police, who applied for and received arrest warrants, reasonably believed there was probable cause to arrest Plaintiffs for participating in the alleged gang rape of M.M., Plaintiffs' Section 1983 and NJCRA claims are barred by the doctrine of qualified immunity and summary judgment is, therefore, warranted here.

## II.    PLAINTIFFS' CLAIMS AGAINST THE UNIVERSITY AND ITS OFFICIALS FAIL AS A MATTER OF LAW

### A.    The University Is An Arm Of The State That Has Sovereign Immunity

Because the University is a state college that operates as an arm of the State of New Jersey, Defendants have sovereign immunity that bars Plaintiffs' claims.  In *Fitchik v. N.J. Transit Rail Operations, Inc.*, the Third Circuit delineated a three-part balancing test for sovereign immunity under the Eleventh Amendment: (1) the agency's status under state law; (2) the agency's degree of autonomy from the State; and (3) whether the money that would pay the judgment would come

from the State.  873 F.2d 655, 659 (3d Cir. 1989).  More recently, the Third Circuit has applied the *Fitchik* test to New Jersey's state colleges and concluded that they are entitled to sovereign immunity.  As a New Jersey state college, the University thus enjoys sovereign immunity.

The Third Circuit has twice held that New Jersey state colleges are entitled to sovereign immunity.  First, in *Maliandi v. Montclair State University*, the Third Circuit held that Montclair State satisfied two of the three *Fitchik* factors.  845 F.3d 77 (3d Cir. 2016).  Montclair State satisfied the status under state law factor because it lacked the power to sue and be sued, was immune from paying state taxes, could exercise eminent domain, and had to comply with administrative procedure and civil service laws.  *Id.* at 94-95.  Montclair State also satisfied the degree of autonomy factor because the governor could appoint trustees and remove them for cause; the governor is statutorily designated as the employer with sole responsibility for collective bargaining; and the state makes rules and regulates licensure, employment, tuition, personnel, and other matters.  *Id.* at 97-98.  The Third Circuit concluded that Montclair State satisfied two of the three factors and thus met *Fitchik*'s balancing test for sovereign immunity.  *Id.* at 99.

The Third Circuit subsequently extended Montclair State's sovereign immunity to all New Jersey state colleges.[6]  In *Jones v. Pi Kappa Alpha International Fraternity, Inc.*, Ramapo College claimed sovereign immunity in reliance on the *Maliandi* decision.  765 Fed. App'x 802, 807 (3d Cir. 2019).  The Third Circuit held that "[b]ecause Ramapo is a New Jersey state college governed by the same statutes that governed Montclair, we are compelled by *Maliandi* to conclude that Ramapo is an arm of the state under the *Fitchik* factors."  The analysis of the *Fitchik* factors relied

---

[6] Montclair State has since been reclassified as a public research university, but the legal structure analyzed in *Maliandi* still applies to all remaining New Jersey state colleges.  *Jones*, 765 Fed. App'x at 807 n.22.

entirely on the prior analysis in *Maliandi*. *Id.* at 807-08. The Third Circuit thus held that sovereign immunity applied and dismissed claims against the college and its representatives sued in an official capacity. *Id.* at 808.

Both *Maliandi* and *Jones* require that New Jersey state colleges be afforded sovereign immunity. WPU is one of seven New Jersey state colleges governed by the same statutory framework that applied to Montclair State in *Maliandi* and Ramapo in *Jones*. *See* N.J.S.A. 18A:64-45 (enumerating New Jersey state colleges to include WPU); *Jones*, 765 Fed. App'x at 807 (finding that New Jersey state colleges are "governed by the same statutes"). Accordingly, as a New Jersey state college, the University and its officials are entitled to sovereign immunity here.

**B.  The University Is Not A "Person" For The Purposes Of Section 1983 Or NJCRA**

Moreover, because the University is an arm of the State, Plaintiffs' constitutional claims fail against Defendants because they do not qualify as a "person" for the purposes of Section 1983 or the NJCRA. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). As set forth above, the University is an agency of the State of New Jersey. Similarly, the University is not a person under NJCRA. *See Didiano v. Balicki*, 488 Fed. App'x 634, 638 (3d Cir. 2012) (rejecting definition of "person" under the NJCRA that differed from that under Section 1983); *Martinez v. South Woods State Prison*, 2019 WL 6130972, *3 (App. Div. Nov. 19, 2019) (holding that a "person" under the NJCRA was analogous to Section 1983). Accordingly, Plaintiffs' claims under Section 1983 and the NJCRA necessarily fail as against the University and its representatives in their official capacities.

**C.      Plaintiffs' Governmental Responsibility Claims Fail Because Probable Cause Negates Their Underlying Constitutional Claims**

Plaintiffs' claims against all Defendants for the actions of the University Police fail for lack of any underlying constitutional violation.  Plaintiffs state claims under Section 1983 and NJCRA for governmental responsibility against Defendants, alleging that the customs and policies of Defendants resulted in the violation of Plaintiffs' constitutional and civil rights.  Because, as set forth above, Plaintiffs were lawfully arrested on probable cause, summary judgment is appropriate to dismiss Plaintiffs' governmental responsibility claims in Counts 5 and 7.

At the outset, a public entity "cannot be held liable for the unconstitutional acts of its employees on a theory of respondeat superior."[7]  *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691 (1978)).  Instead, "[a] plaintiff seeking to hold a municipality liable under section 1983 must demonstrate that the violation of rights was caused by the municipality's policy or custom." *Ibid.* (citing *Monell*, 436 U.S. at 690–91).  In order to sustain a claim for municipal liability, a plaintiff must show "an underlying constitutional violation."  *Panarello v. City of Vineland*, 160 F. Supp. 3d 734, 763 (D.N.J. 2016); *see also Mulholland v. Gov't Cty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("I[f] there is no violation in the first place, there can be no derivative municipal claim.").

Here, Plaintiffs' governmental responsibility claims under Section 1983 and the NJCRA fail because Plaintiffs cannot demonstrate any underlying constitutional violation.  As discussed in Point I(A) above, Plaintiffs' arrests were based on probable cause and therefore lawful.  Those claims are also barred by qualified immunity and, as a result, no constitutional violation can be

---

[7] Courts analyze municipal liability under Section 1983 and the NJCRA in the same manner. *See Janowski v. City of North Wildwood*, 259 F. Supp. 3d 113, 127-28 (D.N.J. 2017).

said to have occurred.  Because there is no underlying constitutional violation, Defendants cannot be liable under a theory of municipal liability because Defendants' customs and policies relating to the arrests of Plaintiffs were inherently constitutional.  *See Panarello*, 160 F. Supp. 3d at 763.

Accordingly, summary judgment should be granted to dismiss Counts 5 and 7 of Plaintiffs' Complaint claiming municipal liability.

## III.   SUMMARY JUDGMENT IS APPROPRIATE ON PLAINTIFFS' REMAINING STATE LAW CLAIMS

### A.   Probable Cause Is An Absolute Defense To All Of Plaintiffs' State Law Claims

Plaintiffs' remaining state law claims fail for substantially the same reason as their constitutional claims; namely, because probable cause existed at the time of arrest.  Those claims brought under New Jersey common law are for false arrest and imprisonment, malicious prosecution, negligent training/supervision, intentional infliction of emotional distress, negligence, gross negligence, and respondent superior (Counts 9, 10, 15, 16, 18, 19, and 20).  Because these claims all arise out of or are premised on Plaintiffs' arrests, the existence of probable cause is an absolute defense precluding Plaintiffs' from sustaining these claims.  As such, summary judgment is warranted.

As an initial matter, the absence of probable cause is an essential element for prima facie claims of false arrest, false imprisonment, and malicious prosecution.  Indeed, in order to state a claim for false arrest or false imprisonment, a plaintiff must show: (1) there was an arrest; (2) without proper legal authority or justification (i.e. probable cause).  *Tarus v. Borough of Pine Hill*, 189 N.J. 497, 521 (2007); *Leang v. Jersey City Bd. Of Educ.*, 198 N.J. 557, 591 (2009) ("The tort of false imprisonment has two elements: (1) 'an arrest or detention of the person against his or her will' and (2) 'lack of proper legal authority or legal justification.'") (quoting *Mesgleski v. Oraboni*, 330 N.J. Super. 10, 24 (App. Div. 2000)).  To demonstrate malicious prosecution, a plaintiff must

demonstrate: (1) the institution of the criminal proceeding by defendant against plaintiff; (2) defendant initiated the proceeding with malice; (3) an absence of probable cause; and (4) a favorable termination for plaintiff. *LoBiondo v. Schwartz*, 199 N.J. 62, 90 (2009) (citing *Lind v. Schmid*, 67 N.J. 255, 262 (1975)). "[E]ach element must be proven, and the absence of any one of these elements is fatal to the successful prosecution of the claim." *Ibid.*

Because probable cause is an element of each of these three causes of action, Plaintiffs were required to show that probable cause was lacking at the time of their arrests. *See Wildoner v. Borough of Ramsey*, 162 N.J. 375, 389 (2000) ("probable cause is an absolute defense to ... false arrest, false imprisonment, and malicious prosecution claims"). However, as discussed in Point I(A) above, probable cause existed at the time Plaintiffs were arrested. Because there is no genuine dispute of the facts that established probable cause in this matter, all three of these claims should be dismissed on summary judgment.

As to the remainder of Plaintiffs' state law claims for negligent training/supervision, intentional infliction of emotional distress, negligence, gross negligence, and respondent superior, these too fail because probable cause existed. Indeed, the Third Circuit has held that, in the context of false arrest cases, claims for negligent training/supervision, intentional infliction of emotional distress, and negligence must all be dismissed if probable cause existed. *See Herman v. City of Millville*, 66 F. App'x 363, 368 n.3 (3d Cir. 2003). In *Herman v. City of Millville*, the plaintiff was arrested and charged with two counts of vehicular aggravated assault, two counts of harassment, and reckless driving. *Id.* at 365. After the charges were dismissed, Herman filed a lawsuit against the members of the Millville Police Department, the City of Millville, and the Millville Police Department itself, alleging claims under Section 1983 and for false arrest, false imprisonment, malicious prosecution, negligence, negligent training and/or supervision by the City and the Police

Department, and intentional and/or negligent infliction of emotional distress.  *Id.*  The district court granted summary judgment in favor of the defendants on all causes of action, finding that probable cause existed at the time of the arrest.  *Id.*  On appeal, the Third Circuit held that "[t]he central issue here is whether the officers had probable cause to arrest Herman, since <u>probable cause is a complete defense to each and every claim</u>."  *Id.* (emphasis added).  In affirming the grant of summary judgment, the Third Circuit explained that

> To set forth a claim for negligence, the plaintiff must prove: (1) the existence of a duty; (2) the breach of the duty; and (3) proximate causation . . . Assuming a duty existed between Herman and the defendants, there was no breach if charges were filed against her <u>based on probable cause</u>.  Likewise, the City and the Police Department did not negligently supervise [the arresting officers] <u>if they acted on probable cause</u>.  Finally, the defendants did not negligently or intentionally inflict emotional distress on Herman <u>if there was probable cause</u> to file charges against her.

*Id.* at 368 n.3 (emphasis added) (citations omitted).

Applying *Herman* to this case, Plaintiffs could only prevail on their emotional distress and negligence-based claims if they could show that their arrests lacked probable cause.  As discussed throughout this brief, probable cause clearly existed at the time Plaintiffs were arrested, and so all of these claims should all be dismissed.  Although *Herman* did not directly address claims for gross negligence or respondent superior, it logically follows that these claims should also be dismissed.  "[G]ross negligence is a higher degree of negligence . . . and undoubtedly denotes the 'upper reaches of negligent conduct.'"  *Steinberg v. Sahara Sam's Oasis, LLC*, 226 N.J. 344, 363 (2016) (internal citations omitted) (quoting *Parks v. Pep Boys*, 275 N.J. Super. 1, 17 n.6 (App. Div. 1995)).  As such, because Plaintiffs' negligence claim fails, the heightened gross negligence claim must fail with it.  Likewise, because summary judgment should be granted on all of Plaintiffs' tort claims – as probable cause negates them all – Plaintiffs cannot maintain a derivative claim under respondent superior without any underlying tort.  *See Ricketti v. Barry*, 2015 WL

2376013, at *4 (D.N.J. May 18, 2015) ("[I]n the absence of an underlying tort by an employee there can be no vicarious liability on the part of the employer.").

Accordingly, because probable cause existed in this matter, summary judgment is appropriate on Plaintiffs' remaining state law claims and so Counts 9, 10, 15, 16, 18, 19, and 20 should be dismissed.

### B.    Defendants Are Entitled To The Good Faith Immunity Under The New Jersey Tort Claims Act

Independent of the issue of probable cause, Defendants are also entitled to the good faith immunity afforded by the New Jersey Tort Claims Act, N.J.S.A. 59:1-1, *et seq.* ("NJTCA") on most of the state law claims.  Specifically, good faith immunity bars Plaintiffs' claims for negligent training and supervision, intentional infliction of emotional distress, negligence, gross negligence, and respondent superior.  As such, summary judgment should be granted on Counts 15, 16, 18, 19, and 20.

The NJTCA provides that a "public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J.S.A. 59:3-3. In ascertaining whether good faith immunity exists, the New Jersey Supreme Court held that "[a] public employee either must demonstrate 'objective reasonableness' or that he behaved with 'subjective good faith.'" *Alston v. City of Camden,* 168 N.J. 170 186 (2001) (quoting *Fielder v. Stonack*, 141 N.J. 101, 132 (1995)). "The same standard of objective reasonableness that applies in Section 1983 actions also governs questions of good faith arising under the Tort Claims Act." *Wildoner,* 162 N.J. at 387.

In other words, the NJTCA's good faith immunity not only encompasses the qualified immunity analysis set forth in Point I(B) above, but also takes into account the state actor's subjective good faith.  *See Alston*, 168 N.J. at 186 ("Immunity attaches if the employee can show either objective or subjective good faith.").  Relying on the Supreme Court's analysis in *Harlow*,

New Jersey courts have found that when "[r]eferring both to the objective and subjective elements" of N.J.S.A. 59:3-3, "immunity would be defeated if an official 'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the (plaintiff), or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury[.]'" *Alston*, 168 N.J. at 187 (citing *Harlow*, 457 U.S. at 815).

Here, the University Police's determination that probable cause existed at the time of Plaintiffs' arrests was objectively reasonable.  Indeed, it is undisputed that M.M. positively identified Plaintiffs as two of her attackers, which identification was coupled with other inculpatory evidence that formed the University Police's basis for probable cause and their successful application for arrest warrants.  Further, given these facts, Plaintiffs have not developed and cannot show any evidence that the University Police harbored any "malicious intention to cause a deprivation of constitutional rights" by arresting them based on the evidence known at the time.  *Alston*, 168 N.J. at 187.  As such, there can be no suggestion of malice sufficient to overcome the good faith immunity under the NJTCA.

Accordingly, summary judgment is appropriate on Counts 15, 16, 18, 19, and 20, and they should, therefore, be dismissed.

### C.    Plaintiffs' Claim For Malicious Prosecution Claim Is Barred Under The Tort Claims Act

Plaintiffs' claim for malicious prosecution is barred pursuant to the NJTCA immunity afforded to public employees for the institution or prosecution of any proceeding within the scope of their employment.  Specifically, N.J.S.A. 59:3-8 provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment."  This immunity has been commonly applied to bar malicious

prosecution claims.  *See Van Engelen v. O'Leary*, 323 N.J. Super. 141, 156 (App. Div. 1999) (reversing a denial of summary judgment after finding that the defendants were entitled to immunity on plaintiff's malicious prosecution claim).  In order to overcome this immunity, Plaintiffs were required to show that the public employee's conduct "was outside the scope of his employment or constituted a crime, actual fraud, actual malice, or willful misconduct."  N.J.S.A. 59:3-14(a).

Here, the institution of criminal proceedings against Plaintiffs, which serves as the basis of their malicious prosecution claim, was squarely within the purview of the University Police. Indeed, the initiation of the prosecution of Plaintiffs arising out of M.M.'s allegations was routine, followed an outreach to the Prosecutor's Office, and the application for and receipt of arrest warrants.  Plaintiffs have not adduced—nor could they—any evidence that the sexual assault charges brought against them were outside the scope of the University Police's employment or that the charges constituted a crime, fraud, malice, or willful misconduct.  As set forth above, the University Police had or reasonably believed they had probable cause to arrest Plaintiffs based on the evidence available at the time.  As such, Defendants are entitled to immunity pursuant to N.J.S.A. 59:3-8, and summary judgment should be granted to dismiss Count 10 as a matter of law.

### D.    Plaintiffs' Negligence Claim Is Barred By The Charitable Immunity Act

Additionally, Plaintiffs' negligence claim against Defendants fails because such claim is barred by the New Jersey Charitable Immunity Act.  The New Jersey Charitable Immunity Act provides that a non-profit entity organized for religious, charitable, or educational purposes, and its representatives, shall be immune from suit for "negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association."  N.J.S.A. 2A:53A-7(a).  Thus, an entity qualifies for charitable immunity "when it '(1) was formed for nonprofit purposes; (2) is

organized exclusively for religious, charitable or educational purposes; and (3) was promoting such objectives and purposes at the time of the injury to plaintiff who was then a beneficiary of the charitable works.'" *O'Connell v. State*, 171 N.J. 484, 489 (2002) (quoting *Hamel v. State*, 321 N.J. Super. 67, 72 (App. Div. 1999)); *see also Graber v. Richard Stockton College of New Jersey*, 313 N.J. Super. 476, 480-481 (App. Div. 1998).   Provided that an entity satisfies these three elements, it will be immune from suit on negligence grounds, irrespective of whether the entity also receives public funding.  *See O'Connell*, 171 N.J. at 489-92 (concluding that Montclair State, which, like WPU, was a "state college" under N.J.S.A. 18A:64-1, *et seq.*, was entitled to the protections of the Charitable Immunity Act).

Defendants clearly qualify for charitable immunity from Plaintiffs' negligence claim.  First, the University is a non-profit institution of higher education created by the State.  N.J.S.A. 18A:64-1.  Second, the University was expressly organized for educational purposes.  *Id.*  Third, as students of the University, engaging in educational pursuits, Plaintiffs were *per se* beneficiaries of the University.  *See O'Connell*, 171 N.J. at 491; *Graber*, 313 N.J. Super. at 484-85.  Thus, as in *O'Connell*, "because the plain meaning of the statute supports the conclusion that [the University] is entitled to charitable immunity, the inquiry should end here."  *See* 171 N.J. at 491.  Accordingly, New Jersey's Charitable Immunity Act bars Plaintiffs' negligence claim here.

E.    **Plaintiffs' Claim For Intentional Infliction Of Emotional Distress Also Fails Against WPU**

Plaintiffs' intentional infliction of emotional distress claim fails for the additional reason that the University is a public entity immune from vicarious liability for the intentional torts of its employees.  Pursuant to N.J.S.A. 59:2-10, "[a] public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." "Thus, there can be no vicarious liability by a public entity for intentional torts committed by its

employees; that is, with respect to such intentional torts, the theory of respondeat superior does not apply." *Hoag v. Brown*, 397 N.J. Super. 34, 54 (App. Div. 2007). Because Plaintiffs' intentional infliction of emotional distress claim arises out of the University Police's alleged conduct, WPU is immune from liability for such claim. Accordingly, Plaintiffs' intentional infliction of emotional distress claim fails as against the University and should be dismissed as a matter of law.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants' Motion for Summary Judgment should be granted and Plaintiffs' Complaint should be dismissed in its entirety and with prejudice.

Respectfully submitted,

CHIESA   SHAHINIAN   &   GIANTOMASI   PC
*Attorneys for Defendants*

Dated: November 20, 2020          By: *<u>/s/ Matthew E. Beck</u>*
                                         Matthew E. Beck