## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

**GARRETT COLLICK and NOAH WILLIAMS,**

    **Plaintiffs,**

    **v.**

**WILLIAM PATERSON UNIVERSITY, KATHLEEN M. WALDRON, ROBERT FULLEMAN, ELLEN DESIMONE, WILLIAM PATERSON UNIVERSITY POLICE DEPARTMENT, et al.,**

    **Defendants.**

Civ. No. 16-00471 (KM) (JBC)

**OPINION**

---

**KEVIN MCNULTY, U.S.D.J.:**

A student at William Paterson University, "M.M.," reported that she had been sexually assaulted by fellow students Garrett Collick and Noah Williams. The two were arrested and later expelled, but a grand jury declined to indict. Collick and Williams then sued the University and those involved in the investigation, asserting constitutional and tort claims, later narrowed by the Court's ruling on a motion to dismiss and a voluntary dismissal. Following discovery, the remaining defendants now move for summary judgment on the remaining claims. (DE 94.)[1] For the following reasons, the motion is **GRANTED**.

---

[1]     Certain citations to the record are abbreviated as follows:

    DE = docket entry

    Mot. = Defendants' Brief in Support of their Motion for Summary Judgment (DE 94-1)

    Opp. = Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment (DE 99)

    Compl. = Complaint (DE 1-1)

    DeSimone Rep. = Report of Sergeant DeSimone (DE 94-6)

    Hatt Rep. = (DE 99-13)

This motion largely concerns the facts as reported to the police by M.M. on the night of the incident, and not those developed later. It therefore does not include many of the allegations of the Complaint, in which the plaintiffs paint a picture of an unscrupulous accuser who misrepresented a consensual encounter as a sexual assault.[2] There is good reason for that disconnect. The plaintiffs are not here suing M.M. for making a false complaint; they are suing the University police for believing her. So the issue is far narrower than, and distinct from, factual innocence or guilt. The question before the Court is whether the evidence in the possession of the police at the time of the arrest surmounted the fairly low bar of probable cause. It is well established that a victim-witness's allegation of sexual assault, particularly when accompanied by at least minimal corroboration, will suffice to establish probable cause. The contrary position—that the police were constitutionally required to disregard what appeared to be a credible, detailed allegation of aggravated sexual assault—is not sustainable on this record.

## I.   BACKGROUND

### A. Initial Reports

On November 25, 2014, University Police Detective Sergeant DeSimone received a call to respond to the campus counseling and health center. (DeSimone Rep. at 1.) She learned that a female student, M.M., had reported a sexual assault involving five individuals. (*Id.*) Sergeant DeSimone met with M.M. and took her to the hospital. (*Id.* at 1–2.)

M.M. provided an account to Sergeant DeSimone as follows: The night before, she was supposed to "hang out" with Collick, with whom she had previously had consensual sex, so she went looking for him. (*Id.* at 3.) She went to the dorms and found Collick in a room with Williams and other male

---

Ellicott Dep. = Deposition of Lori Ellicott (DE 99-23)

DeSimone Dep. = Deposition of Sergeant DeSimone (DE 99-10)

Pl. SMF = Plaintiffs' Statement of Material Facts (DE 99-1)

[2]   *See* Opinion on Motion to Dismiss (DE 27).

students. (*Id.* at 2, 3.) She told Collick that she wanted him to go back to her room, but Collick declined. When M.M. turned to leave, someone turned off the lights and blocked the door. The group began to taunt her and say that they wanted to have sex. She replied, "No, I really should go, I don't feel comfortable," but the taunting continued for fifteen minutes. (*Id.* at 3.)

Eventually, Collick demanded that she perform oral sex. She did not make any move to do so. Collick then grabbed her by the back of her head and forced her mouth onto his penis. She attempted to get up several times but could not. The other individuals asked to "pass" her around. After ten minutes of this, an unknown male entered the room and forced M.M. to perform oral sex on him, too. (*Id.*)

After hearing this account, Sergeant DeSimone called headquarters to try to identify the suspects. (*Id.* at 3–4.) She relayed the first names which M.M. had provided and the dorm room number. A detective at headquarters sent pictures of four individuals, including Collick and Williams (the photos were on file in connection with the issuance of their student ID cards). Sergeant DeSimone showed M.M. the pictures but did not provide names or otherwise inform her what pictures she was showing. M.M. positively identified each picture by the subject's first name. (*Id.* at 4.)

At this point, a nurse, Joanne Hatt, arrived. M.M. provided an account of the events to Nurse Hatt, with Sergeant DeSimone listening. (*Id.*) Nurse Hatt reported that M.M. had no vaginal injuries. The nurse did report that M.M.'s inner throat was red and "appeared to have abnormalities." (Hatt Rep. at 7.)

M.M.'s statement to Nurse Hatt provided additional details. M.M. stated that, when she found Collick in the dorm room and he declined to leave with her, she stayed and watched TV with the group for five minutes. Then, Collick told her that if she wanted to have sex with him, she had to have sex with all of them. (DeSimone Rep. at 4.) She replied that she was uncomfortable doing that. She then tried to leave but the door was blocked. Collick demanded oral sex, and she said, "I really should go." (*Id.* at 5.) M.M. further related that, in

the ensuing sexual encounter, Collick attempted to vaginally penetrate her. Collick had difficulty getting or staying erect, and M.M. stated, "Oh I see you have stage fright." (Hatt Rep. at 3.) Williams also forced her to perform oral sex on him. Eventually, the encounter ceased, and she told them "I have to go now" and "I feel a lot of pain." (DeSimone Rep. at 6.)

Williams and two of the others then walked her to her room. Once in her room, Williams and another male insisted on resuming the sexual encounter. M.M. told them "you guys should really go, I need to take a shower." The two males insisted, and M.M. "gave up and just laid there." (*Id.*) She reported to Nurse Hatt that she "gave up" and "said that['s] fine." (Hatt Rep. at 4.) When the third individual attempted, she refused and said, "I was just forced to do something I didn't want to do. Now you can leave because I'm about to cry." The three men then left. (DeSimone Rep. at 6–7.)

After hearing these accounts, Sergeant DeSimone returned to police headquarters. (*Id.* at 8.) She reviewed security video of the entrance to the dorm building and data regarding the student ID cards that were swiped to enter the building. The footage and swipe-card data showed Collick and Williams, as well as the other individuals, entering the building prior to the alleged time of the assault, and leaving thereafter. (*Id.* at 8–10.)

### B. Charges

Sergeant DeSimone spoke with a prosecutor and the University Police Director of Public Safety, Robert Fulleman, about possible charges. (DeSimone Dep. at 193:20–94:9; DeSimone Rep. at 10.) DeSimone then called Certified Municipal Court Administrator Lori Ellicott to obtain an arrest warrant. (DeSimone Rep. at 10; Ellicott Dep. at 32:22–33:3.) Ellicott, returning from vacation, was in a car on the way to the airport. (Ellicott Dep. at 34:13–17, 44:2–4.)

As to this telephone conversation, Municipal Court Administrator Ellicott could not recall what specific information Sergeant DeSimone provided. (*Id.* at 35:16–18.) She did recall that Sergeant DeSimone told Ellicott that she had

4

performed an investigation, and Ellicott may have asked a few questions about the thoroughness of the investigation. (*Id.* at 58:21–59:2.) The two did not discuss the precise facts of the case. (*Id.* 58:1–11.) Nor was Sergeant DeSimone placed under oath. (*Id.* at 25:23–26:3.)

Ellicott found that probable cause existed and gave Sergeant DeSimone permission to approve an arrest warrant in her name. (*Id.* at 52:15–54:7.) Sergeant DeSimone did so. An arrest warrant issued for Collick on charges of aggravated sexual assault in the first degree, conspiracy to commit sexual assault in the second degree, involuntary servitude in the third degree, and aggravated sexual contact in the third degree. (DE 94-8.) A second arrest warrant issued for Williams on charges of aggravated sexual assault in the first degree, kidnapping in the first degree, conspiracy to commit sexual assault in the second degree, and involuntary servitude in the third degree. (DE 94-9.)

## C. Subsequent Events

Collick and Williams were arrested and interrogated. They promptly appeared before a Superior Court judge, but it took them nine days to post bail and obtain their release. (Pl. SMF ¶ 289; *see also* DeSimone Rep. at 13, 14; DE 94-9, 94-9.) Prosecutors took over the investigation of the case, and more facts came to light. It emerged that Collick and Williams both had extensive prior relations and communications with M.M. In addition, M.M. made later statements in which she recharacterized the events in a manner that weakened the case. (Pl. SMF ¶¶ 290–327.) The case was presented to a grand jury, which declined to indict. (*Id.* ¶ 342.) Still, the University expelled Collick and Williams. (Compl. ¶¶ 18, 111.)

## D. Procedural History

Collick and Williams (as well as Collick's mother, later dismissed from the case) sued in New Jersey Superior Court. As defendants, they named Sergeant DeSimone, Director Fulleman, University President Kathleen Waldron, the University, and the University Police. (DE 1.) Defendants removed the case to this federal district court. (*Id.*) Defendants then moved to dismiss

the twenty-one-count Complaint on various grounds, including qualified immunity. (DE 14.) I granted the motion to dismiss in part and denied it in part. *Collick v. William Paterson Univ.*, Civ. No. 16-471, 2016 WL 6824374 (D.N.J. Nov. 17, 2016). As relevant here, I held that Collick and Williams had plausibly alleged violations of their Fourth Amendment rights arising from their arrests, so qualified immunity was inappropriate prior to factual development. *Id.* at *15. Defendants appealed from the qualified immunity ruling, but the Third Circuit affirmed. *Collick v. William Paterson Univ.*, 699 F. App'x 129 (3d Cir. 2017).

The case proceeded, and the parties completed discovery. Defendants now move for summary judgment on the remaining claims, all of which arise from Collick's and Williams's arrest and detention. After the Rule 12(b)(6) dismissal of some claims and the voluntary dismissal of others (DE 73),[3] the following claims remain:

- Count 2: a 42 U.S.C. § 1983 claim against Sergeant DeSimone and Director Fulleman for deprivations of Collick's and Williams's Fourth Amendment rights (Compl. ¶¶ 140–55);

- Count 5: a § 1983 claim against the University and Police for governmental liability for violations of their Fourth Amendment rights (Compl. ¶¶ 167–87);

- Count 6: a New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-2, claim against DeSimone and Fulleman for violations of their Fourth Amendment rights and corresponding rights under the New Jersey Constitution (Compl. ¶¶ 188–97);

---

[3]     In their brief, Collick and Williams concede summary judgment in favor of University President Waldron, who is named as a defendant in many of the remaining claims. (Opp. at 1 n.1.) I accept the concession because the record does not show involvement by President Waldron in the alleged constitutional violations here. *See Williams v. City of York*, 967 F.3d 252, 257 (3d Cir. 2020); *Ragland v. Comm'r N.J. Dep't of Corrs.*, 717 F. App'x 175, 178 n.6 (3d Cir. 2017) (per curiam).

- Count 7: an NJCRA claim against the University and Police for governmental liability for violations of their Fourth Amendment rights and corresponding rights under the New Jersey Constitution (Compl. ¶¶ 198–218);

- Count 9: false arrest and imprisonment, under New Jersey law, against DeSimone and Fulleman (*id.* ¶¶ 237–41);

- Count 10: malicious prosecution, under New Jersey law, against DeSimone, Fulleman, the University, and Police (*id.* ¶¶ 242–46);

- Count 15: negligent training and supervision, under New Jersey law, against Fulleman, the University, and Police (*id.* ¶¶ 270–75);

- Count 16: intentional infliction of emotional distress ("IIED"), under New Jersey law, against all defendants (*id.* ¶¶ 276–80);

- Count 18: negligence, under New Jersey law, against all defendants (*id.* ¶¶ 286–91);

- Count 19: gross negligence, under New Jersey law, against all defendants (*id.* ¶¶ 292–95);

- Count 20: respondeat superior liability, under New Jersey law, against the University and Police for DeSimone's and Fulleman's torts (*id.* ¶¶ 296–99).

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). A court construes all facts and inferences in the light most favorable to the nonmoving party. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt

as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must point to evidence that creates a genuine issue as to a material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "A fact is material if—taken as true—it would affect the outcome of the case under governing law. And a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *M.S. by and through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) (quotation marks and citation omitted).

## III.    DISCUSSION

Defendants argue that Sergeant DeSimone had probable cause to arrest Collick and Williams for sexual assault, so all claims fail. (Mot. at 10, 31.) The probable-cause analysis differs depending on whether the arrest occurred pursuant to a valid warrant. *See Wilson v. Russo*, 212 F.3d 781, 786–87 (3d Cir. 2000). Accordingly, I first identify the appropriate analytic framework. (Section III.A.) I then apply that framework to the charges of sexual assault, which are the focus of the parties' briefs. (Section III.B.) I then discuss how my conclusion on probable cause impacts the claims. (Section III.C.)

### A. Applicable Framework

A warrantless arrest is subject to a totality-of-the-circumstances analysis of probable cause. Probable cause exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been . . . committed by the person to be arrested." *Harvard v. Cesnalis*, 973 F.3d 190, 199–200 (3d Cir. 2020) (quotation marks and citation omitted). "This totality-of-the-circumstances inquiry is necessarily fact-intensive," so "summary judgment . . . is proper only if no reasonable juror could find a lack of probable cause." *Id.* (quotation marks and citation omitted).

8

When an arrest is made pursuant to a warrant, the analysis changes. A warrant provides the officer some protection from Fourth Amendment second-guessing. To go behind the face of a duly issued arrest warrant, the plaintiff "must make two showings: that the officer, with at least a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for a warrant, and second, that those assertions or omissions were material, or necessary, to the finding of probable cause." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468–69 (3d Cir. 2016) (cleaned up).

That analysis, however, presumes that a constitutionally adequate process for obtaining a warrant was followed. *Id.* Generally, that means that "the officer swears to an affidavit containing a summary of the events that she believes give rise to probable cause" and "presents the affidavit to a neutral magistrate, who conducts [an] independent review of the evidence to determine whether it does, in fact, establish probable cause." *Id.* at 469. That is not what happened here, and, as a result, there is no adequate record for this Court to review. I will therefore default to the totality-of-the-circumstances test for probable cause.

For practical reasons, Sergeant DeSimone's warrant application to Court Administrator Ellicott was by telephone.[4] There is no sufficient evidence that DeSimone provided an adequate summary of the events to Ellicott. DeSimone recalls relating that an investigation had occurred, and Ellicott seems to have responded with questions about the thoroughness of the investigation. But assurances of thoroughness are not equivalent to presentation of "operative

---

[4]     New Jersey permits municipal court administrators to issue arrest warrants on the "sworn oral testimony" of an officer by telephone. N.J. Ct. R. 3:2-3(b); *see* N.J. Stat. Ann. § 2B:12-21(a). The officer, after taking an oath, is to "read verbatim" her complaint and affidavit. N.J. Ct. R. 3:2-3(b). If the officer provides additional facts, the administrator is to record that testimony or make notes of it, which will be deemed part of the affidavit. Id. The administrator may direct the officer to "activate the complaint." *Id.* A warrant issued under this procedure is to be verified "as soon as practicable" by a court. *Id.* It appears that, post-arrest, Collick and Williams appeared before a Superior Court judge, who set bail and signed the warrants. (*See* DeSimone Rep. at 13, 14; DE 94-9, 94-9.)

facts" sufficient to establish probable cause of commission of a crime. *See Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 (1971). There is no record—no affidavit, recording, or even any specific deposition testimony—establishing the factual basis for issuance of the warrant. Further, Sergeant DeSimone did not present an affidavit, and was not under oath during her telephone call with Ellicott. *See U.S. ex rel. Gaugler v. Brierley*, 477 F.2d 516, 522 (3d Cir. 1973) (the Fourth Amendment does not require a written affidavit but that "the judicial officer issuing a search warrant be supplied sufficient information, under oath or affirmation"). For that additional reason, the validity of the warrant is in serious question.

There is an argument to be made that, even in this situation, the officers should receive the benefit of the arrest-warrant presumption. An important policy behind that rule is to encourage officers to seek warrants rather than rely on their on-the-spot judgments regarding probable cause. *See United States v. Leon*, 468 U.S. 897, 913–14 (1984) (discussing "good faith" exception in connection with suppression of evidence in a criminal case). Thus the police did right in seeking a warrant before arresting anyone. To the extent the application procedure fell short of the ideal, the police were not necessarily to blame; practically speaking, they must take the procedures of the municipal court as they find them. Still, I cannot find that the warrant application process, as it unfolded here, was sufficient to shield this arrest from full, probable-cause scrutiny.

Third Circuit case law does not provide a definitive answer as to whether I should be applying the warrant analysis or warrantless-arrest analysis here.[5]

---

[5]     Filling that silence, Judge Arleo has suggested that "the Court can use extrinsic evidence to reconstruct the contents of the affidavit and decide whether such contents gave rise to probable cause." *Newsome v. City of Newark*, 279 F. Supp. 3d 515, 525 (D.N.J. 2017). That approach, while reasonable, would not work here because the record shows that no information about the facts underlying the offenses was submitted to Ellicott. In *Newsome*, by contrast, a detective made an oral application to the judge, but the audio recording was missing. *Id.* at 520. Nonetheless, Judge Arleo used the detective's uncontradicted deposition testimony recalling what he presented to the judge to reconstruct the detective's oral application. *Id.* at 526. Here, I am faced

There is, however, persuasive authority. For starters, in *Noviho v. Lancaster County*, a plaintiff was arrested pursuant to a warrant, but the affidavit was not provided when the district court decided a motion to dismiss in a related § 1983 action. 683 F. App'x 160, 164 (3d Cir. 2017). The Third Circuit non-precedentially held that the analysis outlined in *Dempsey* could not be performed without the affidavit. *Id.* The Court therefore defaulted to the warrantless-arrest test. Thus, the "central inquiry" became whether there was probable cause to arrest under the totality of the circumstances. *Id.*; *see also Dorval v. State*, Civ. No. 20-5997, 2021 WL 236625, at *3 n.4 (D.N.J. Jan. 25, 2021).

For this approach, *Noviho* cited *Graves v. Mahoning County*, 821 F.3d 772 (6th Cir. 2016). There, the Sixth Circuit explained that the Fourth Amendment protects against both (a) defective warrants, in its "warrant clause" and (b) unreasonable seizures, in its "reasonableness clause." *Id.* at 774. The court held that the warrants in that case were invalid because, among other things, a clerk issued them without hearing any of the "operative facts in the case." *Id.* at 775 (cleaned up). "But," the court explained, "that does not mean the plaintiffs prevail. To establish a cognizable Fourth Amendment claim, the plaintiffs must show a violation not of the *Warrant Clause* but of the *Reasonableness Clause.*" *Id.* So they must show that the arrest was unreasonable, *i.e.*, that it was not supported by probable cause. *Id.* at 776. In short, not every arrest requires a warrant; but even if not, the arrest must be supported by probable cause. *See id.* Accordingly, the Third Circuit cited *Graves* for the proposition that "an invalid arrest warrant does not preclude a reasonable arrest," and went on to determine whether probable cause existed under the totality of the circumstances. *Noviho*, 683 F. App'x at 165 & n.19; *accord Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 559 (4th Cir. 2017) (citing *Graves*).

---

with more than just a missing recording; there is literally no evidence, documentary or oral, as to the particular facts that DeSimone presented to Ellicott.

We have wound up where we started. Setting aside the warrant, the question becomes whether, considering all information available to Sergeant DeSimone, there was probable cause to arrest Collick and Williams. To that question I now turn.

## B. Application

The parties focus on probable cause in relation to sexual assault, and I will do the same.[6] The question is not whether Collick and Williams were actually guilty of sexual assault, whether Sergeant DeSimone's investigation can be criticized, or whether all the evidence we *now* possess would have supported such charges. *Dempsey*, 834 F.3d at 477; *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 790 n.8 (3d Cir. 2000). The question is only whether, at the time, the police had evidence amounting to probable cause, *i.e.*, "a fair probability that the arrestee committed a crime." *Dempsey*, 834 F.3d at 477 (quotation marks and citation omitted). That "is not a high bar." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (citation omitted).

The probable-cause question can only be answered in relation to the essential elements of the charged offense. *See Harvard*, 973 F.3d at 200. The relevant charge is aggravated sexual assault in the first degree. (DE 94-8, 94-9). A person is guilty of that offense if he[7] (1) "commits an act of sexual penetration with another person," (2) "is aided or abetted by one or more other persons," and (3) "commits the act using coercion or without the victim's affirmative and freely-given permission." N.J. Stat. Ann. § 2C:14-2(a)(5). Collick and Williams do not dispute that a sexual act occurred or that multiple parties

---

[6]     For Collick, the other charges were conspiracy to commit sexual assault in the second degree, involuntary servitude in the third degree, and aggravated sexual contact in the third degree. (DE 94-8.) For Williams, they were kidnapping in the first degree, conspiracy to commit sexual assault in the second degree, and involuntary servitude in the third degree. (DE 94-9.)

[7]     Because the accused persons in this case were male and the alleged victim was female, I use male pronouns to refer to a generic accused, and female pronouns to refer to a generic victim. In tailoring the pronouns to the facts of this case, I do not lose sight of the reality that "both males and females can be actors or victims." *State in Interest of M.T.S.*, 609 A.2d 1266, 1275 (N.J. 1992).

were allegedly involved. They focus on the third element: consent. (*See* Opp. at 8–18.)

The crucial question in a sexual-assault case where "the State does not allege violence or force extrinsic to the act of penetration" is "whether the defendant's act of penetration was undertaken in circumstances that led the defendant reasonably to believe that the alleged victim had freely given affirmative permission to the specific act of sexual penetration." *State in Interest of M.T.S.*, 609 A.2d 1266, 1278 (N.J. 1992). The victim need not have "expressed non-consent" or "denied permission, and no inquiry is made into what he or she thought or desired." *Id.* at 1279. Nonetheless, "permission may be inferred either from acts or statements reasonably viewed in light of the surrounding circumstances." *Id.* at 1276.

Turning to the facts here, Sergeant DeSimone relied on M.M.'s account, bolstered by the security information and observed irritation or abnormalities in M.M.'s throat. The Third Circuit applies a "rule that statements of a victim witness are typically sufficient to establish probable cause." *Dempsey*, 834 F.3d at 477. Indeed, in the specific context of sexual assault, the Third Circuit has repeatedly held that a victim's account of a sexual assault is sufficient as a matter of law to establish probable cause. *Carson v. Aurand*, 837 F. App'x 121, 123 (3d Cir. 2020) (per curiam); *Davison v. Sheaffer*, 820 F. App'x 167, 171 (3d Cir. 2020); *McCoy v. Taylor*, 819 F. App'x 84, 86 (3d Cir. 2020); *Jecrois v. Sojak*, 736 F. App'x 343, 348 (3d Cir. 2018); *McKinney v. Passaic Cnty. Prosecutor's Off.*, 612 F. App'x 62, 68 (3d Cir. 2015) (per curiam); *Coley v. County of Essex*, 462 F. App'x 157, 160 (3d Cir. 2011) (per curiam); *Mitchell v. Obenski*, 134 F. App'x 548, 551 (3d Cir. 2005); *Bresko v. John*, 87 F. App'x 800, 802 (3d Cir. 2004); *Petaccio v. Davis*, 76 F. App'x 442, 445 (3d Cir. 2003). Police officers do not sit as finders of fact, and they can generally assume that victims are credible, because their motive is ostensibly concern for their or others' safety. Further, victims are presumed to have a sufficient basis of knowledge, as the crime happened to them. Indeed, for sexual-assault crimes (particularly lack-

of-consent, as opposed to forcible, assaults), the victim's testimony may be the only evidence available. *Easton v. City of Boulder*, 776 F.2d 1441, 1449–50 (10th Cir. 1985) (cited favorably in *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997), *abrogated on other grounds by Curley v. Klem*, 499 F.3d 199 (3d Cir. 2007)); *see generally* 2 Wayne R. LaFave, *Search & Seizure* § 3.4(a) (6th ed. Sept. 2020 update). Because probable cause is not an overly demanding test, and because the testing of a victim statement is a matter for post-arrest proceedings, the veracity and basis for knowledge inherent in a victim statement is generally sufficient for probable cause. *Wilson*, 212 F.3d at 793–95 (Garth, J., concurring).

Here, Sergeant DeSimone possessed two detailed statements by M.M., the victim-witness, and some generally corroborative evidence. "[O]ur Circuit's rule" concerning victim-witnesses' statements, then, forecloses much of the proffered challenge to probable cause here. *Dempsey*, 834 F.3d at 477.

I do not stop there, however, because a court must consider the *totality* of the evidence that the officers possessed at the time. But what the "totality" rule gives with one hand, it takes away with the other. A determination of guilt or innocence would require exhaustive investigation and credibility determinations.[8] An assessment of probable cause, however, requires primarily

---

[8]     Nor is the issue whether the police investigation could have been more complete, or even whether it was negligent in some sense. *Merkle*, 211 F.3d at 790 n.8 (an officer is "not required to undertake an exhaustive investigation in order to validate the probable cause that, in [her] mind, already exist[s]"); *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995) (probable-cause analysis "focuse[s] on the information the officers had available to them, not on whether the information resulted from exemplary police work"); *see also Carson*, 837 F. App'x at 123 (officers did not need to conduct further interviews after receiving a sexual-assault victim's statement); *Livingston v. Allegheny County*, 400 F. App'x 659, 665–66 (3d Cir. 2010) (same); *Schirmer v. Penkethman*, Civ. No. 10-1444, 2012 WL 6738757, at *9 (D.N.J. Dec. 31, 2012) (same).

        Collick and Williams dispute the notion that a victim's statement should be sufficient for an arrest, and would require more thorough investigation before a warrant can issue. (*See, e.g.*, Opp. at 17-18.) I understand that "merely being arrested" can have "far-reaching and lasting consequences." *Dempsey*, 834 F.3d at 469 & n.7. It is difficult to disagree with the proposition that, all other things being equal, a more thorough investigation is always preferable. Nonetheless, I deal today only with the

that the court identify *what* evidence the arresting officer possessed, a more limited issue as to which there may often be a fair degree of certainty.

> Here, I have in mind Judge Krause's highly pertinent observation:

> There is a tension inherent in evaluating probable cause at the summary judgment stage. On the one hand, the summary judgment standard asks whether there is a "genuine dispute as to any material fact," . . . viewing the evidence "in the light most favorable to the non-moving party," . . . . On the other hand, the probable cause standard by definition allows for the existence of conflicting, even irreconcilable, evidence. . . . In his brief on appeal, Dempsey urges us to resolve this tension by omitting from our consideration of probable cause any facts unfavorable to him that conflict with favorable facts. . . .

> We reject Dempsey's proposed approach. While it is axiomatic that at the summary judgment stage, we view the facts in the light most favorable to the nonmoving party, it does not follow that we exclude from the probable cause analysis unfavorable facts an officer otherwise would have been able to consider. Instead, we view all such facts and assess whether any reasonable jury could conclude that those facts, considered in their totality in the light most favorable to the nonmoving party, did not demonstrate a "fair probability" that a crime occurred. Only then would the existence of conflicting evidence rise to the level of a "genuine dispute as to any material fact" such that summary judgment would be inappropriate. Thus, where the question is one of probable cause, the summary judgment standard must tolerate conflicting evidence to the extent it is permitted by the probable cause standard.

*Dempsey*, 834 F.3d at 468 (citations omitted). The quantum of evidence required is simply enough to require the accused to answer; "some unreliability or exculpatory evidence will not fatally undermine probable cause." *Id.* at 478 (cleaned up); *see Lallemand v. Univ. of R.I.*, 9 F.3d 214, 216–17 (1st Cir. 1993) (minor discrepancies in rape victim's account did not undermine probable cause).

---

standard of probable cause, which sets a fairly low bar, leaving the weighing of inculpatory and exculpatory evidence for later.

The upshot of all the above is that conflicts in the evidence will not rule out probable cause, but in a proper case, a court will consider whether "independent exculpatory evidence or substantial evidence of a witness's own unreliability" can outweigh a victim-witness's statement. *Dempsey*, 834 F.3d at 477–78. Collick and Williams point to facts which, they contend, negate M.M.'s account and should have caused the police to disbelieve her. I canvas those facts and then place them alongside M.M.'s statement and corroborating evidence. *See Wesby*, 138 S. Ct. at 588.

First, M.M. told Sergeant DeSimone she had a prior sexual relationship with Collick and sought him out that night. (Opp. at 17–18.) This presents a delicate issue of New Jersey law, but I will accept *arguendo* that a victim's prior relationship with the defendant can be relevant to show that the defendant reasonably believed that the victim consented to sex. *See* N.J. Stat. Ann. § 2C:14-7(d); *State v. Garron*, 827 A.2d 243, 260 (N.J. 2003). Still, the question is not whether permission was ever given in the past, but rather whether it was given "to the *specific* act of sexual penetration" at issue. *M.T.S.*, 609 A.2d at 1278 (emphasis added). Indeed, the New Jersey Supreme Court has observed that a prior relationship is often unremarkable, because "the vast majority of sexual assaults are perpetrated by someone known to the victim." *Id.*

Here, a prior relationship with Collick, even if relevant, does little to exculpate the accused. Consider, for example, that the first encounter, as reported by M.M., involved blocking the door and grabbing her by the head. More specifically, M.M.'s relationship with Collick is not relevant to charges against Williams (or, for that matter, the involvement of the other individuals). *See* N.J. Stat. Ann. § 2C:14-7(a), (d). Thus M.M.'s report of prior relations with Collick, even if a jury might consider it relevant to guilt or criminal intent, is not so probative as to negate probable cause.

Second, Collick and Williams rely on M.M.'s statement "Oh I see you have stage fright" when Collick allegedly had difficulty with an erection. They argue that the lighthearted nature of this statement undermines any view of

16

this encounter as nonconsensual. (Opp. at 11.) The statement is open to interpretation, but at most it suggests a certain incongruity of tone, not a granting of consent. This "lighthearted" comment, if that is what it was, was properly viewed by Sergeant DeSimone in the context of a detailed account by M.M of a nonconsensual sexual encounter. This statement could not have undermined the probable-cause determination.

Third, Collick and Williams argue, after the initial encounter, they walked M.M. to her room and that she said "that's fine" to having sex there—more evidence, they say, of consent. (Opp. at 11–12.) Again, even giving these facts an exculpatory interpretation, they cannot overcome the remainder of the context. For example, M.M. stated to the individuals (1) immediately before the second encounter, "you really should go," and (2) immediately after the second encounter, "I was just forced to do something I didn't want to do. Now you can leave because I'm about to cry." (DeSimone Rep. at 6–7.) That she "gave in," under the circumstances as she reported them, does not establish consent. *See Jecrois*, 736 F. App'x at 348 n.4 (sexual-assault victim's statement that she "let him do it" was not exculpatory). And of course, nothing about this second encounter erases the first.

Fourth, Collick and Williams disparage the security camera and swipe-card evidence, observing that there is nothing unusual about students coming and going from a dormitory. (Opp. at 12.) "But probable cause does not require officers to rule out [an] innocent explanation for suspicious facts . . . . [T]he relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts." *Wesby*, 138 S. Ct. at 588 (quotation marks and citation omitted). Here, the security information was useful as corroboration.[9] The Third Circuit has held

---

[9]     Consider, for example, how the evidence might have looked if the security data had *not* shown that Collick and Williams were present. Collick and Williams now concede the first two elements of sexual assault, disputing only the element of consent. The investigating officers, however, were not armed with any such concession.

that precisely such evidence of presence may serve as corroboration of sexual assault, despite their susceptibility of an innocent explanation. *See Mitchell*, 134 F. App'x at 551 (victim's statement about sexual assault in a hotel room, supported by hotel records, provided probable cause). At the very least, the security information's corroborative effect generally bolstered M.M.'s credibility and placed Collick and Williams at the scene. That entering or leaving a dorm is not in itself a crime does not affect the probable-cause analysis.

Finally, Collick and Williams argue that the police and nurse noted no evidence of physical injury, undermining M.M.'s allegations that she was the victim of a multi-assailant sexual assault. (Opp. at 12.) But this is not a "violence or force" case; it is a non-consent case. To establish the latter, "'physical force in excess of that inherent in the act of sexual penetration is not required'"; rather, the crime is shown by "the act of penetration itself, 'if engaged in by the defendant without the affirmative and freely-given permission of the victim to the specific act of penetration.'" *Jecrois*, 736 F. App'x at 347 (quoting *M.T.S.*, 609 A.2d at 1277). M.M. never alleged facts from which one would expect to find evidence of injury, so the lack of such evidence did not undermine her account in the eyes of the police.

Collick and Williams assert facts which, if admissible, might be considered by a jury in their defense. Those facts were not, however, nearly so exculpatory, singly or together, as to permit an officer to conclude that probable cause was absent. This was not a case involving, *e.g.*, a vague story, a fantastic scenario, or a known fabricator. Rather, M.M. made a prompt complaint and gave two statements that were detailed and consistent with each other. Some corroborating evidence existed in the form of security information and physical manifestations of oral sex. Accordingly, this is a case where, given Third Circuit precedent, Defendants can establish as a matter of law that the totality of facts in their possession at the time of arrest established probable cause of aggravated sexual assault.

### C. Impact on Claims

Defendants argue that a finding of probable cause on the sexual assault charge requires that all the currently operative claims against them be dismissed. I agree.

Count 2 (§ 1983) and Count 6 (NJCRA) allege that Collick's and Williams's arrest and detention violated their Fourth Amendment and corresponding New Jersey constitutional rights. Probable cause to arrest for one of multiple charges is sufficient to defeat a claim that an arrest was unlawful. *Harvard*, 973 F.3d at 199, 202; *State v. Gibson*, 95 A.3d 110, 118 (N.J. 2014); *Sanchez v. Town of Morristown*, No. A-2076-13T3, 2015 WL 4661412, at *6 (N.J. Super. Ct. App. Div. Aug. 7, 2015). I have found that the police possessed probable cause of sexual assault.[10]

The briefs do not substantially discuss any constitutional or tort-based theory of malicious prosecution. In cases of malicious prosecution, courts have sometimes required that probable cause exist as to each crime charged. *Johnson v. Knorr*, 477 F.3d 75, 85 (3d Cir. 2007); *see Kossler v. Crisanti*, 564 F.3d 181, 192–94 (3d Cir. 2009) (en banc). This, however, is not such a case. I find that probable cause as to the sexual-assault charge defeats any malicious prosecution claim, for two reasons. First, the Third Circuit has excused the

---

[10]     To be more precise, Defendants framed their motion for summary judgment as one invoking qualified immunity. Qualified immunity shields § 1983 and NJCRA defendants from liability unless (1) they violated a constitutional right, and (2) that right was clearly established. *Williams v. City of York*, 967 F.3d 252, 258 (3d Cir. 2020) (§ 1983); *Morillo v. Torres*, 117 A.3d 1206, 1213 (N.J. 2015) (NJCRA). Because probable cause existed, there was no constitutional violation, and Defendants are entitled to qualified immunity.

Even if one in hindsight found a lack of probable cause, however, plaintiffs would still need to show that such lack of probable cause was clearly established by then-existing law. *See Sanders v. Jersey City*, Civ. No. 18-1057, 2021 WL 1589464, at *9 (D.N.J. Apr. 23, 2021) (citations omitted). It was not. Rather, in an unbroken line of cases dating back almost two decades, the Third Circuit had held that a sexual-assault victim's statement, alone or with minimal corroborating evidence, was sufficient to establish probable cause. (*See* p. 13, *supra*.) In short, it would be highly unusual for a victim's statement to be found insufficient. And "the fact that a case is unusual . . . is an important indication that the officer's conduct did not violate a clearly established right." *Wesby*, 138 S. Ct. at 592 (cleaned up).

application of the *Johnson* rule in relation to, *inter alia*, a malicious prosecution claim where the person was arrested and simultaneously charged with interrelated offenses and the plaintiff failed to show that any one charge resulted in a greater detention. *Simonson v. Borough of Taylor*, 839 F. App'x 735, 740 & n.7 (3d Cir. 2020); *see Kossler*, 564 F.3d at 194 (distinguishing between *Johnson* and *Wright v. City of Philadelphia*, 409 F.3d 595, 604 (3d Cir. 2005) ("Even though our discussion of probable cause was limited to the criminal trespass claim, it disposes of her malicious prosecution claims with respect to all of the charges brought against her, including the burglary.")). Second, Collick and Williams have forfeited any argument that the *Johnson* rule applies or that Defendants must show probable cause as to each offense charged. They never argued for such a rule and indeed barely mentioned the other charges. (*See* Opp. at 12 n.3) Thus, probable cause as to the other charges, and its impact if any on this case, are not properly before me. *See Yates Real Estate, Inc. v. Plainfield Zoning Bd. of Adjustment*, 404 F. Supp. 3d 889, 913 n.28 (D.N.J. 2019).

The claims against the police and the derivative claims seeking to hold the University or its Police liable for the actions of the police are linked. (Counts 5, 7, 15). The failure of Collick and Williams to show a constitutional violation by the police also defeats the derivative claims. *See Vargas v. City of Philadelphia*, 783 F.3d 962, 974–75 (3d Cir. 2015) (§ 1983); *Sanders v. Jersey City*, Civ. No. 18-1057, 2021 WL 1589464, at *24 (D.N.J. Apr. 23, 2021) (NJCRA).

Finally, because the remaining state-law tort claims rely on a theory that Collick and Williams were wrongfully arrested, those claims are likewise defeated by a finding of probable cause. *Herman v. City of Millville*, 66 F. App'x 363, 368 n.3 (3d Cir. 2003) (probable cause to arrest defeated claims for state-law false arrest, false imprisonment, malicious prosecution, negligence, negligent training and supervision, and IIED).

A finding of probable cause is thus fatal to all claims. That being the case, I do not address Defendants' alternative theories of immunity.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is granted. A separate order will issue.

Dated: June 10, 2021

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**